Exhibit. 6

1  DALE L. ALLEN, JR., # 145279
   DIRK D. LARSEN, # 246028
2  LOW, BALL & LYNCH
   505 Montgomery Street, 7th Floor
3  San Francisco, California 94111-2584
   Telephone (415) 981-6630
4  Facsimile (415) 982-1634

5  Attorneys for Defendant
   CITY OF CLEARLAKE
6  (erroneously named herein as CLEARLAKE POLICE DEPARTMENT)

7

8                IN THE UNITED STATES DISTRICT COURT FOR

9                 THE NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO DIVISION

11

12  DAVID DAVIS and PAGE GEARHART-DAVIS      )    Case No. C 07-03365 EDL
    PRO-SE,                                  )
13                                           )    DECLARATION OF OFFICER
              Plaintiffs,                    )    TODD MILLER IN SUPPORT OF
14                                           )    DEFENDANT CITY OF
       vs.                                   )    CLEARLAKE'S MOTION FOR
15                                           )    SUMMARY JUDGMENT, OR IN
                                             )    THE ALTERNATIVE, PARTIAL
16  CLEARLAKE POLICE DEPARTMENT,             )    SUMMARY JUDGMENT
                                             )
17            Defendants.                    )    Date:        August 12, 2008
                                             )    Time:        9:00 a.m.
18  _____)    Courtroom:   E, 15th Floor
                                                  Judge:       Hon. Elizabeth D.
19                                                             LaPorte

20       I, TODD MILLER, declare as follows:

21       1.    I have personal knowledge of the following facts, and could and would testify

22  competently thereto if called upon to do so.

23       2.    I am currently employed by the City of Clearlake as an officer in the City of Clearlake

24  Police Department. I have been a City of Clearlake Police Officer since July 16, 1997. Prior to that, I

25  was employed as an officer in the King City Police Department since February 24, 1990.

26       3.    On August 2, 2006, at approximately 1:30 a.m., I and Sgt. Timothy Celli of the Clearlake

27  Police Department conducted an investigatory stop of David Davis, plaintiff in the above-captioned

28  matter, as he was pumping gasoline into a gold-colored Mercury Cougar at a Flyers gas station at 15010

-1-

1  Lakeshore Drive in Clearlake, California. Mr. Davis was with his wife, plaintiff Page Davis. The reason

2  for the stop was that the vehicle in question did not display valid registration. I subsequently noticed

3  that there was a crack in the vehicle's windshield through the driver's field of view. When I inquired

4  regarding the vehicle's registration status, Mr. Davis became abusive, making derogatory comments

5  about my physique and calling me a "pig." In response to Mr. Davis's comments, I made a statement to

6  the effect of "we don't like your kind here." This statement referred only to individuals who exhibit

7  confrontational attitudes and disrespect toward law-enforcement officials. It did not in any way refer to

8  African-Americans, individuals of any particular race or ethnicity, of any mixture of race or ethnicity, or

9  to individuals in mixed-race relationships. The investigatory stop was occasioned solely by my

10  observation that the vehicle did not display valid registration, and the statement was occasioned solely

11  by Mr. Davis's abusive attitude.

12      I swear under penalty of perjury under the laws of the State of California that the foregoing is

13  true and correct to the best of my own personal knowledge.

14

15  Executed this _7__ day of July, 2008, in Clearlake, California.

16

17                                          _____

18                                          TODD MILLER

19

20

21

22

23

24

25

26

27

28

-2-

Exhibit 7

1  DALE L. ALLEN, JR., # 145279
   DIRK D. LARSEN, # 246028
2  LOW, BALL & LYNCH
   505 Montgomery Street, 7th Floor
3  San Francisco, California  94111-2584
   Telephone (415) 981-6630
4  Facsimile (415) 982-1634

5  Attorneys for Defendant
   CITY OF CLEARLAKE
6  (erroneously named herein as CLEARLAKE POLICE DEPARTMENT)

7

8              IN THE UNITED STATES DISTRICT COURT FOR

9                THE NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  DAVID DAVIS and PAGE GEARHART-DAVIS   )   Case No. C 07-03365 EDL
    PRO-SE,                               )
13                                        )   DEFENDANT CITY OF
                      Plaintiffs,         )   CLEARLAKE'S NOTICE OF
14                                        )   MOTION AND MOTION FOR
            vs.                           )   SUMMARY JUDGMENT, OR IN
15                                        )   THE ALTERNATIVE, PARTIAL
                                          )   SUMMARY JUDGMENT;
16  CLEARLAKE POLICE DEPARTMENT,          )   MEMORANDUM OF POINTS
                                          )   AND AUTHORITIES (F.R.C.P. 56)
17                    Defendants.         )
                                          )
18  _____  )   Date:       August 12, 2008
                                              Time:       9:00 a.m.
19                                            Courtroom:  E, 15th Floor
                                              Judge:      Hon. Elizabeth D.
20                                                        LaPorte

21        TO THE COURT AND *PRO SE* PLAINTIFFS DAVID DAVIS AND PAGE GEARHART-

22  DAVIS:

23        NOTICE IS HEREBY GIVEN that on August 12, 2008, at 9:00 a.m., in Courtroom E of the

24  above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, defendant CITY

25  OF CLEARLAKE (the "City") will, and hereby does, move the Court for an order granting summary

26  judgment on the grounds that there is no genuine issue of material fact as to all of plaintiffs DAVID

27  DAVIS and PAGE GEARHART-DAVIS's ("Plaintiffs") claims against it, and the City is entitled to

28  judgment as a matter of law.  In the alternative, the City moves for an order granting partial summary

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                    -i-                    Case No. C 07-03365 EDL

1  judgment on the issue that any one or more of Plaintiffs' claims for relief or prayers for recovery against
2  it have no merit as a matter of law and should therefore be dismissed.

3      This motion is based on this notice, on the Memorandum of Points and Authorities below, on the
4  Declaration of Dirk D. Larsen filed herewith and the exhibits attached thereto, on the Declaration of Lt.
5  Michael Hermann filed herewith and the exhibits attached thereto, on the Declaration of Officer Todd
6  Miller filed herewith, on the Declaration of Officer Timothy Hobbs filed herewith, and on any oral
7  and/or documentary evidence that may be presented at the hearing of this motion.

8  ## STATEMENT OF RELIEF SOUGHT

9      The City hereby moves the Court for an order granting summary judgment in its favor on the
10  grounds that there is no genuine issue of material fact as to all of Plaintiffs' claims for relief against it,
11  and the City is thus entitled to judgment as a matter of law. Construing Plaintiffs' First Amended
12  Complaint ("FAC") to yield properly pleaded claims, these claims for relief are: (1) conspiracy against
13  the rights of citizens in violation of 18 U.S.C. § 241; (2) deprivation of rights under color of law in
14  violation of 18 U.S.C. § 242; (3) violation of civil rights under 42 U.S.C. § 14141; (4) conspiracy to
15  interfere with civil rights, brought pursuant to 42 U.S.C. § 1985; (5) violation of the right to be free from
16  unreasonable search and seizure, as guaranteed by the Fourth Amendment, brought pursuant to 42
17  U.S.C. § 1983; (6) violation of the right to be free from excessive force, as guaranteed by the Fourth
18  Amendment, brought pursuant to 42 U.S.C. § 1983; (7) violation of the right to be free from false arrest,
19  as guaranteed by the Fourth Amendment, brought pursuant to 42 U.S.C. § 1983; (8) deprivation of
20  liberty without due process of law, in violation of Fourteenth Amendment rights, brought pursuant to 42
21  U.S.C. § 1983; (9) violation of civil rights by means of municipal inaction through failure to investigate
22  complaints properly, brought pursuant to 42 U.S.C. § 1983 under the *Monell* doctrine; and (10) violation
23  of civil rights by means of failure to supervise officers adequately, brought pursuant to 42 U.S.C. § 1983
24  under the *Monell* doctrine. Plaintiffs also seek punitive damages and equitable relief.

25      In the alternative, the City moves for an order granting partial summary judgment on the issue
26  that any one or more of Plaintiffs' claims for relief or prayers for recovery against it have no merit as a
27  matter of law and should therefore be dismissed.

28

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd    -ii-    Case No. C 07-03365 EDL

1

## TABLE OF CONTENTS

2
Page(s)

3  I.    STATEMENT OF ISSUES TO BE DECIDED .......................................... 1

4  II.   INTRODUCTION ................................................................ 1

5  III.  STATEMENT OF RELEVANT FACTS ............................................... 3

6  IV.   ARGUMENT .................................................................... 7

7        A.   Standard of Review ...................................................... 7

8        B.   Plaintiffs' 42 U.S.C. § 1983 Claims Against the City Have No Merit
                  as a Matter of Law ...................................................... 7
9
10            1.   Because the City's Officers Had Reasonable Suspicion to
                        Detain Plaintiffs on the Dates in Question, Their Conduct
                        Did Not Constitute Unreasonable Searches and Seizures
11                      in Violation of the Fourth Amendment ................................. 9

12            2.   Officer Hobbs Applied Reasonable Force to David Davis
                        and Thus Did Not Violate Mr. Davis's Rights under the
13                      Fourth Amendment .................................................. 10

14            3.   Because the City's Officers Had Probable Cause to Arrest
                        Plaintiff for Not Wearing A Seatbelt, the Arrest Did Not
15                      Constitute a False Arrest in Violation of the Fourth Amendment ............ 13

16            4.   Because Plaintiff's Have Produced No Evidence of Intentional
                        Discrimination, Their Claim for Racial Profiling Fails as a
17                      Matter of Law ...................................................... 13

18            5.   Because Plaintiff's Have Produced No Evidence of Deprivation
                        of Liberty, Their Claim for Violation of the Due Process Clause
19                      Fails as a Matter of Law ............................................. 15

20            6.   Plaintiffs Have Not Demonstrated That "Deliberate Indifference"
                        on the Part of the City Resulted in the Alleged Constitutional
21                      Violations ......................................................... 16

22       C.   Because 18 U.S.C. §§ 241 and 242 Are Penal Statutes That Do Not
                  Provide Private Rights of Action, Plaintiffs' Causes of Action
23                Pursuant to Those Statutes Have No Merit as a Matter of Law .................. 17

24       D.   Because 42 U.S.C. § 14141 Does Not Provide a Private Right of
                  Action, Plaintiffs' Cause of Action Pursuant to it Has No Merit
25                as a Matter of Law ...................................................... 18

26       E.   Because the City is a Single Entity, It Cannot Be Liable for
                  Conspiracy to Interfere with Civil Rights under 42 U.S.C. § 1985 ............... 18

27

28

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                    -iii-                    Case No. C 07-03365 EDL

Page(s)

F.    As a Matter of Law, Plaintiffs May Not Recover Punitive Damages
      from the City, a Public Entity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

G.    Because Plaintiffs Suffer No Continuing Wrongs, They Are Not
      Entitled to the Equitable Relief They Seek . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                    -iv-                    Case No. C 07-03365 EDL

1

## TABLE OF AUTHORITIES

2 | Cases                                                                      Page(s)

3 | Atwater v. City of Lago Vista
        532 U.S. 318 (2001) .................................................... 13
4
   | Blankenhorn v. City of Orange
5        485 F.3d 463 (9th Cir. 2007) ............................................ 17

6 | Board of County Com'rs of Bryan County v. Brown
        520 U.S. 397 (1997) ..................................................... 8
7
   | Brendlin v. California
8        551 U.S. ___, 127 S.Ct. 2400 (2007) ...................................... 9

9 | Celotex Corp. v. Catrett
        477 U.S. 317 (1986) ..................................................... 7
10
   | City of Canton v. Harris
11       489 U.S. 378 (1989) .................................................. 8, 16

12 | City of Los Angeles v. Heller
        475 U.S. 796 (1986) .................................................. 8, 16
13
   | City of Newport v. Fact Concerts, Inc.
14       453 U.S. 247 (1981) .................................................... 19

15 | Davis v. City of Ellensburg
        869 F.2d 1230 (9th Cir. 1989) ........................................... 8
16
   | Delaware v. Prouse
17       440 U.S. 648 (1979) ..................................................... 9

18 | Federman v. County of Kern
        61 Fed.Appx. 438 (9th Cir. 2003) ....................................... 11
19
   | Graham v. Connor
20       490 U.S. 386 (1989) ................................................. 10-11

21 | Hopkins v. Andaya
        958 F.2d 881 (9th Cir. 1992) ........................................... 11
22
   | Hupp v. City of Walnut Creek
23       389 F.Supp.2d 1229 (N.D. Cal. 2005) ................................. 11-13

24 | Hutto v. Finney
        437 U.S. 678 (1978) .................................................... 19
25
   | LaLonde v. County of Riverside
26       204 F.3d 947 (9th Cir. 2000) ........................................... 12

27 | Milliken v. Bradley (Milliken II)
        433 U.S. 267 (1977) .................................................... 19
28

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                    -v-                         Case No. C 07-03365 EDL

| Cases | Page(s) |
|---|---|

Monell v. Dept. of Social Svcs. of City of New York
  436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 16

Moore v. Kamikawa
  940 F.Supp. 260 (D. Hawaii 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.
  210 F.3d 1099 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Oviatt v. Pearce
  954 F.2d 1470 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Palmer v. Sanderson
  9 F.3d 1433 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Scott v. Henrich
  39 F.3d 912 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

Snowden v. Hughes
  321 U.S. 1 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

Terry v. Ohio
  392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

U.S. v. Choudhry
  461 F.3d 1097 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

U.S. v. Lopez-Soto
  205 F.3d 1101 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

U.S. v. Wesley
  293 F.3d 541 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Wall v. County of Orange
  364 F.3d 1107 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Whren v. U.S
  517 U.S. 806 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Constitutional Provisions

U.S. Const., Amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12-13

U.S. Const., Amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8, 10, 14-15

Federal Statutes

18 U.S.C.

  § 241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17-18

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd          -vi-          Case No. C 07-03365 EDL

| Federal Statutes | Page(s) |
|---|---|

18 U.S.C.

§ 242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17

42 U.S.C.

§ 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 7-8, 17-19

42 U.S.C.

§ 1985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18-19

§ 1985(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

§ 1985(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

§ 14141 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18

F.R.C.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

F.R.C.P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

State Statutes

California Government Code § 818 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

California Vehicle Code

§ 26710 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§ 27315(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

§ 40302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

§ 40302(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd          -vii-          Case No. C 07-03365 EDL

1  **I.    STATEMENT OF ISSUES TO BE DECIDED**

2          The present motion presents the following issue for decision: (1) whether Plaintiffs can, as a
3  matter of law, sustain any claim against the City on the theory that the City has a custom, policy or
4  practice amounting to deliberate indifference toward Plaintiffs' constitutional rights, whether through
5  failure to investigate complaints properly or inadequate training of its officers (42 U.S.C. § 1983
6  claims); (2) whether the City is entitled to judgment as a matter of law as to Plaintiffs' claim for
7  violation of 18 U.S.C. § 241; (3) whether the City is entitled to judgment as a matter of law as to
8  Plaintiffs' claim for violation of 18 U.S.C. § 242; (4) whether the City is entitled to judgment as a matter
9  of law as to Plaintiffs' claim for violation of 42 U.S.C. § 14141; (5) whether the City is entitled to
10  judgment as a matter of law as to Plaintiffs' claim for violation of 42 U.S.C. § 1985; (6) whether
11  Plaintiffs may recover punitive damages from the City, a municipal entity; and (7) whether Plaintiffs
12  may be awarded the injunctive relief they seek.

13          Because an element of any of Plaintiffs' § 1983 claims (issue (1), above) is a showing that the
14  City's officers violated Plaintiffs' constitutional rights, this Memorandum of Points and Authorities
15  addresses each violation that Plaintiffs allege.

16  **II.   INTRODUCTION**

17          This lawsuit arises out of a number of encounters Plaintiffs had with officers of the Clearlake
18  Police Department between August 2, 2006 and January 17, 2007. All but one of those encounters were
19  investigatory or traffic stops, and Plaintiffs have conceded facts giving rise to the respective officers'
20  reasonable suspicion for making each stop. The August 3, 2006 traffic stop led to an arrest of Plaintiff
21  David Davis for failing to wear a seatbelt and failing to produce photo identification, failures that Mr.
22  Davis concedes. During this detention, Mr. Davis was briefly handcuffed, but then released once he
23  began exhibiting symptoms of asthma. The only encounter that was not an investigatory or traffic stop
24  involved a 911 hang-up call received from Plaintiffs' residence. The City's officers responded to the
25  residence, quickly determined that police intervention was not necessary, and departed.

26          Plaintiffs complained about these encounters to the Clearlake Police Department, which
27  conducted full investigations resulting in the exoneration of the officers involved. In their First
28  Amended Complaint ("FAC"), Plaintiffs allege that these encounters represent harassment motivated by

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                          -1-                              Case No. C 07-03365 EDL

1  racial profiling and/or retaliation (David Davis is African-American; Page Davis is Caucasian in
2  appearance, but the City has no information regarding her ethnicity). However, they have not produced
3  any evidence that the City's officers harbored any such improper motive. Instead, they have testified to a
4  number of proper bases for the encounters and detentions, including driving unregistered vehicles,
5  failing to use a turn signal, driving with a defective windshield, failing to wear helmets while riding a
6  motorcycle, failing to wear a seatbelt in a vehicle, and failing to produce photo identification when cited
7  with a Vehicle Code violation. Because the City's officers had the requisite reasonable suspicion or
8  probable cause to detain Plaintiffs in every instance, and because they conducted the detentions in a
9  reasonable manner, no constitutional violations occurred. Given the legitimate bases for the encounters,
10  these stops do not represent the pattern of harassment that Plaintiffs allege, but merely the officers'
11  attempt to enforce the law in the City of Clearlake.

12      Plaintiffs have named the City as a defendant in this action but none of the individual officers
13  involved in the encounters. Accordingly, even if Plaintiffs could demonstrate that the officers violated
14  their constitutional rights, Plaintiffs cannot sustain any § 1983 claim in this suit absent a showing that a
15  City custom, policy or practice amounting to deliberate indifference to Plaintiffs' rights was the moving
16  force behind the purported violations. Here, Plaintiffs have not only failed to produce evidence of a
17  single constitutional violation, they have also not produced any evidence of such a custom, policy or
18  practice. Accordingly, the City is entitled to judgment as a matter of law as to Plaintiffs' claims brought
19  pursuant to 42 U.S.C. § 1983.

20      The City is also entitled to judgment as a matter of law as to Plaintiffs' claims brought pursuant
21  to other civil rights statutes. Those statutes either do not provide for private rights of action, or they base
22  liability on the existence of a conspiracy—a legal impossibility here, as the City cannot conspire with
23  itself.

24      Plaintiffs seek to recover punitive damages from the City, and they request injunctive relief in the
25  form of criminal prosecutions of the officers and an investigation of the Clearlake Police Department.
26  They are entitled to neither type of relief. Municipal entities such as the City are immune from punitive
27  damages under both federal and state law. With respect to the injunctive relief—even assuming the
28  measures Plaintiffs request were properly tailored to the alleged wrongs—Plaintiffs may not recover

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                    -2-                    Case No. C 07-03365 EDL

1  such relief because, by their own admission, they suffer no continuing wrongs that the measures could
2  remedy.

3  **III.    STATEMENT OF RELEVANT FACTS**

4         Plaintiffs began residing in the City of Clearlake in autumn of 2005. (Deposition of David
5  Davis, Exhibit 2 to Declaration of Dirk D. Larsen ["Ex. 2"] at 20:8-21:5.) Between that time and August
6  1, 2006, David Davis had two encounters with officers of the Clearlake Police Department. (Ex. 2 at
7  23:9-24:17.) In the first encounter, a man ran across the street into Mr. Davis's vehicle, which was
8  traveling down Lakeshore Boulevard. (Ex. 2 at 23:17-25.) Sgt. Timothy Celli and a few other officers
9  arrived at the scene, and Mr. Davis was found not to be at fault for the incident. (Ex. 2 at 23:17-25.) In
10 the second encounter, an officer Mr. Davis cannot recall pulled him over and gave him a warning for
11 playing music at an excessive volume. (Ex. 2 at 24:1-20.) Neither of these encounters forms a basis for
12 Plaintiffs' allegations in the present matter.

13        On August 2, 2006, Plaintiffs were pumping gas into their 1967 Mercury Cougar when they were
14 approached by Sgt. Celli and Officer Todd Miller. (Ex. 2 at 25:11-28:18.) The windshield of Plaintiffs'
15 vehicle contained a crack about seven inches in length. (Ex. 2 at 44:18-45:2.) At the officers' request,
16 Mr. Davis provided them with his driver's license, proof of insurance, and "proof that the vehicle was ...
17 in the process of being registered." (Ex. 2 at 26:2-8.) The license Mr. Davis provided was a temporary
18 license. (Ex. 2 at 40:11-25.) The vehicle was not actually registered at that time; the registration had
19 expired. (Ex. 2 at 41:1-42:4.) One officer began looking through the windows of Plaintiffs' vehicle, but
20 did not enter the vehicle, and Mr. Davis and the officers began a "verbal exchange," in which Mr. Davis
21 called Officer Miller "an out of shape pig." (Ex. 2 at 30:19-31:6, 53:17-54:6; Clearlake Police
22 Department Citizen's Personnel Complaint of August 3, 2006, Exhibit A to Declaration of Lt. Michael
23 Hermann ["Ex. A"] at 3.) Officer Miller responded to Mr. Davis that "we don't like your kind here," at
24 which point "a bunch of bickering and nagging" ensued. (Ex. 2 at 27:18-22, 31:3-6.) Officer Miller
25 clarified that his statement referred to individuals with confrontational attitudes toward law-enforcement
26 personnel, not to persons of any particular race or ethnicity. (Declaration of Officer Todd Miller
27 ["Miller Dec."], ¶ 3) The officers issued Mr. Davis a citation for operating a vehicle without valid
28 registration and with a cracked windshield. (Ex. 2 at 39:22-24.) Neither officer directed any racially

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                    -3-                              Case No. C 07-03365 EDL

1  derogatory terms toward Plaintiffs, and Plaintiffs did not hear the officers use such terms in reference to
2  them. (Ex. 2 at 46:24-50:17.)

3      The following morning, Plaintiffs spoke to Clearlake Police Captain Ron Larsen regarding the
4  incident of August 2, 2006. (Ex. 2 at 55:7-9.) Captain Larsen informed Plaintiffs that he would speak to
5  the officers involved. (Ex. 2 at 55:14-17.)

6      On August 3, 2006, at approximately 1:00 a.m., Plaintiffs were pulled over by Clearlake Police
7  Officers Timothy Hobbs and Sarah Hardisty for failure to stop at a stop sign. (Ex. 2 at 56:16-59:8;
8  Clearlake Police Department Traffic Stop Report # 62456, Exhibit C to Hermann Dec. ["Ex. C"], at 1.)
9  They were traveling in a Chevrolet Suburban—not the Mercury Cougar from the previous evening—and
10  Ms. Davis was driving. (Ex. 2 at 58:3-10.) The Suburban was not registered. (Deposition of Page
11  Gearhart-Davis, Exhibit 3 to Larsen Dec. ["Ex. 3"] at 38:8-10.) Mr. Davis was not wearing a seatbelt.
12  (Ex. 2 at 60:17-20.) After noting the Mr. Davis was not wearing a seatbelt, Officer Hobbs asked him for
13  identification. (Ex. 2 at 60:21-23.) Mr. Davis provided Officer Hobbs with an interim driver's license,
14  which was not a photo identification. (Ex. 2 at 60:23-62:10.) Officer Hobbs informed Mr. Davis that he
15  would be detained, and was under arrest, for failing to produce proper identification. (Ex. 2 at 62:11-13,
16  64:14-16.) Mr. Davis exited the Suburban and, upon Officer Hobbs' command, turned around for
17  Officer Hobbs to place his hands in handcuffs. (Ex. 2 at 63:1-64:7.) Mr. Davis claims that the
18  handcuffs were too tight, cutting into his wrists. (Ex. 2 at 64:8-10.) Officer Hobbs placed Mr. Davis in
19  the rear seat of his patrol vehicle. (Ex. 2 at 65:1-6.) At that point, Mr. Davis began suffering an asthma
20  attack, and he yelled out that he was having difficulty breathing. (Ex. 2 at 65:7-66:21.) Officer Hobbs
21  called for an ambulance. (Declaration of Officer Timothy Hobbs ["Hobbs Dec."], ¶ 3.) According to
22  Mr. Davis, Officer Hobbs pulled Mr. Davis from the patrol vehicle onto the ground, placed his knee in
23  Mr. Davis's back in order to remove the handcuffs, and "the next thing [Mr. Davis] knows," removed
24  the handcuffs. (Ex. 2 at 66:19-69:19.) Mr. Davis lay on the ground for five or ten minutes and then
25  noticed that Sgt. Celli and an ambulance had arrived at the scene. (Ex. 2 at 72:3-21.) Mr. Davis refused
26  treatment from the paramedics. (Ex. 2 at 72:14-21.) None of the officers at the scene directed any racial
27  slurs toward Plaintiffs that night. (Ex. 2 at 76:1-17.)

28      On August 3, 2006, Mr. Davis filed a Citizen's Personnel Complaint with the Clearlake Police

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd       -4-       Case No. C 07-03365 EDL

1    Department based on the incidents of the two previous evenings. (Ex. A.) In that complaint, Mr. Davis

2    acknowledged that, on August 2, 2006, he called Officer Miller an "out of shape pig" before Officer

3    Miller stated that "we don't like your kind of people here." (Ex. A at 3.) Clearlake Police Captain Ron

4    Larsen conducted the investigation arising from this complaint, which consisted of interviews of Mr.

5    Davis, Sgt. Celli, Officer Miller, Officer Hardisty and Officer Hobbs. (Clearlake Police Department

6    Internal Affairs Investigation # 08-03-06/90/107/132/145, Exhibit B to Hermann Dec. ["Ex. B"].) On

7    August 29, 2006, Captain Larsen determined that Mr. Davis's allegations were unfounded; the officers

8    were thus exonerated from any misconduct or wrongdoing. (Ex. B at 1.)

9        On September 27, 2006, Officer Hobbs issued both Plaintiffs a citation for riding an unregistered

10   motorcycle, riding without helmets, and littering. (Ex. 2 at 83:6-85:1.) Sgt. Celli arrived at the scene

11   shortly after Officer Hobbs stopped Plaintiffs. (Ex. 2 at 84:5-6.) Plaintiffs were found guilty of the

12   infractions relating to this incident and fined over $1,200.00. (Ex. 2 at 83:20-84:4, 85:16-86:4.)

13       Ms. Davis testified that she observed Sgt. Celli drive by their home more than five times a week

14   between August and December, 2006. (Ex. 3 at 45:18-46:7.) Mr. Davis is unable to recall precisely

15   how many times he observed Sgt. Celli drive by their home in that period, other than to state that it was

16   "numerous." (Ex. 2 at 103:3-105:6.)

17       On December 27, 2006, Officer Joseph Labbe and Sgt. Celli stopped Plaintiffs, who were

18   traveling in a van, for driving with an obstructed license plate and failing to use a turn signal. (Ex. 2

19   at 89:17-94:1.) Ms. Davis was driving, and Mr. Davis was a passenger. (Ex. 2 at 89:17-90:3.) Mr.

20   Davis stated that he did not think a turn signal was necessary. (Ex. 2 at 93:17-24.) Plaintiffs claim that

21   Sgt. Celli approached the passenger side of the vehicle with his hand on his gun, although he did not

22   remove the gun from his holster. (Ex. 2 at 91:7-8, 96:13-19.) The van in which they were traveling was

23   not registered. (Ex. 2 at 94:4-14.) Ms. Davis was issued a citation for driving an unregistered vehicle

24   and driving without proof of insurance. (Ex. 2 at 94:2-14.) Neither officer directed any racial slurs

25   towards either Plaintiff during this encounter. (Ex. 3 at 43:18-22.)

26       On January 12, 2007, Plaintiffs filed a Citizen's Personnel Complaint against Sgt. Celli for

27   "racial profiling, abuse of authority, excessive ticket writing, manipulation of staff, falsifying reports,

28   and hate crimes." (Clearlake Police Department Citizen's Personnel Complaint of January 12, 2007,

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                    -5-                         Case No. C 07-03365 EDL

1  Exhibit D to Hermann Dec. ["Ex. D"] at 1.) This complaint arose out of the incidents between August 3,
2  2006, and December 27, 2006. (Ex. D at 1.) Then-Sgt. Michael Hermann conducted the investigation,
3  which consisted of interviews with both Plaintiffs, Officer Labbe and Sgt. Celli. (Clearlake Police
4  Department Internal Affairs Investigation # 01-12-07/90, Exhibit E to Hermann Dec. ["Ex. E"].) On
5  January 22, 2007, the Department reached the conclusion that the complaint was unfounded, meaning
6  that Sgt. Celli committed no misconduct. (Ex. E at 6.)

7  On January 17, 2007, Sgt. Celli and another officer responded to a 911 hang-up call from
8  Plaintiff's residence. (Ex. 2 at 107:20-110:24; County of Lake E911 ALI Report, Exhibit F to Hermann
9  Dec. ["Ex. F"].) Sgt. Celli did not direct any racial slurs toward Plaintiffs, and did not behave in a
10  threatening manner other than, in Mr. Davis's view, to come to Plaintiffs' home. (Ex. 2 at 108:19-109:8,
11  Ex. 3 at 45:15-17.) The other officer explained that they had received a 911 call from that house. (Ex. 3
12  at 44:19-45:2.) According to Ms. Davis, Sgt. Celli stayed behind the bushes in front of the house and
13  determined that there was no need for police intervention. (Ex. 3 at 45:3-6.)

14  Plaintiffs organized monthly meetings with the community of Clearlake from September 2006
15  through January 2007. (Ex. 2 at 111:16-112:11.) They allege that, during those meetings, other people
16  complained about the Clearlake Police Department. (Ex. 2 at 112:13-16.) However, Plaintiffs have not
17  produced any evidence with respect to those complaints. Plaintiffs also allege that the Department of
18  Justice became involved in the meetings, but they do not know the outcome of any investigation. (Ex. 2
19  at 113:15-114:13.) In addition, Plaintiffs allege that former employees of the City of Clearlake have
20  complained about the police department, but they have not produced any evidence with respect to such
21  complaints. (Ex. 2 at 116:21-121:18.)

22  Plaintiffs have had no further encounters with Clearlake Police Officers after January 30, 2007.
23  (Ex. 2 at 126:13-127:22; Ex. 3 at 49:4-50:2.)

24  In their FAC, Plaintiffs seek to recover punitive damages from the City as well as the following
25  injunctive relief: "[a]ny officers to be found guilty of any civil or criminal charges to be prosecuted[,]"
26  and "[c]onduct a full investigation into the Clear Lake [sic] Police Department and Employees (past and
27  present.)" (FAC at 9:13-22.)

28  ///

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                    -6-                              Case No. C 07-03365 EDL

1  **IV.  ARGUMENT**

2  **A.  Standard of Review**.

3  Summary judgement should be granted if "the pleadings, depositions, answers to interrogatories,

4  and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

5  material fact and the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c). It pierces

6  the pleadings and puts the opponent to the test of affirmatively coming forward with sufficient evidence

7  for its claims to create a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

8  (1986). In order to meet its initial burden, "the moving party must either produce evidence negating an

9  essential element of the nonmoving party's claim or defense or show that the nonmoving party does not

10 have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan*

11 *Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

12 In opposing a motion for summary judgment, the adverse party "may not rest upon the mere

13 allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as

14 otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for

15 trial." F.R.C.P. 56(e). In the absence of such a response, "summary judgment, if appropriate, shall be

16 entered against the adverse party." *Id.*

17 **B.  Plaintiffs' 42 U.S.C. § 1983 Claims Against the City Have No Merit as a Matter of
       Law**.

18

19 Plaintiffs appear to bring a number of 42 U.S.C. § 1983 claims against the City. Section 1983

20 provides a private right of action for deprivation of federal rights under color of state law. Based on the

21 allegations in the FAC, Plaintiffs appear to allege the following deprivations on the part of the City's

22 officers: (1) unreasonable search and seizure in violation of the Fourth Amendment arising from the

23 incidents of August 2, August 3, September 27 and December 27, 2006 (FAC, ¶ 14); (2) excessive force

24 in violation of the Fourth Amendment arising from the incident of August 3, 2006 (FAC, ¶¶ 15, 16); (3)

25 false arrest of David Davis in violation of the Fourth and Fourteenth Amendments (FAC, ¶ 16); (4)

26 selective, racially motivated enforcement of the law in violation of the Equal Protection Clause of the

27 Fourteenth Amendment (FAC, ¶ 16); and (5) deprivation of the liberty to leave their home in violation of

28

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                    -7-                    Case No. C 07-03365 EDL

1   the Due Process Clause of the Fourteenth Amendment (FAC, ¶ 15).[1] Plaintiffs also allege two § 1983

2   causes of action against the City itself: (1) failure to investigation citizen complaints properly and (2)

3   failure to supervise officers adequately. (FAC, ¶¶ 17-18.)

4           A municipal entity cannot be held liable for unconstitutional acts of its officers based solely on

5   the doctrine of respondeat superior. *Monell v. Dept. of Social Svcs. of City of New York*, 436 U.S. 658,

6   694 (1978). A municipality may be held liable for an official policy or informal custom that led to the

7   unconstitutional acts. *Id.* at 690-94. Moreover, the municipality's custom, policy, practice, or

8   deliberately indifferent training, supervision or hiring must actually be the cause of the deprivation of the

9   plaintiff's federal rights; it must be the "moving force" behind the employees' conduct resulting in the

10  deprivation. *Board of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). It follows

11  that, where no City employee caused a constitutional deprivation, the City itself cannot be held liable for

12  a custom or policy causing the purported deprivation. *See City of Los Angeles v. Heller*, 475 U.S. 796,

13  799 (1986).

14          Plaintiffs' allegations that the City failed to act by failing to investigate complaints properly and

15  failed to supervise its officers adequately are governed by the standards set forth in *City of Canton v.*

16  *Harris*, 489 U.S. 378 (1989). *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989)

17  (holding that *City of Canton*'s "inadequate training" standard also applies to allegations of inadequate

18  supervision); *see Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (applying *City of Canton*'s test

19  to allegations of municipal inaction). Under *City of Canton*'s standard, the City may only be held liable

20  if Plaintiffs establish (1) that they possessed a constitutional right of which they were deprived; (2) that

21  the City had a policy amounting to "deliberate indifference" to their constitutional right; and (3) that the

22  policy was the "moving force" behind the constitutional violation. *See Oviatt*, 954 F.2d at 1474 [citing

23  *City of Canton*, 489 U.S. at 389-391]. Accordingly, under both *Monell* and *City of Canton*, Plaintiffs

24  must first establish that they were deprived of a constitutional right before municipal liability may attach.

25          As discussed in the following subsections, no City employee deprived Plaintiffs of any

26  constitutional right, thus precluding liability on the part of the City. Moreover, Plaintiffs have produced

27

28      [1]The FAC also contains an allegation that a City officer forged David Davis's name on a traffic citation, but
        Plaintiffs have withdrawn this allegation. (FAC, ¶¶ 10, 16; Ex. 2 at 81:10-25.)

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                    -8-                              Case No. C 07-03365 EDL

1   no evidence that the City's investigation and supervision policies or practices amounted to "deliberate

2   indifference" to Plaintiffs' constitutional rights.

3           **1.    Because the City's Officers Had Reasonable Suspicion to Detain Plaintiffs on
                the Dates in Question, Their Conduct Did Not Constitute Unreasonable
4               Searches and Seizures in Violation of the Fourth Amendment.**

5           The Fourth Amendment to the U.S. Constitution states that "[t]he right of the people to be secure

6   in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

7   violated... ." U.S. Const., Amend. IV. The Amendment does not prohibit all searches and seizures by

8   government officials, but only unreasonable ones. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). A seizure occurs

9   when a police officer restrains an individuals freedom to walk away, even if no arrest is made. *Id.* at 16.

10  But such a detention is not unreasonable—and thus does not violate the individual's Fourth Amendment

11  rights—where the officer "can point to specific and articulable facts which, taken together with rational

12  inferences from those facts, reasonably warrant that intrusion." *See id.* at 21. In other words, an officer

13  may briefly detain an individual if the officer has "reasonable suspicion" that the individual "has

14  committed, is committing or is about to commit a crime." *U.S. v. Choudhry*, 461 F.3d 1097, 1100 (9th

15  Cir. 2006) (citing *U.S. v. Lopez-Soto*, 205 F.3d 1101, 1104 (9th Cir. 2000).) *Terry*'s "reasonable

16  suspicion" test applies whether officers detain the individual in question in public, as the driver of a

17  vehicle, or as a passenger in a vehicle. *Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *see Brendlin v.*

18  *California*, 551 U.S. ___, 127 S.Ct. 2400, 2406-2408 (2007).

19          Here, on every occasion on which the City's officers detained Plaintiffs, those officers had

20  specific and articulable facts justifying the intrusion, namely, that one or both Plaintiffs had committed,

21  or were about to commit, a traffic infraction. On August 2, 2006, Plaintiffs were detained while

22  pumping gasoline into a vehicle with a visibly cracked windshield, in violation of California Vehicle

23  Code § 26710, and their vehicle did not exhibit valid registration. (Ex. 2 at 41:1-42:4, 44:18-45:2.) On

24  August 3, 2006, officers stopped Plaintiffs for failing to stop at a stop sign and driving a vehicle that did

25  not exhibit valid registration. (Ex. 2 at 56:16-59:8; Ex. 3 at 38:8-10; Ex. C at 1.) In addition, once the

26  officers approached the vehicle, they observed that David Davis was not wearing a seatbelt. (Ex. 2 at

27  60:17-20.) On September 27, 2006, Plaintiffs were cited for riding an unregistered motorcycle without

28  helmets and for littering—again, infractions that the officers observed without unreasonable intrusion on

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                    -9-                    Case No. C 07-03365 EDL

1  Plaintiffs' privacy. (Ex. 2 at 83:6-86:4.) Plaintiffs were fined for these infractions. (Ex. 2 at

2  83:20-84:4, 85:16-86:4.) Finally, on December 27, 2006, the officers stopped Plaintiffs for failing to use

3  a turn signal, and then noted that the vehicle was unregistered. (Ex. 2 at 89:17-94:1, 94:4-14.) Plaintiffs

4  concede both the failure to use the turn signal and the lack of valid registration. (Ex. 2 at 89:17-94:1,

5  94:4-14.) Accordingly, in every instance in which Plaintiffs were detained, the City's officers had

6  reasonable suspicion to justify the detention. The officers' actions were thus not only reasonable under

7  the Fourth Amendment, but also lawful and proper in that they constituted attempts to cite and deter

8  violations of the law.

9       **2.    Officer Hobbs Applied Reasonable Force to David Davis and Thus Did Not
               Violate Mr. Davis's Rights under the Fourth Amendment.**

10

11      Plaintiffs' allege that "Clearlake Police Department officers used excessive force when detaining

12  David Davis in violation of the Forth [sic] and Fourteenth Amendments to the United States

13  Constitution." (FAC, ¶ 16.) Because the incident of August 3, 2006, is the only time any officer is

14  alleged to have applied force to Mr. Davis, Plaintiffs are presumably referring to this date. On that

15  evening, Officer Hobbs handcuffed Mr. Davis, placed him in the patrol vehicle, and immediately

16  removed the handcuffs once Mr. Davis began experiencing symptoms of asthma. (Ex. 2 at 63:1-64:7,

17  65:1-6; Hobbs Dec., ¶ 3.)

18      "[*A*]*ll* claims that law enforcement officers have used excessive force—deadly or not—in the

19  course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the

20  Fourth Amendment and its 'reasonableness' standard, rather than a 'substantive due process' approach."

21  *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). A seizure occurs when an "officer,

22  by means of physical force or show of authority, has in some way restrained the liberty of a citizen."

23  *Terry* 392 U.S. at 19, n.16. Because the alleged use of force occurred in the course of an investigatory

24  traffic stop, the Fourth Amendment's "reasonableness" standard applies. Accordingly, Plaintiffs' claim

25  of excessive force must be analyzed under this standard.

26      Under the objective reasonableness standard, "[d]etermining whether the force used to effect a

27  particular seizure is 'reasonable' ... requires a careful balancing of 'the nature and quality of the intrusion

28  on the individual's Fourth Amendment interests' against the countervailing governmental interests at

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                    -10-                         Case No. C 07-03365 EDL

1  stake." *Graham*, 490 U.S. at 396 (internal citations omitted). The officer's conduct must be evaluated
2  in light of the particular circumstances "from the perspective of a reasonable officer on the scene, rather
3  than with 20/20 vision of hindsight." *Id.* at 396-397. The standard does not require police officers to
4  use the "least intrusive means of responding to an exigent situation; they need only act within the range
5  of conduct [the law identified] as reasonable." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994), *cert.*
6  *denied*, 515 U.S. 1159 (1995). The question of reasonableness of force is usually a question for the jury,
7  but the court may make a determination on summary judgment where, viewing the evidence in the light
8  most favorable to the non-moving party, the evidence compels the conclusion that the use of force was
9  reasonable. *Hopkins v. Andaya*, 958 F.2d 881, 885 (9th Cir. 1992) (overruled on other grounds as
10  recognized in *Federman v. County of Kern*, 61 Fed.Appx. 438, 440 (9th Cir. 2003)).

11        Here, Officer Hobbs handcuffed Mr. Davis only after observing that Mr. Davis was not wearing a
12  seatbelt, in violation of California Vehicle Code § 27315(e). In addition, Mr. Davis failed to produce
13  photo identification, thus justifying the further detention under California Vehicle Code § 40302(a).[2]
14  Officer Hobbs took Mr. Davis's hands and placed them in handcuffs. (Ex. 2 at 63:1-64:7.) Mr. Davis
15  testified that the handcuffs were excessively tight, cutting into his wrists. (Ex. 2 at 64:8-10.) However,
16  he also testified that Officer Hobbs removed the handcuffs once he began exhibiting symptoms of an
17  asthma attack, which started when he was placed into the police vehicle. (Ex. 2 at 65:7-66:21,
18  66:19-69:19.) Officer Hobbs pulled Mr. Davis from the vehicle onto the ground and placed his knee
19  into Mr. Davis's back, but only in order to remove the handcuffs. (Ex. 2 at 66:19-69:19.) In addition,
20  Officer Hobbs called for an ambulance in response to Mr. Davis's asthma symptoms.

21        In *Hupp v. City of Walnut Creek*, 389 F.Supp.2d 1229 (N.D. Cal. 2005), the court granted
22  summary judgment to defendant police officers who were alleged to have applied excessive force in a

23

24  [2]California Vehicle Code § 40302 states, in relevant part:
25  Whenever any person is arrested for any violation of this code, not declared to be a felony, the arrested person shall be taken without unnecessary delay before a magistrate
26  within the county in which the offense charged is alleged to have been committed and who has jurisdiction of the offense and is nearest or most accessible with reference to the
27  place where the arrest is made in any of the following cases:

28  (a) When the person arrested fails to present his driver's license or other satisfactory evidence of his identity for examination.

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd       -11-      Case No. C 07-03365 EDL

1    cuffing procedure following an arrest for failure to wear a seatbelt. The *Hupp* court noted that the

2    officers twice loosened the handcuffs upon the plaintiff's complaints, and that the plaintiff produced no

3    evidence—other than his subjective complaints—that the handcuffs caused physical injury. *Id.* at 1232.

4    *Hupp* distinguished Ninth Circuit cases finding a possible Fourth Amendment violation where a doctor

5    had testified that the arrestee suffered nerve damage, where an officer refused to loosen handcuffs

6    following the arrestee's complaint, and where the arrestee's wrists were discolored and the officer

7    ignored the arrestee's complaint. *Id.* (distinguishing *Wall v. County of Orange*, 364 F.3d 1107, 1109-12

8    (9th Cir. 2004); *LaLonde v. County of Riverside*, 204 F.3d 947, 952, 960 (9th Cir. 2000); *Palmer v.*

9    *Sanderson*, 9 F.3d 1433, 1434-36 (9th Cir. 1993).)

10    Like the officers in *Hupp*, and unlike those in the cases *Hupp* distinguishes, Officer Hobbs

11    responded to Mr. Davis's physical complaints immediately. While, according to Plaintiffs' allegations,

12    he did not immediately loosen the handcuffs, Mr. Davis's asthma attack began as soon Officer Hobbs

13    placed him in the patrol vehicle—which itself occurred directly after the handcuffing—and Officer

14    Hobbs responded by not only loosening the handcuffs but by removing them. (Ex. 2 at 65:7-69-19.) In

15    addition, Officer Hobbs immediately called for paramedics to respond and treat Mr. Davis's symptoms.

16    (Hobbs Dec., ¶ 3.) With respect to pulling Mr. Davis out of the vehicle and placing his knee in Mr.

17    Davis's back, Officer Hobbs did so in order to remove Mr. Davis's handcuffs and thus alleviate his

18    asthma symptoms. (*See* Ex. 2 at 66:19-69:19.) While Plaintiffs may argue that less intrusive means may

19    have accomplished the same result, Officer Hobbs was not required to use the least intrusive means

20    available, but merely reasonable means. (*See Scott*, 39 F.3d at 915.) Moreover, given Mr. Davis's

21    breathing difficulties and handcuffed position, any other means—such as attempting to remove the cuffs

22    while Mr. Davis was still in the vehicle, to stand him upright outside, or to lean him against the

23    vehicle—may have prolonged the handcuff-removal process or subjected Mr. Davis to injury. Under

24    these circumstances, Officer Hobbs exhibited serious concern for Mr. Davis's condition and took

25    reasonable measures to ensure his well-being. This incident is thus materially distinguishable from those

26    at issue in *Wall*, *LaLonde* and *Palmer* and, like the incident in *Hupp*, did not result in a violation of Mr.

27    Davis's Fourth Amendment rights.

28    ///

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd      -12-      Case No. C 07-03365 EDL

1

2

> **3.  Because the City's Officers Had Probable Cause to Arrest Plaintiff for Not Wearing A Seatbelt, the Arrest Did Not Constitute a False Arrest in Violation of the Fourth Amendment.**

3   Plaintiffs' allege that the City's officers "false detained" Mr. Davis. (FAC, ¶ 16.) As discussed

4   in section III(B)(1), *supra*, the investigatory detentions of August 2, August 3, September 27, and

5   December 27, 2006, were all justified by reasonable suspicion that a crime was being or was about to be

6   committed. To the extent Plaintiffs are referring to Mr. Davis's August 3, 2006 arrest for failure to wear

7   a seatbelt, this arrest was justified by probable cause.

8   "If an officer has probable cause to believe that an individual has committed even a very minor

9   criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."

10   *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Probable cause to arrest requires "the existence

11   of facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person

12   in believing that the suspect has committed, is committing, or is about to commit an offense." *U.S. v.*

13   *Wesley*, 293 F.3d 541, 545 (9th Cir. 2002) (internal citations omitted). "[T]he existence of probable

14   cause must be determined objectively from the facts and circumstances known to the officers at the time

15   of the arrest." *Id.* at 546, n. 4 *(citing Whren v. U.S.*, 517 U.S. 806, 813 (1996)).

16   Here, the facts and circumstances known to Officer Hobbs at the time of the August 3, 2006

17   incident were that Plaintiff was riding in a vehicle without wearing a seatbelt, in violation of California

18   Vehicle Code § 27315(e). Mr. Davis has conceded as much. (Ex. 2 at 60:17-20.) Officer Hobbs thus

19   had well more than probable cause to believe that Mr. Davis committed a traffic offense, no matter how

20   minor it may appear. Moreover, in both *Hupp* and *Atwater*, the officers' observation that the plaintiffs

21   were not seatbelted justified the subsequent arrest and detention. *Hupp*, 389 F.Supp.2d at 1232;

22   *Atwater*, 532 U.S. at 354. Accordingly, Officer Hobbs's arrest and detention of Mr. Davis for not

23   wearing a seatbelt was supported by probable cause and thus did not violate Mr. Davis's Fourth

24   Amendment rights.

25

26

> **4.  Because Plaintiff's Have Produced No Evidence of Intentional Discrimination, Their Claim for Racial Profiling Fails as a Matter of Law.**

27   Plaintiffs appear to allege that they have been victims of racial profiling at the hands of the City's

28   officers. (FAC, ¶¶ 2, 16, and at 9:14.) They thus appear to be pleading a cause of action for selective

---

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427sf0001\MSJ\MSJ-mot.mpa.wpd                -13-                Case No. C 07-03365 EDL

1  enforcement of the law in violation of the Equal Protection Clause of the Fourteenth Amendment. In

2  *Snowden v. Hughes*, 321 U.S. 1, at 8 (1944), the U.S. Supreme Court stated:

3          The unlawful administration by state officers of a state statute fair on its
           face, resulting in its unequal application to those who are entitled to be
4          treated alike, is not a denial of equal protection unless there is shown to be
           present in it an element of intentional or purposeful discrimination. This
5          may appear on the face of the action taken with respect to a particular class
           or person ... [citations], or it may only be shown by extrinsic evidence
6          showing a discriminatory design to favor one individual or class over
           another not to be inferred from the action itself [citations]. But a
7          discriminatory purpose is not presumed ... [citations] there must be a
           showing of 'clear and intentional discrimination'[.]

8

9  Accordingly, for Plaintiffs to sustain a claim for racial profiling in violation of the Equal Protection

10 Clause, they would have to produce evidence of discriminatory intent on the face of the action—e.g.,

11 racial slurs or epithets—or evidence indicating such an intent through a showing that non-African-

12 Americans are treated differently.

13         Plaintiffs have produced neither type of evidence here. Despite the allegations in the FAC,

14 Plaintiffs have testified that the City's officers did not direct any racial epithets at them during any of

15 their mutual encounters. (Ex. 2 at 46:24-50:17, 76:1-17, 108:19-109:8; Ex. 3 at 43:18-22.) Nor have

16 they produced any other evidence—such as witness statements or officer testimony—indicating that

17 racial animus played any role in these encounters. Plaintiffs may argue that Officer Miller's statement

18 that "we don't like your kind here" exhibited the requisite discriminatory intent. However, not only does

19 the statement itself lack any indication of specifically racial animus, but Officer Miller made it only after

20 Mr. Davis had called him "an out of shape pig." Given this context and the complete absence of any

21 other evidence supporting racial animus, the "your kind" in this statement simply meant that which

22 Officer Miller attempted to explain to Mr. Davis: people exhibiting confrontational attitudes and

23 disrespect toward law-enforcement officers. (Miller Dec., ¶ 3.)

24         Plaintiffs have also failed to produce any extrinsic evidence of a design on the part of the City's

25 officers to favor one class—i.e., non-African-Americans—over African-Americans. They have not

26 demonstrated that City officers do not cite or arrest non-African-Americans for driving unregistered

27 vehicles, failing to stop at stop signs, failing to use turn signals, or failing to wear helmets on

28 motorcycles or seatbelts in automobiles. Plaintiffs have also produced no evidence that City officers do

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                    -14-                              Case No. C 07-03365 EDL

1   not respond to 911 hang-up calls from the residences of non-African-Americans.  Accordingly, Plaintiffs

2   have not only failed to produce evidence of the "clear and intentional discrimination" *Snowden* requires,

3   they have failed to produce any evidence of racial discrimination at all.  The City thus cannot be held

4   liable for its officers alleged violation of Plaintiffs' equal protection rights.

5          **5.   Because Plaintiff's Have Produced No Evidence of Deprivation of Liberty,
            Their Claim for Violation of the Due Process Clause Fails as a Matter of
6          Law.**

7          In their cause of action for violation of the Fourteenth Amendment, Plaintiffs allege that they

8   "were deprived of their liberty to leave their home during Sgt. Celli's shift [between August and

9   December 2006] because of all the undue harassment which always occurred during his evening shift."

10  (FAC, ¶ 15.)  Plaintiffs appear to base this allegation on their encounters with City officers, described

11  above, as well as on their testimony that Sgt. Celli drove by their home up to five times per week

12  between August and December 2006.  However, they have produced no evidence that they were

13  deprived of the liberty to leave their home as free, law-abiding citizens are entitled to do.

14         With respect to their actual contacts with Clearlake Police Officers, Plaintiffs have only produced

15  evidence that, when they violate the law, the officers cite and briefly detain them for the violation.  As

16  discussed in sections III(B)(1) and (2), *supra*, Plaintiffs concede to a violation of law giving rise to every

17  encounter with the City's officers between August and December, 2006.  Accordingly, while Plaintiffs

18  may have been deprived of their liberty to violate the law with impunity, this liberty is not protected by

19  the Due Process Clause of the Fourteenth Amendment.

20         With respect to Sgt. Celli allegedly driving by Plaintiffs' home, Plaintiffs have not produced any

21  evidence that Sgt. Celli did so with an intent to confine them to their home.  They do not claim that Sgt.

22  Celli ever spoke to them on these occasions, attempted to do so, or even knew that Plaintiffs were home.

23  In addition, they have produced no evidence that they ever attempted to leave their home on such an

24  occasion, but were prevented by Sgt. Celli from doing so.  Instead, Plaintiffs base the alleged deprivation

25  of liberty on their own subjective fear, a fear resulting from encounters which themselves resulted from

26  Plaintiffs' violations of the law.  (*See* FAC, ¶ 15.)  Moreover, in alleging a deprivation of their liberty,

27  Plaintiffs are attempting to deprive Sgt. Celli and other City officers of the ability to perform their job by

28  patrolling the streets of Clearlake.  Because Plaintiffs have not produced any evidence that they were

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427sf0001\MSJ\MSJ-mot.mpa.wpd          -15-                    Case No. C 07-03365 EDL

1  actually deprived of their liberty to engage in lawful activities outside their home, they cannot sustain a
2  claim against the City based on this supposed deprivation.

3              6.       **Plaintiffs Have Not Demonstrated That "Deliberate Indifference" on the Part**
                      **of the City Resulted in the Alleged Constitutional Violations.**
4

5          As discussed in the previous sections, Plaintiffs cannot demonstrate, as a matter of law, that any
6  City officer deprived them of their federal rights. Accordingly, they cannot sustain a claim for municipal
7  liability under *Monell*, *Canton* and *Heller*, all of which require a predicate constitutional violation. *See*
8  *Monell*, 436 U.S. at 690-694; *see Heller*, 475 U.S. at 799; *City of Canton*, 489 U.S. at 389-391.
9  However, even if Plaintiffs were able to produce evidence of a constitutional violation, they would still
10  have to show that the violation resulted from a City custom or policy amounting to "deliberate
11  indifference" to their federal rights. *City of Canton*, 489 U.S. at 388-389. A municipality exhibits such
12  "deliberate indifference" only when the act or omission giving rise to the alleged constitutional violation
13  "reflects a 'deliberate' or 'conscious' choice" on the part of the municipality, "where ...a deliberate
14  choice to follow a course of action is made from among various alternatives by city policymakers[,]" and
15  this choice reflects indifference to the constitutional rights of others. *Id.* at 389-391 (citations omitted).

16          Here, Plaintiffs have produced no evidence that City policymakers deliberately made a choice to
17  follow a course of action reflecting indifference to their constitutional rights. They allege that the City
18  failed to investigate citizen complaints properly, presumably because their own complaints were
19  determined to be unfounded. (*See* FAC, ¶ 17.) However, those complaints were determined to be
20  unfounded because, as discussed in the previous sections, no misconduct or constitutional violation
21  occurred. (*See* Ex. B at 1; *see* Ex. E at 6.) Moreover, Mr. Davis was given the opportunity to relate his
22  version of events as part of the Internal Affairs investigations triggered by his complaints. (*See* Ex. B at
23  3-4; see Ex. E at 1-4.)

24          Plaintiffs also allege that the Clearlake Police Department "does not monitor complaints filed
25  against its officers as a means of detecting problems before they occur." (FAC, ¶ 18.) First, as discussed
26  in the preceding sections, no "problems" in the form of constitutional violations occurred with respect to
27  Plaintiffs. Instead, the City officers properly cited and detained Plaintiffs for violations that Plaintiffs
28  themselves concede. Second, Plaintiffs have produced no evidence that the City does not monitor

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                           -16-                           Case No. C 07-03365 EDL

1 | complaints against its officers. On the contrary, the Clearlake Police Department conducted a full

2 | investigation of each of Plaintiffs' complaints. (*See* Ex. B, Ex. E.) That the results

3 | were—justifiably—not to Plaintiffs' liking does not amount to deliberate indifference to Plaintiffs'

4 | rights.

5 | Even if Plaintiffs were able to show that any individual officer deprived them of their rights, this

6 | showing would not satisfy *City of Canton*'s "deliberate indifference" standard. *See Blankenhorn v. City*

7 | *of Orange*, 485 F.3d 463, 484-485 (9th Cir. 2007). The *Blankenhorn* plaintiff offered evidence that the

8 | City of Orange may not have trained a particular officer adequately with respect to the use of force. *Id.*

9 | at 484. The court held that, while such training may reflect negligence on the part of the municipal

10 | defendant, it did not amount to the "program-wide inadequacy in training" required for a showing of

11 | deliberate indifference. *Id.* at 484-485. Accordingly, even if Plaintiffs were able to show that the City

12 | inadequately supervised any single officer, and that this inadequate supervision resulted in a

13 | constitutional deprivation, this showing would be insufficient to hold the City liable under § 1983.

14 | **C.    Because 18 U.S.C. §§ 241 and 242 Are Penal Statutes That Do Not Provide Private**
15 | **Rights of Action, Plaintiffs' Causes of Action Pursuant to Those Statutes Have No**
   | **Merit as a Matter of Law.**

16 | Plaintiffs' first two causes of action are brought pursuant to 18 U.S.C. §§ 241[3] and 242[4],

17 |

18 | [3]18 U.S.C. § 241 states:

19 | If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws
20 | of the United States, or because of his having so exercised the same; or

21 | If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured–

22 | They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or
23 | an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.
24 |

25 | [4]18 U.S.C. § 242 states:

26 | Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or
27 | protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined
28 | under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives,

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                    -17-                    Case No. C 07-03365 EDL

1 | respectively. (FAC, ¶¶ 9-10.) These statutes provide only for criminal penalties for the violation of civil

2 | rights; they do not provide private rights of action. *See Moore v. Kamikawa*, 940 F.Supp. 260, 265 (D.

3 | Hawaii 1995). Accordingly, they do not provide bases for Plaintiffs' claims in this civil lawsuit.

4 | Moreover, § 241 prohibits only concerted action by "two or more persons." Here, the City is a single

5 | entity and thus a single "person." The City is thus entitled to judgment as a matter of law as to Plaintiffs'

6 | first two causes of action.

7 |
**D.** **Because 42 U.S.C. § 14141 Does Not Provide a Private Right of Action, Plaintiffs' Cause of Action Pursuant to it Has No Merit as a Matter of Law.**

8 |
9 | Plaintiffs allege a cause of action for "violation of civil rights under the Law Enforcement

Misconduct Statute, 42 U.S.C. § 14141." (FAC, ¶ 11.) That section provides:

10 |
11 |
(a) Unlawful conduct

12 |
13 |
14 |
It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

15 |
16 |
(b) Civil action by Attorney General

17 |
18 |
Whenever the Attorney General has reasonable cause to believe that a violation of paragraph (1) has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.

19 | The statute specifically provides a right of action only by the Attorney General, in the name of

20 | the United States. It does not provide a private right of action. Accordingly, because Plaintiffs are

21 | private individuals, the City is entitled to judgment as a matter of law as to this cause of action.

22 |
**E.** **Because the City is a Single Entity, It Cannot Be Liable for Conspiracy to Interfere with Civil Rights under 42 U.S.C. § 1985.**

23 |
24 | Plaintiffs allege a cause of action for conspiracy to interfere with civil rights pursuant to

25 |

26 | or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts
27 | committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.
28 |

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427sf0001\MSJ\MSJ-mot.mpa.wpd                    -18-                    Case No. C 07-03365 EDL

1  42 U.S.C. § 1985. That section only prohibits violations committed by "two or more persons." (42
2  U.S.C. §§ 1985(1)-(3).) Here, the only named defendant is the City of Clearlake, a single entity.
3  Because the City cannot consist of "two or more persons," § 1985 is inapplicable on its face to Plaintiff's
4  allegations. Accordingly, the City is entitled to judgment as a matter of law as to this cause of action.

5  **F.    As a Matter of Law, Plaintiffs May Not Recover Punitive Damages from the City, a
       Public Entity.**
6

7        In the FAC's prayer for relief, Plaintiffs' seek "[c]ompensation for punitive damages[.]" (FAC, at
8  9:13-16.) The City—the only named defendant—is a local governing body. Whether Plaintiffs construe
9  their causes of action as federal or state claims, the City is immune from liability for punitive damages.
10 Local governing bodies are immune from punitive damages in suits brought under 42 U.S.C. § 1983.
11 *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981). And California Government Code
12 § 818 provides, in pertinent part: "[n]otwithstanding any other provision of law, a public entity is not
13 liable for ... damages imposed primarily for the sake of example and by way of punishing the defendant."
14 Accordingly, Plaintiffs may not recover punitive damages from the City under any theory. Summary
15 adjudication of this issue should thus be granted in the City's favor.

16 **G.    Because Plaintiffs Suffer No Continuing Wrongs, They Are Not Entitled to the
       Equitable Relief They Seek.**
17

18       In the FAC's prayer for relief, Plaintiffs request the following equitable relief:

19            (B)  Any officers to be found guilty of any civil or criminal charges to be
                 prosecuted.
20
              (C)  Conduct a full investigation into the Clear Lake [sic] Police
21                Department and Employees (past and present).

22       While equitable relief is available in lawsuits brought pursuant to 42 U.S.C. § 1983, the relief
23 must actually be remedial, i.e., it must actually right the wrongs of which the plaintiffs complain. *See*
24 *Milliken v. Bradley (Milliken II)*, 433 U.S. 267, 282 (1977). Common examples of § 1983 suits in which
25 equitable relief is appropriate include school-desegregation and prison-condition cases. *See, e.g., id.*;
26 *see, e.g., Hutto v. Finney*, 437 U.S. 678, 687 (1978).

27       Here, both Plaintiffs have testified that they have had no further contact with City of Clearlake
28 Police Officers since January of 2007. (Ex. 2 at 126:13-127:22; Ex. 3 at 49:4-50:2.) Accordingly, even

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd                    -19-                           Case No. C 07-03365 EDL

1    if they had suffered wrongs at the officers' hands, they no longer do so. Any equitable relief—especially

2    the overly broad relief Plaintiffs seek—would thus not remedy Plaintiffs' present situation, as Plaintiffs'

3    present situation, by their own admission, does not require remedial action. Summary adjudication of

4    this issue should thus be granted in favor of the City, and the prayers for equitable relief should be

5    dismissed.

6    **V.**    **CONCLUSION**

7         For the foregoing reasons, the City respectfully requests that the Court grant its motion for

8    summary judgment and dismiss Plaintiffs' First Amended Complaint in its entirety with prejudice. In

9    the alternative, the City respectfully requests that the Court grant its motion for partial summary

10    judgment on the grounds that the City is entitled to judgment as a matter of law as to any one or more

11    claims or prayers for relief against it, and requests that those claims or prayers for relief be dismissed

12    with prejudice.

13

14    Dated: July 8, 2008.

15                             LOW, BALL & LYNCH

16

17                          By _____

18                             DALE L. ALLEN, JR.
                               DIRK D. LARSEN
                               Attorneys for Defendant

19                                CITY OF CLEARLAKE

20

21

22

23

24

25

26

27

28

DEFENDANT CITY OF CLEARLAKE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

J:\1427\sf0001\MSJ\MSJ-mot.mpa.wpd             -20-                 Case No. C 07-03365 EDL

Exhibit 10

After studying the audio excerpt in Protools (a digital audio workstation) it appears that this copy has likely been edited from the original. In one spot in particular it is evident that there was what we in the audio industry call a 'punch' in. A punch in is when the tape is rewound to a desired point and while playing or stopped, recording is engaged and the erase and record heads make contact to the tape simultaneously erasing what was on the tape and recording the audio input. The specific spot at which this happens is called a 'punch'.

located at the word "apparently" the "ly" portion of the word is clearly missing in and cut off sounding. The visual waveform representation in protools confirms this. Approximately 2 sec earlier in the recording there is a word that has a similar but less apparent anomaly. The person says "officer you issued th….". The word after 'issued' seems to be cut off as well. Based on my experience as a professional recording engineer I would deem these 2 spots as possible punch points.

Timin Murray
Recording Engineer
Russian River Studio

Exhibit 11



# CLEARLAKE POLICE DEPARTMENT
# INTEROFFICE MEMORANDUM

**Robert "Bob" Chalk**
**Chief of Police**

*DATE: 8/2/06*

*TO:  Captain Larsen*

*FROM: Sgt. Tim Celli*

*SUBJECT:  Contact with David Davis*

---

On 8/2/06, I reported for duty and found the memorandum you wrote regarding David Davis coming in to see you. This is one time that I would like to express my disappointment in not having a working video camera with audio. I would have loved the opportunity to play the tape for you unfortunately it does not exist. I would like you to know that I was present the entire time Officer Miller had contact with Mr. Davis and at no time was Davis treated disrespectful. As a matter of fact it was I that initiated the contact with Mr. Davis.  Last night Mr. Davis pulled into the Fliers gas station in his vehicle. He had no license plates and no paperwork displayed to indicate he had a registration in process. I pulled up in my patrol vehicle and simply asked "hey man what happened to your plates"? I had not exited my patrol vehicle as I was expecting the individual to give me a simple explanation and I would have been on my way. Mr. Davis immediately responded with an attitude and hostile demeanor, stating that it was registered and the plates were in the mail. I asked him why he did not have a tag in the window indicating the vehicle was registered. He said "man, call DMV, I am tired of being fucked with by you guys". I decided that this was a perfect opportunity to verify if he had some paperwork indicating that his vehicle was in fact registered. It should be noted that prior to this incident, I did not know this subject nor do I believe I have ever had contact with him.

At that point Officer Miller, who was also at Fliers on a separate traffic stop with PJ Dawson, had just issued a citation and cleared the stop he was on. Officer Miller came over to my location. I exited my patrol vehicle to contact Mr. Davis. I contacted Mr. Davis and asked him if he had any paperwork indicating that he was the owner of the vehicle and he stated "it was all in the mail". He then immediately said you are just fucking with me because you see a black man with a nice car. You fucking cops even pull me over when I am in my Jaguar it is just because I am black and you are jealous. I explained to him that I did not know he was black and that I originally would have thought that he was Polynesian or something like that. I explained to him that it had nothing to do with the color of his skin and I simply asked him why he did not have any plates on the vehicle. I asked him why he had such and attitude with us and he said because I don't like pigs fucking with me.

It was at this time that I asked him if he was on parole or probation. He responded at first by saying what difference does it make. What does that have to do with anything. I explained to him that it was a common question that I ask and I explained to him that I noticed he had several tattoos that appeared to be prison type tattoos. Mr. Davis commented that I had tattoos and asked if it meant that I was on parole or probation. A short time later Mr. Davis did admit that he had previously been to prison and when I asked why he said "for guns, dope shit like that". When I asked him if it was five years ago that he was on parole. I asked how long he had been in Clearlake and he said "too long ,five months listen don't you have anything better to do. I explained to him that I did not have anything better to do at this moment. He said that this was bullshit and again made the comment that we were just harassing him because he was black. He stated several times that this was a bullshit Police Department and we were a joke ,he did not like the way we handle things, and he was moving. It was at this time that Officer Miller commented that it was a good idea for him to move

because we did not want people living in Clearlake with disrespectful attitudes like his. Mr. Davis immediately went off on Miller that he was making the comment because he was black. Officer Miller attempted to clarify with Mr. Davis that it was because of his attitude that the comment was made, but it did not make any difference, Mr. Davis had his mind made up and his focus was on disrespecting Officer Miller. At no time did Officer Miller make any comments that would indicate anything to do with his race. I asked Mr. Davis if he was in a gang when he was in prison and he said look it up in your computer it makes no difference and he did not have to tell me.

During most of our contact with, Mr. Davis, he focused on Officer Miller for some reason, even though I was asking most of the investigative questions. Mr. Davis referred to Officer Miller's weight and size several times and said look at him in a disgusted manner several times during the course of the conversation. It was obvious that Mr. Davis was putting on a show for his wife who was quiet standing nearby. Mr. Davis was completely disrespectful towards Officer Miller and uncooperative in general. I asked Mr. Davis why he was being so disrespectful when no one had disrespected him and he simply said I just don't like cops. Mr. Davis was very belligerent, disrespectful and uncooperative during the entire contact. This behavior was completely unwarranted and uncalled for. Neither Officer Miller or myself disrespected Mr. Davis in anyway. As a matter of fact I believe that Officer Miller had a very good demeanor especially while being faced with such a disrespectful person. Officer Miller kept his composure even while under fire with personal attacks on his appearance by Mr. Davis.

Mr. Davis is obviously anti Law Enforcement and it is my opinion that based on his demeanor and attitude towards Officers he is a threat to this community. It is obvious that Mr. Davis changed behavior while talking with you today and put on a act. It is very unfortunate that I do not have a recording of our contact with Mr. Davis because I believe you would be of a similar opinion.

I looked up the incident in the leads system after receiving your memorandum. I noticed Officer Miller had made notes in the narrative section of this incident in leads (see attached). He made these notes after the incident. Officer Miller told me he was going to make the notes in leads and commented that he does it on most citations that he writes. As per your request, I have not spoken with Officer Miller regarding your memorandum however it was brought to my attention by other Officers that this individual came into make a "beef" against us. So as far as I know Officer Miller is unaware that Mr. Davis came in unless it was brought to his attention by other Officers who were working when Mr. Davis came in.

I would like to re iterate that I stand behind Officer Miller's actions. Mr. Davis was rude disrespectful and uncooperative and he was treated appropriately based on the circumstances. He verbally abused Officer Miller to the point that I am sure it hurt his feelings. Although based on Mr Davis' hostile behavior toward law enforcement, he very easily could have found himself in handcuffs especially with a less experienced Officer, but we were not going to lower our standards and create a situation to favor his claims simply because he is rude and verbally abusive. I would like you to know at no time was Mr. Davis mistreated, disrespected, or treated inappropriately. I am aware that Officer Miller tends to talk down to people at times, but I can assure you that this was not the situation here. Mr. Davis clearly had an attitude form the start without provocation and spent most of his time being verbally abusive toward Officer Miller. It should be noted that Mr. Davis continued to make rude comments to Officer Miller while he issued the citation. It should also be noted that Mr. Davis did not sign the citation as per his signature on his identification (it was completely different) and therefore we asked him to sign the citation again. Of course he had an attitude about that to the point that he was warned that if he did not sign the citation appropriately it would be taken as a refusal to sign and we would be forced to book him at the Lake Count Jail. He eventually signed the citation and we left

Thank you for bringing this to my attention and I hope that you find this informative and helpful for any other false claims that Mr. Davis might make against our Officers. I am sure he painted a different picture for you. I would respectfully decline to talk with this rude ,disrespectful person again, nor subject Officer Miller to any more verbal abuse from this individual.

Respectfully submitted by
Sgt. Timothy V. Celli

Exhibit 12

C. RLAKE POLICE DEPARTMENT  CA017. 0          CN  62456
                TRAFFIC STOP  (60803002)              Page    1

CODE SEC:        12500(A) VC   DRIVE W/O LICENSE
SECONDARY:         22108 VC   Turning without signalling 100ft prior
                 27315(E) VC   PASSENGER NOT SEAT BELTED

DATE/TIME REPORTED:    Thurs. 08/03/06 01:38 hrs.

DATE/TIME OCCURRED:    Thurs. 08/03/06 01:38 hrs.
LOCATION OF OCCURENCE: MODOC ST / SONOMA AVE

PASSENGER-1:     DAVIS, DAVID MARSHALL      BM32   (07/08/74) (707) 995-0749
ADDRESS:         3230 2ND ST, Clearlake, CA 95422
OTHER DESCR:     PO BOX 3225

SUSPECT-1:       DAVIS, PAGE CHRISTINE      WF31   (09/27/74) (707) 995-0749
OTHER ROLES:     DRIVER
ADDRESS:         3230 2ND ST, Clearlake, CA 95422
DL NO./STATE:                                                  AR NO.:      0
RACE: White               SEX: F HT: 503    WT: 115   HAIR: BRO  EYES: BRO
OTHER DESCR:     PO BOX 3225 CLK

VEHICLES INVOLVED:
PASSENGER-1:     WHI /WHI  1989 CHEV SUB SW 3SPL922  CA   2/ 6
                 Suspect Vehicle, Impounded: See CHP180

DETAILS OF INVESTIGATION:

A) SYNOPSIS: PAGE CHRISTINE DAVIS was cited and released for 12500(A) VC (Drive
with out a license).

B-C) N/A

D) ADDITIONAL OFFICERS: Officer Hardisty and Sergeant Celli.

E-G) N/A

H) NARRATIVE: On 8-3-06 at approximately 0138 hours, I was on patrol in a
marked police vehicle, wearing a full uniform. I was traveling west on
Arrowhead Drive approaching Park Street. I observed that the vehicle (Ca plate
3SPL922) that was traveling in front of me had an obstructed license plate in
violation of 5201 VC. After following the vehicle a few blocks I was able to see
the whole license plate. A check via dispatch revealed that the registration on
the vehicle was expired, in violation of 4000(A) VC. As the vehicle approached
the intersection of Arrowhead Drive and Park Street it failed to stop at the
stop sign, in violation of 22450(A) VC. The vehicle did however come to a stop
about 10 feet past the posted stop sign. The vehicle continued west on
Arrowhead Drive and then turned right (north) onto Modoc Street without using
its turn signal, in violation of 22108 VC.

I conducted a traffic stop on the vehicle and it pulled over on Modoc Street
just south of Sonoma Avenue.  As I approached the vehicle I saw that the driver
had a seat belt shoulder strap on.  I saw that the only passenger did not have a
seat belt shoulder strap on.  I contacted the driver and the passenger.  I saw
that the driver was wearing a seat belt and that the passenger was not.  The
driver identified herself as PAGE CHRISTINE DAVIS with a Florida ID card.  I
asked PAGE CHRISTINE DAVIS if she had a drivers license and she stated that she
did not have one.

I asked DAVID MARSHALL DAVIS for his identification and he stated that he did
not have any.  I asked DAVID MARSHALL DAVIS what his name was and he did not
reply.  I asked DAVID MARSHALL DAVIS what his name was again and he replied
quietly "what the fuck" and then I was not able to understand the rest.  I asked
DAVID MARSHALL DAVIS what his name was again and he would not tell me.  DAVID
MARSHALL DAVIS then began mumbling something to me which included the word
"fuck" but I was not able to understand what he said.  DAVID MARSHALL DAVIS then
handed me a piece of paper and told me that his name was on it and that I would
have to look at it to see his name.

I walked around to DAVID MARSHALL DAVIS's door (front passenger) seat, where
Officer Hardisty was standing.  I had DAVID MARSHALL DAVIS exit the vehicle.  I
advised DAVID MARSHALL DAVIS that since he was not wearing a seat belt and did
not have any form of identification I was going to be detaining him (40302 VC).
I walked DAVID MARSHALL DAVIS to the rear of my patrol vehicle and placed him
into handcuffs.  I then placed DAVID MARSHALL DAVIS in the rear seat of my
patrol vehicle.

A check via dispatch revealed that PAGE CHRISTINE DAVIS did not have a drivers
license.  Dispatch checked PAGE CHRISTINE DAVIS's ID card number out of Florida
also and she also did not have a Florida drivers license only an ID card.

I spoke with DAVID MARSHALL DAVIS and he was now more cooperative and gave me
his name and information.  DAVID MARSHALL DAVIS gave all the required
information to complete a traffic citation.

I had DAVID MARSHALL DAVIS exit my patrol vehicle and advised him that he was
being released.  DAVID MARSHALL DAVIS then started saying that he was having an
asthma attack and that he needed medical attention.  DAVID MARSHALL DAVIS said
he was a "diagnosed paranoid schizophrenic".  DAVID MARSHALL DAVIS was however
not breathing heavily or appearing to be in distress.  At DAVID MARSHALL DAVIS's
request I had dispatch send medical personnel.  I took DAVID MARSHALL DAVIS out
of handcuffs and he immediately fell forward onto the ground.  DAVID MARSHALL
DAVIS began rolling around on the ground and saying that he was going to sue us.
While waiting for medical personnel to arrive, DAVID MARSHALL DAVIS stated
several times that he was going to be filing a complaint against Officer
Hardisty and myself and that he was going to sue us and the department.

CLEARLAKE POLICE DEPARTMENT   CA017.   0          CN  62456
              TRAFFIC STOP   (60803002)            Page    3

I requested Sergeant Celli respond to my location and he arrived a short time
later.  I cited DAVID MARSHALL DAVIS for 27315(e) VC (seat belt required) on
citation #50128.  Medical personal arrived and attempted to look at DAVID
MARSHALL DAVIS, however he refused to be treated and walked away from the
medical personnel.

I cited PAGE CHRISTINE DAVIS for 12500(A) VC (Drive with out a license) and
22108 VC (failure to signal) on citation #52003.

Officer Hardisty completed a CHP 180 and had PAGE CHRISTINE DAVIS's vehicle
impounded per 14602.6 VC (Authority tom impound vehicle when driver does not
have a license).

I) RECOMMENDATIONS:  N/A

J) DISPOSITION:  Closed with citation issued.

CLOSED WITH CITATION ISSUED

REPORTED: 08/03/06 by OFFICER TIMOTHY HOBBS            INCIDENT: 60803002
RECORDED: 08/03/06 by SHERRI D VANNEST                 SUPPLEMENT:       0
REVIEWED: 08/04/06 by SERGEANT TIMOTHY CELLI
Follow up? Yes/ /No/ /Copies to: DET./ / PROBATION . LCSO/ /OTHER/ /

Exhibit 13

Msg - 08032006091233836, Date - 08/03/2006, Time - 02:12:33
4CLK0DMXCSV.IV


DATE: 08/03/06 TIME: 01:55
INSURANCE INFORMATION UNKNOWN
POSSIBLE FILE CODES: A(3SPL922) S(3SPL922)
REG VALID FROM: 02/10/05 TO 02/10/06
LIC#:3SPL922 YRMD:89 MAKE:CHEV BTM :SW VIN :1GNGV26K3KF120502
R/O :SROKA JOHN A, 44 LONGWOOD CT CITY:SAN RAMON C.C.:07 ZIP#:94582
SOLD:00/00/89 RCID:01/01/05 OCID:09/27/96 LOCD:3

TYPE:11 POWR:G VEH :12 BODY:S CLAS:CL *-YR:96
REC STATUS:
02/03/05 ELECTRONIC SMOG CERT VALID UNTIL 05/04/05

09/17/96 PREV LIC    4Y87334

RELEASE OF LIABILITY (REG. 138)
RECEIPT DATE:02/16/05  TRANSFER DATE:02/04/05  SELL PRICE:002200
BUYER:GILL WILLIAM D, 1545 SADDLEBACK DR
CITY:SAN ANDREAS   SELLER:SAME AS R/O ON FILE


CLEARANCE INFORMATION RECORDS:

| OFFICE | WORK DATE | TECH/ID | SEQ # | VALUE | FICHE DATE | TTC |
|--------|-----------|---------|-------|-------|------------|-----|
| 145 | 02/04/98 | A9 | 1762 | 00205.00 | 02/05/98 | POT |
| 142 | 01/21/98 | 08 | 0580 | 00205.00 | PRIOR SUSPENSE | |
| 144 | 01/25/99 | 32 | 1326 | 00148.00 | 01/28/99 | POT |
| 143 | 01/26/00 | 30 | 3265 | 00120.00 | 01/27/00 | POT |
| 140 | 02/22/01 | 54 | 3560 | 00106.00 | 02/23/01 | POT |
| 141 | 02/07/01 | 30 | 2759 | 00106.00 | PRIOR SUSPENSE | |
| 140 | 03/01/02 | 31 | 8753 | 00065.00 | 03/05/02 | POT |
| RI1 | 02/11/02 | 50 | 0046 | 00065.00 | PRIOR SUSPENSE | |
| 142 | 03/24/03 | 41 | 2051 | 00070.00 | 03/26/03 | POT |
| 143 | 02/21/03 | 45 | 6523 | 00058.00 | PRIOR SUSPENSE | |
| RI1 | 02/09/04 | 50 | 7164 | 00065.00 | 02/09/04 | POT |
| 143 | 12/23/04 | 23 | 7721 | 00062.00 | 12/24/04 | POT |

09/06/1996-ODOMETER:   120,706 MILES  ACTUAL MILEAGE


END

Exhibit 14

7F9IC S S 741

INTERIM DRIVER LICENSE

D5847841          CLASS C

ISSUED:07-06-06    530          EXPIRES:09-03-06

DAVID MARSHALL DAVIS                    SEX:M   HAIR:BLK    EYES:HZL
PO BX 3225                              HT:5-07  WT:190   DOB:07-08-74
CLEARLAKE      CA  95422

THIS LICENSE IS ISSUED AS A LICENSE TO DRIVE A MOTOR VEHICLE;
IT DOES NOT ESTABLISH ELIGIBILITY FOR EMPLOYMENT, VOTER
REGISTRATION, OR PUBLIC BENEFITS.

X _____
   530    07-06-06    03/5014

Exhibit 15

1  DALE L. ALLEN, JR., # 145279
   DIRK D. LARSEN, # 246028
2  LOW, BALL & LYNCH
   505 Montgomery Street, 7th Floor
3  San Francisco, California 94111-2584
   Telephone (415) 981-6630
4  Facsimile (415) 982-1634

5  Attorneys for Defendant
   CITY OF CLEARLAKE
6  (erroneously named herein as CLEARLAKE POLICE DEPARTMENT)

7  .

8              IN THE UNITED STATES DISTRICT COURT FOR

9              THE NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

12  DAVID DAVIS and PAGE GEARHART-DAVIS    )    Case No. C 07-03365 EDL
    PRO-SE,                                )
13                                         )    DECLARATION OF OFFICER
                      Plaintiffs,          )    TIMOTHY HOBBS IN SUPPORT
14                                         )    OF DEFENDANT CITY OF
            vs.                            )    CLEARLAKE'S MOTION FOR
15                                         )    SUMMARY JUDGMENT, OR IN
                                           )    THE ALTERNATIVE, PARTIAL
16  CLEARLAKE POLICE DEPARTMENT,           )    SUMMARY JUDGMENT
                                           )
17                    Defendants.          )    Date:        August 12, 2008
                                           )    Time:        9:00 a.m.
18  _____ )    Courtroom:   E, 15th Floor
                                                Judge:       Hon. Elizabeth D.
19                                                           LaPorte

20       I, TIMOTHY HOBBS, declare as follows:

21       1.    I have personal knowledge of the following facts, and could and would testify

22  competently thereto if called upon to do so.

23       2.    I am currently employed by the City of Clearlake as an officer in the City of Clearlake

24  Police Department. I have been a City of Clearlake Police Officer since February 24, 2003.

25       3.    On August 3, 2006, at approximately 1:30 a.m., I observed a white Chevrolet Suburban

26  fail to stop at a stop sign and fail to use a turn signal near the intersection of Modoc Street and Sonoma

27  Avenue in Clearlake, California. A dispatch check revealed that the registration on the vehicle had

28  expired. I stopped the vehicle and, as I approached it, noticed that the adult male in the passenger seat

-1-

1   was not wearing a seatbelt. I later learned that this individual was plaintiff David Davis, and that his

2   wife, plaintiff Page Davis, was driving the vehicle. I requested photo identification from Mr. Davis,

3   which he failed to provide. Accordingly, I handcuffed Mr. Davis and placed him in my patrol vehicle

4   until his identity could be determined, pursuant to California Vehicle Code § 40302(a). As soon as Mr.

5   Davis began claiming that he was experiencing breathing difficulties, I radioed Clearlake Police

6   Department dispatch and requested that medical personnel be dispatched to the scene.

7        I swear under penalty of perjury under the laws of the State of California that the foregoing is

8   true and correct to the best of my own personal knowledge.

9

10      Executed this ____ day of July, 2008, in Clearlake, California.

11

12                                          TIMOTHY HOBBS

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 16



Exhibit 17

# *CLEARLAKE POLICE DEPARTMENT INTEROFFICE MEMORANDUM*

**Robert "Bob" Chalk
Chief of Police**

*DATE: 8/3/06*

*TO: Captain Larsen*

*FROM: Sgt. Tim Celli*

*SUBJECT: Another contact with David Davis 06-2456*

Captain I am writing this memorandum to inform you of another Police contact with David Davis. Last night, during the shift Officer Hobbs and Hardisty made a traffic stop on a white Suburban. Inside the vehicle, as a passenger, was David Davis. Apparently he was giving Officer Hobbs similar problems that he gave Officer Miller and I the night before, refusing to identify himself and he was detained by Officer Hobbs in handcuffs. He was momentarily placed in the back of his patrol unit during his detention. I learned that he was out with David Davis when he ran his name over the radio. I requested Officer Hobbs to call me regarding this subject. My call to Officer Hobbs was to advise him to record his contact with Mr. Davis. Unfortunately officer Hobbs did not have a recording device. However Officer Hobbs informed me that he was giving him problems and he was detained. I advised Officer Hobbs to be careful with this subject and explained to him that Mr. Davis is anti law enforcement. I ended my conversation with Officer Hobbs. A short time later, I heard Officer Hobbs requesting Fire / Rescue to the scene because Mr. Davis was having an asthma attack. Officer Hobbs requested I respond to the scene. Mr. Davis ended up refusing medical attention when they arived and his asthma attack was very shored lived (obviously faked).

Prior to my arrival to the scene, I grabbed a tape recorder and responded. I surreptitiously recorded the contact with Mr. Davis I have enclosed the tape for your reference. It should be noted that Mr. Davis threatened me that I would be hearing from him several times, that he had lawyers and it was not over and called Officer Hobbs dirty as well as myself. In addition Mr. Davis again began calling me a racist. This was unprovoked and I asked him not to refer to me in that manner. I asked him not to threaten me then he began whispering to his wife who was also on scene.

I requested Officer Hobbs to complete a report detailing his contact with Mr. Davis. His case number is 06-2456.

Mr. Davis had much calmer demeanor during this contact than he did previously, but listening to the tape you can hear he does have the threatening tendencies and is somwhat disrespectful again calling us motherfuckers , racist and dirty.

Submitted by Sgt Tim Celli

CLE 0021

Exhibit 18

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL
**VEHICLE REPORT**
CHP 180 (Rev. 2-99) OPI 061

NOTE: CHP 180 IS FURNISHED TO ALL PEACE OFFICERS BY THE CALIFORNIA HIGHWAY PATROL

| REPORTING DEPARTMENT | LOCATION CODE | DATE / TIME OF REPORT | NOTICE OF STORED VEHICLE | FILE NO. | | |
|---|---|---|---|---|---|---|
| CLEARLAKE P.D. | 1702 | 08/03/06/045 | DELIVERED PERSONALLY ☑ | 06-2456 | | |

| LOCATION TOWED / STOLEN FROM | ODOMETER READING | VIN CLEAR IN SVS? ☒ YES ☐ NO | DATE / TIME DISPATCH NOTIFIED | LOG NO. |
|---|---|---|---|---|
| SONOMA / MODOC | 0398 4.4 | LIC. CLEAR IN SVS? ☒ YES ☐ NO | 08/03/06/2452 | |

| YEAR | MAKE | MODEL | BODY TYPE | COLOR | LICENSE NO. | ONE | MONTH / YEAR | STATE |
|---|---|---|---|---|---|---|---|---|
| 1989 | CHEVY | SUBURBAN | 4 DR. | NAT | 3SPL922 | ☒ TWO | 02/06 | CA |

| VEHICLE IDENTIFICATION NO. | ENGINE NO. | VALUATION BY ☑ OFFICER ☐ OWNER |
|---|---|---|
| 1 G N G V 2 6 K 3 K H 1 2 0 5 0 2 | | ☐ 0-300 ☒ 301-4000 ☐ 4001+ ☐ $ |

REGISTERED OWNER
SROKA, JOHN
44 LONGWOOD CT.
SAN RAMON CA

SAME AS R/O

LEGAL OWNER

☐ STORED   ☒ IMPOUNDED   ☐ RELEASED   ☐ RECOVERED - VEHICLE / COMPONENT

| TOWING / STORAGE CONCERN (NAME, ADDRESS, PHONE) | STORAGE AUTHORITY / REASON |
|---|---|
| ENTERPRISE TOWING  14935 OLYMPIC DR #B  9948801 | 14602.6 VC |

| TOWED TO / STORED AT | AIRBAG? | DRIVEABLE? | VIN SWITCHED? |
|---|---|---|---|
| SAME AS ABOVE | ☐ YES ☒ NO | ☐ 1 ☐ 2 ☒ YES ☐ NO ☐ JUNK ☐ UNK | ☐ YES ☒ NO |

| CONDITION | YES | NO | ITEMS | YES | NO | ITEMS | YES | NO | ITEMS | YES | NO | TIRES / WHEELS | CONDITION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WRECKED | | X | SEAT (FRONT) | X | | REGISTRATION | | X | CAMPER | | X | LEFT FRONT | FAIR |
| BURNED HULK per 431(c) VC | | | SEAT (REAR) | X | | ALT. / GENERATOR | X | | VESSEL AS LOAD | | | RIGHT FRONT | |
| VANDALIZED | | | RADIO | X | | BATTERY | | | FIREARMS | | X | LEFT REAR | |
| ENG. / TRANS. STRIP | | | TAPE DECK | | X | DIFFERENTIAL | | | OTHER | | X | RIGHT REAR | |
| MISC. PARTS STRIP | | | TAPES | | X | TRANSMISSION | X | | | | | SPARE | |
| BODY METAL STRIP | | | OTHER RADIO | X | | AUTOMATIC | X | | | | | HUB CAPS | |
| SURGICAL STRIP per 431(b) VC | | | IGNITION KEY | X | | MANUAL | | | | | | SPECIAL WHEELS | 023 |

| RELEASE VEHICLE TO: | ☐ R/O OR AGENT ☒ AGENCY HOLD | ☐ 22850.3 VC | GARAGE PRINCIPAL / AGENT STORING VEHICLE (SIGNATURE) | DATE | TIME |
|---|---|---|---|---|---|
| 30 DAY | | | | 8/7/06 | |

NAME OF PERSON / AGENCY AUTHORIZING RELEASE   I.D. NO.   DATE

CERTIFICATION: I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT I AM LEGALLY AUTHORIZED AND ENTITLED TO TAKE POSSESSION OF THE ABOVE DESCRIBED VEHICLE.

SIGNATURE OF PERSON AUTHORIZING RELEASE

SIGNATURE OF PERSON TAKING POSSESSION

☐ STOLEN VEHICLE / COMPONENT   ☐ EMBEZZLED VEHICLE   ☐ PLATE(S) REPORT

| DATE / TIME OF OCCURRENCE | DATE / TIME REPORTED | NAME OF REPORTING PARTY (R/P) | DRIVER LICENSE NO. / STATE |
|---|---|---|---|
| | | | |

| LAST DRIVER OF VEHICLE | DATE / TIME | ADDRESS OF R/P | TELEPHONE OF R/P |
|---|---|---|---|
| | | | ( ) |

I CERTIFY OR DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.

SIGNATURE OF PERSON MAKING REPORT

**REMARKS**
[LIST PROPERTY, TOOLS, VEHICLE DAMAGE, ARRESTS]

| DRIVER'S NAME | ARRESTED / SECTION? | REPORTED BY | CARGO / TYPE? | VALUE $ |
|---|---|---|---|---|
| DAVID DAVIS | ☒ YES ☐ NO 12500vc | S Hanaker | ☐ YES ☑ NO | ☐ BILL OF LADING ATTACHED |

* INVENTORY: ONE CD PLAYER (FACE PLATE)
* NARRATIVE: DRIVER WAS DRIVING WITHOUT A LICENCE
* DAMAGE: VARIOUS SCRATCHES AND DENTS THROUGHOUT VEHICLE



FRONT | LEFT SIDE | RIGHT SIDE | REAR | TOP

| SIGNATURE OF OFFICER TAKING REPORT | I.D. NO. | SUPERVISOR | REQUIRED NOTICES SENT TO REGISTERED AND LEGAL OWNERS PER 22852 VC? | ☐ YES ☐ NO | DATE NOTIFIED |
|---|---|---|---|---|---|
| S. Handcock | 148 | | | | |

OSP 99 18768

c180_299.frp

Exhibit 19

```
                    CALIFORNIA DEPARTMENT OF MOTOR VEHICLES
                         ***CUSTOMER RECEIPT COPY***
                       DRIVER LICENSE/IDENTIFICATION CARD
                              INFORMATION REQUEST
                                   01/03/08
DAK99933530K4A7016131
      DATE:01-03-08*TIME:15:32*
      DL/NO:A7016131*
      B/D:09-27-1974*NAME:GEARHART,PAGE CHRISTINE*
      MAIL ADD AS OF 09-11-07:PO BX 3225, CLEARLAKE 95422*
      RES ADD:3230 2ND ST, CLEARLAKE*
      OTH ADD AS OF 04-15-05:7903 BONNIE DOWNS WAYS, ELK GROVE*
      AKA:
      GEARHART,PAGE CHRISTINA*WARD,PAGE CHRISTINE*
      IDENTIFYING INFORMATION:
      SEX:FEMALE*HAIR:BROWN*EYES:BRN*HT:5-03*WT:110*
      ID CARD MLD:00-00-00*CANCELLED,LOST 11-02-01*
      LIC/ISS:09-11-07* EXP:09-27-12*CLASS:C NON-COMMERCIAL*
      ENDORSEMENTS:NONE*

      HEALTH QUESTIONNAIRE EXPIRES:NONE*
      LICENSE STATUS:
      VALID*
      DEPARTMENTAL ACTIONS:
      DRV LIC SUSPENDED*EFF:10-30-04*ORDER MAILED:09-30-04*
      AUTH:13365    *
      REASON:FAIL TO APPEAR NOTICE*SERVICE:M/04-15-05*
      ACTION ENDED 11-18-05*
      CONVICTIONS:
      NONE*
      FAILURES TO APPEAR:
      NONE*
      ACCIDENTS:
      NONE*

      * * * END * * *


                     530 010308 85 0039 VIR $    5.00
```

Exhibit 20

```
CODE SEC:            12500(A) VC   DRIVE W/O LICENSE
SECONDARY:             22108 VC    Turning without signalling 100ft prior
                    27315(E) VC    PASSENGER NOT SEAT BELTED

DATE/TIME REPORTED:     Fri.   08/18/06 00:34 hrs.

DATE/TIME OCCURRED:     Thurs. 08/03/06 01:38 hrs.
LOCATION OF OCCURENCE: MODOC ST / SONOMA AVE

PASSENGER-1:     DAVIS, DAVID MARSHALL          BM32    (07/08/74) (707) 995-
ADDRESS:         3230 2ND ST, Clearlake, CA  95422
OTHER DESCR:     PO BOX 3225

SUSPECT-1:       DAVIS, PAGE CHRISTINE          WF31    (09/27/74) (707) 995-
ADDRESS:         3230 2ND ST, Clearlake, CA  95422
DL NO./STATE:    A7016131/CA                                      AR NO.:
RACE: White            SEX: F HT: 503      WT: 115     HAIR: BRO  EYES:
OTHER DESCR:     PO BOX 3225 CLK

VEHICLES INVOLVED:
VEH-1:           WHI /WHI   1989  CHEV  SUB  SW  3SPL922   CA   2/ 6
                 Suspect Vehicle, Impounded: See CHP180
```

DETAILS OF INVESTIGATION:

A) SYNOPSIS:  Supplemental report.

B-G) N/A

H) NARRATIVE: On 8-3-06 during the contact with DAVID MARSHALL DAVIS a fixe
blade knife approximately 12 inches long was located in the vehicle.  DAVID
MARSHALL DAVIS stated the knife was his and he used it for camping.  While t
vehicle was being searched I placed the knife in my patrol vehicle, planning
returning it to DAVID MARSHALL DAVIS's vehicle prior to it being towed.  The
truck arrived and I forgot to put the knife back in the vehicle.  I later
located the knife in my patrol vehicle.  I asked Captain Larsen what to do w
the knife due to the fact that DAVID MARSHALL DAVIS was filing a formal
complaint about the stop.  Captain Larsen told me to package the knife in a
and mail it to DAVID MARSHALL DAVIS.  On 8-17-06 I packaged the knife in a b
and had dispatch place it in the outgoing mail.

I) RECOMMENDATIONS: N/A

J) DISPOSITION:  Closed with citation issued.


CLOSED WITH CITATION ISSUED

```
REPORTED: 08/18/06 by OFFICER TIMOTHY HOBBS              INCIDENT: 6080
RECORDED: 08/18/06 by SHERRI D VANNEST                   SUPPLEMENT:
REVIEWED: 08/18/06 by SERGEANT TIMOTHY CELLI
Follow up? Yes/ /No/ /Copies to: DET./ / PROBATION . LCSO/ /OTHER/ /
```

CLE 0001

Exhibit 24

TERESA STACY
PH 707 350 4465
WITNESS DAVID

ON DEC 29th I went to get my police report
about my incident As I was standing there
waiting - the door to the police was not
closed all the way. I saw captain (now retired)
Ron Larsen sitting outside on bench having
a cigarette - officer Labbe he had come
in w/ food + came out + was talking
to Larsen + he said something about
documenting incident from the night b/4
with the Davis' + Captain said "Why
did you need to document anything?"
Labbe said Sgt Celli* told him b/c
of who they were dealing with, they
need to document it."

    Larsen said something, I'm not sure
what, he asked a question. Labbe's response
was, and it was clear "the Davis'" Ron
Larsen said " That motherfucking bitch
is a cop hater. Always has been a cop
hater and always will be" And then he said ⟶

Dec 30th

⟶

* I have seen officer Celli in public with
short sleeve shirts + in uniform in short
sleeve shirts + on one arm on the
bicep it says "White" and on the
arm on the bicep on the other it says "pride"
           or "power" ⟶

the minor that was put out in the community
was that he had this due to an undercover
operation involving bikers. There is a strong
rumor that he has Aaryan affiliation —
from people who are in this gang + in
prison

---

oool
    something else + then he said "We don't
need those people in our town" + at
that point my business for being there
took me from the conversation. I did open
the door a little bit and said "I'm
glad I'm deaf." The conversation went
on.
    Knowing the good old boy attitude,
that runs in that group of cops, I
feel that he (Larsen) was threatening
them. I know him for 25 yrs (Larsen)

    Ron handled a sexual assault of
a minor case for a friend of mine. And
he also took a report from me when cops
beat up my neighbor for no reason. I worked
at the El Grande Inn as a desk clerk
+ police would come + have breakfast +
roll-call mtgs in the restaurant/bar
    so they could smoke.

Exhibit 22



# CLEARLAKE POLICE DEPARTMENT
## INTEROFFICE MEMORANDUM

① Traffic cites 12/27/06  (Not att)
② 911 prinout . /12/07
③ CO of Contact by Celli  1/12/07
④ Memo by Celli        (Not att)
⑤ CO of interview  1/18/07  (not att)
⑥ Photos of Celli

**DATE:** Jan

**TO:** Chief

**FROM:** Sgt.

**SUBJECT:**

## Complaint Information:

Complaintants:  David Davis, DOB 07-08-74
P.O. Box 3225
Clearlake, Ca 95422
(707) 995-0749

Page Davis, DOB 09-27-74
P.O. Box 3225
Clearlake, Ca 95422
(707) 995-0749

## Officers Involved:

Sergeant Tim Celli #90

## Officer's Representative:

None

## Complaint:

On January 12, 2007, I received the attached Personnel Complaint from David and Page Davis. The complaint in itself was vague in nature and only listed that Sgt. Celli had been involved in the following acts:  Racial Profiling, Abuse of Authority, Excessive Ticket Writing, Manipulation of Staff, Falsifying Reports and Hate Crimes. Also listed on the complaint form is the following statement "All evidence is available upon investigation". While speaking with them about the complaint, they were unable to provide any detailed information regarding the accusations. They did tell me that they believed Sgt. Celli was manipulating other staff members into harassing them and spoke about prior incidents with him and other officers that had already been investigated (IA

C-1

#08-03-06/90/107/132/145).

It should be noted that approximately one week prior to them filing the complaint, I had a conversation with the Davis' in the front interview room of the Clearlake Police Department. At the time, they had initially come to the station to file this personnel complaint against Sgt. Celli. I was aware of the prior complaint filed by Davis against Sgt. Celli and other officers and knew that it surrounded several traffic stops and dealings with him. While speaking with them, it was evident that their "new" complaint involved the same set of circumstances that had already been investigated. They then began speaking about a traffic stop in which they had recently been stopped by Officer Labbe. They "believed" that Officer Labbe was told to stop them and that Sgt. Celli had instructed him to write them a citation. However, they added that they did not have a complaint with Officer Labbe and only against Sgt. Celli. I spent approximately thirty (30) minutes with them discussing the incidents, answering their questions and explaining the procedures for officer complaints and how they are received and investigated. Mr. Davis was also advised that I would need "detailed" information on the premises of the complaint in order to thoroughly investigate it, while adding that I would not re-investigate a prior complaint. At the time, both David and Page Davis stated they understood my explanations and appeared to have no problems. They decided against filing a complaint at the time and asked me to speak with the officers and "request" that they leave them alone.

A few days after the initial contact with them, Page Davis called me and stated that they had decided to go ahead and file the complaint "just to have a record of it". As required, I agreed to take the complaint from her at the time. Due to schedule conflicts (between both theirs and mine) and a priority details, I was unable to actually meet with them until the afternoon of the 12th. However, I had been in constant phone contact with Page up until that point.

### Investigation:

Shortly after my first conversation with the Davis', I had spoken with Officer Labbe about the circumstances involving his traffic stop of Page Davis (which occurred on 12-27-06). He told me that he did not even know the vehicle belonged to the Davis' and that he was looking for another unrelated subject at the time. He remembered stopping the vehicle for an obstructed plate and later notifying Sgt. Celli after he realized that the driver was Page Davis and that David Davis was the passenger. Officer Labbe did issue a citation to Mrs. Davis for having the obstructed plate, no registration card, a broken taillight and no proof of insurance. He added that he had also given them a warning for failing to use their turn signal. Officer Labbe told me that Sgt. Celli did arrive as a Cover Officer, but at no time instructed him to stop the vehicle or to write the citation.

During the morning of January 18, 2007 I had received the attached memo from Sgt. Celli who had been advised that this complaint was made. According to the memo, officers had received a 911 hang-up call at the Davis residence during the evening of January 17, 2007 at approximately 2114 hours. Sgt. Celli and Officer Ray responded to the location but did not realize that it was the home of David and Page Davis until they arrived. Sgt. Celli noted that Mr. Davis grabbed his video camera while yelling at the officers and telling them to "get the fuck off his property". Mr. Davis denied that a 911 call had been made and Sgt. Celli decided not to force the issue at the time as no one appeared to be in distress. Sgt. Celli later obtained a copy of the 911 print-out from Central Dispatch which he attached. He also stated that he had activated his audio recorder once he realized that the home belonged to Mr. Davis. He downloaded the recording to a CD which has been placed in this file. I reviewed the print-out of the 911 call and saw that the call

53

came in at 21:14:34 hours on 01/17/07. The caller ANI (number) was listed as (707)995-0749 which is the listed number belonging to the Davis'.

On January 18, 2007 at approximately 1650 hours, I met with David and Page Davis at their residence in order to obtain a recorded statement from them. The meeting had been pre-arranged so that I could obtain some factual details of the complaint and in order to confirm that it was not still part of the original complaint that had already been investigated. At the beginning of the interview, Mr. Davis told me that officers had come out to his home the night before for a reported 911 call. He denied that a call had been placed and made comments to the fact that he believed the officers had "made it up". He also said that he called the Sheriff's Department and was told that there was "no record" of the call. I advised him that I in fact had a copy of the 911 print-out from Central Dispatch and he responded by saying the cover-up had already begun.

When I turned his attention to his complaint, Mr. Davis told me that he "knew" that Sgt. Celli was in fact a "racist" and that he belonged to a white supremacy group. He was unable to provide any details or proof that Sgt. Celli belonged to a white hate group and refused to identify reported "witnesses" who had "proof". Mr. Davis said that he also knew for a fact that Sgt. Celli had "white power" or "white pride" tattoos on his arms as well. He added that he had seen the tattoos himself when he was thrown down on the ground by Sgt. Celli during a previously reported incident. Mr. Davis then began pulling out citations and a case report that had been prepared by various officers. One citation (#50128) issued by Officer Hobbs on 8-03-06, had a signature that Davis claimed was not his own. He argued that an officer had "forged" his signature and denied ever signing it himself. Along with the citation was a copy of a report prepared by Officer Hobbs (Case #06-2456) which documented the traffic stop and the fact the vehicle was towed. Mr. Davis said the report was his proof that Sgt. Celli had filed a false report. However, the report was prepared by Officer Hobbs and only approved by Sgt. Celli. Mr. Davis argued that "approving" a report was the same as swearing the facts held within were true and correct. Mr. Davis continued by saying that knew that Sgt. Celli was in fact manipulating younger staff members and officers to "do his work".

Mr. Davis then began speaking about Officer Hobbs and saying that he had illegally confiscated a knife from him. He showed me an envelope that was mailed to him with his knife inside of it (Officer Hobbs had apparently taken control of it for safety issues and forgot to initially return it). The knife was returned to Mr. Davis a short time later in the envelope and he acknowledged receipt of it. However, he argued that Officer Hobbs had no legal right to take control of the knife and refused to allow me to explain officer safety issues with him.

Mr. Davis produced a total of five traffic citations and one case report (listed above) while claiming that the citations themselves were proof that he was being harassed. The following is a list of the citations issued along with the dates and primary violation:

- #52021 – issued on 9-27-06 to David Davis for 12500 CVC (incident # 60927062).
- #52310 – issued on 12-27-06 to Page Davis for 5201 VC (incident #61227044).
- #52022 – issued on 9-27-06 to Page Davis for 27803 VC (incident #60927062).
- #49299 – issued on 8-02-06 to David Davis for 4000(a) VC (incident #6080206).
- #50128 – issued on 8-03-06 to David Davis for 27315 (e) VC (60803002)
- Case #06-2456 – Details citation #50128 and vehicle tow on 8-03-06.

It should be noted that on 8-03-06 when Mr. Davis was issued a citation for no seat belt (27315 VC), Page Davis was also issued a citation for driving without a license (Citation #52003) which

was not one of the citations produced by Mr. Davis at the time of this interview. Also not produced by Mr. Davis was the supplemental police report that Officer Hobbs had prepared for Case #06-2456. In the supplemental report, Officer Hobbs details the fact he had found a fixed blade knife in the vehicle during his contact with Mr. Davis on 8-03-06. Officer Hobbs notes that the knife was placed in his patrol vehicle during a vehicle search and that he had intended on returning it to Mr. Davis upon his release from the scene. Officer Hobbs apparently forgot to return the knife at the time and later mailed back to Mr. Davis (according to the report the knife was not returned personally due to the fact Mr. Davis had already filed his personnel complaint against the officers).

As the interview with Mr. Davis continued, he repeatedly accused various officers of falsifying reports and racist behavior. He increasingly became more and more argumentative with me during my questioning of him. He then began showing me photographs of a stop sign at the corner of Arrowhead and Park Street. He claimed officers were writing illegal citations at the location due to the fact there is no limit line. I advised him that he needed to re-read the vehicle code as it pertains to stop signs and he argued that I did not know the vehicle code and that officers were wrong.

During the entire interview, Mr. Davis was unable to produce any evidence or facts to prove that Sgt. Celli had taken part in any of the allegations that Mr. Davis was making against him. It was apparent that Mr. Davis had his own opinion on the issues and refused to waiver from them or discuss them in any "real" manner. At one point he told me that I could either admit that the problems were occurring or that I could "go down with the rest of them". I finally decided to conclude the interview at which point Mr. Davis began accusing me of misconduct as well.

I later downloaded a copy of the interview to a CD which has been placed in this case file.

On 1-19-07, Sgt. Cell Agreed to allow me to take pictures of both his arms and his tattoos. Sgt. Celli, who is a member of the Iron Pigs Motorcycle Club (made up mainly of police officers and firefighters), had a tattoo of the Iron Pigs logo on his right shoulder. Just below the logo is a tattoo of his daughter's name (Kristen). Below that is another Iron Pigs tattoo. On the back of his right arm are the letters N F T B. According to Sgt. Celli, this stands for the motto "Never Forget the Brotherhood" which is dedicated to those professionals who lost their lives during the September 11th attacks. Sgt. Celli's left arm was found to be free of any markings or tattoos.

Sgt. Celli was quick to note that the Iron Pigs Motorcycle Club has never been a criminal street gang. He showed me a copy of the club's By-Laws which clearly state that membership "Shall not be based on race, sex, religion and creed". He added that this is not a "white hate" or "white pride" group and that there are a large amount of non-white members including whole chapters that are strictly made up of black professionals.

The pictures of his arms and of the noted By-Laws have been printed out and attached to this investigation. Also attached is a portion of the Iron Pigs' website which details membership and some of the history of the club. I also located the attached web page "neverforget.ca". The page is dedicated to the firefighters and police officers who lost their lives on September 11th and has the following phrase highlighted "We owe it to them and to their brothers to never forget their sacrifice and what it has taught us". It should also be noted that one of the links on the web site is listed "Life in the Brotherhood" as it pertains to firefighters.

## Analysis:

At this time, there is absolutely no evidence or indications that tend to prove that Sgt. Celli has been involved in any of the allegations made by Mr. Davis. Several of the issues raised by Mr. Davis dealt with his dealings with Sgt. Celli on August 2nd and 3rd of 2006 which had already been investigated by Captain Larsen. That investigation was found to be **"Unfounded"** and without merit. Just as in that case, Mr. Davis has even been unable to properly articulate any facts to back his claims. With the exception of the 911 hang-up call on January 17, 2007, neither he nor his wife has had any personal dealings with Sgt. Celli. Of the two times they had been stopped and issued citations from other officers since the initial complaint (each being issued a citation on 9-27-06 and one on 12-27-06), Sgt. Celli was not the officer who initiated the traffic stop or issued the citations. The fact that they "feel" Sgt. Celli is responsible or has been manipulating other members of the department does not justify this complaint and there is absolutely no evidence to suggest it. Mr. Davis has failed to provide any facts, witnesses or evidence that would prove that Sgt. Celli has been involved in "Racial Profiling, Abuse of Authority, Excessive Ticket Writing, Manipulation of Staff, Falsifying Reports and Hate Crimes".

The Davis's have produced several newspaper articles during the past several months in which they openly claim that the officers of the Clearlake Police Department are corrupt and racist. Their accounts have always been one-sided and have not contained the true facts of their contacts with officers. They have attempted to gather the "community" in an effort to discredit the police department, but have been unsuccessful to this point.

## Conclusion:

Sgt. Michael C. Hermann #96

Exhibit 23

1  DALE L. ALLEN, JR., # 145279
   DIRK D. LARSEN, # 246028
2  LOW, BALL & LYNCH
   505 Montgomery Street, 7th Floor
3  San Francisco, California 94111-2584
   Telephone (415) 981-6630
4  Facsimile (415) 982-1634

5  Attorneys for Defendant
   CITY OF CLEARLAKE
6  (erroneously named herein as CLEARLAKE POLICE DEPARTMENT)

7

8              IN THE UNITED STATES DISTRICT COURT FOR

9              THE NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  DAVID DAVIS and PAGE GEARHART-DAVIS    )    Case No. C 07-03365 EDL
    PRO-SE,                                )
13                                         )    DEFENDANT CITY OF
                   Plaintiffs,             )    CLEARLAKE - OFFICER
14                                         )    LABBE'S SUPPLEMENTAL
          vs.                              )    RESPONSES TO PLAINTIFFS'
15                                         )    INTERROGATORIES
                                           )
16  CLEARLAKE POLICE DEPARTMENT,           )
                                           )
17                 Defendants.             )
                                           )
18  _____)

19  PROPOUNDING PARTIES  :      Plaintiffs DAVID DAVIS and PAGE GEARHART-DAVIS

20  RESPONDING PARTY     :      Defendant CITY OF CLEARLAKE - OFFICER LABBE

21

22                     **PRELIMINARY STATEMENT**

23        The following responses herein are based upon information known by the responding party at

24  this time following a reasonable and good faith effort to obtain such information. Responding party has

25  not completed their investigation of the facts relating to this case. There may be additional persons

26  having knowledge of facts or records containing information which are presently unknown to responding

27  party. Accordingly, additional or different information may be discovered and received which may

28  require the answers and responses to be changed and/or supplemented.

1  INTERROGATORY NO. 1:

2      Was the statement you gave in the investigation I.A. 01-12-07/90, discussed in Interoffice
3  Memorandum dated in January 2007, to the Chief of Police from Sgt. Michael Herman, YOUR true
4  statement?

5  RESPONSE TO INTERROGATORY NO. 1:

6      Objection. FRCP 33(a)(1) provides that interrogatories may only be served on a "party." Officer
7  Labbe, to whom the interrogatory is directed, is not a party to this action. Accordingly, this interrogatory
8  is improper. Without waiving this objection, the City of Clearlake has no reason to doubt the truth of
9  Officer Labbe's statement.

10  INTERROGATORY NO. 2:

11      If YOUR response to Interrogatory No. 1 is "No", please state all facts in support of this
12  contention.

13  RESPONSE TO INTERROGATORY NO. 2:

14      Not applicable.

15  INTERROGATORY NO. 3:

16      Were YOU and Sgt. Celli parked on Lakeshore Drive when you observed the Davis' turn off of
17  Olympic Drive onto Lakeshore Drive?

18  RESPONSE TO INTERROGATORY NO. 3:

19      Objection. FRCP 33(a)(1) provides that interrogatories may only be served on a "party." Officer
20  Labbe, to whom the interrogatory is directed, is not a party to this action. Accordingly, this interrogatory
21  is improper. This request is also vague and ambiguous in that it does not specify a date and time.
22  Without waiving these objections, and in the spirit of discovery, the City of Clearlake is informed and
23  believes that Officer Labbe was parked alone when he first observed the vehicle driven by propounding
24  parties on December 27, 2006.

25  INTERROGATORY NO. 4:

26      Did YOU speak to Ron Larson in regards to the Davis' after 12-27-06 regarding the traffic stop
27  you conducted on them?

28  //

1   RESPONSE TO INTERROGATORY NO. 4:

2       Objection.  FRCP 33(a)(1) provides that interrogatories may only be served on a "party."  Officer

3   Labbe, to whom the interrogatory is directed, is not a party to this action.  Accordingly, this interrogatory

4   is improper.  Responding party also objects on the grounds of relevancy and privacy.  Without waiving

5   these objections, and in the spirit of discovery, the City of Clearlake is informed and believes that

6   Officer Labbe spoke with Captain Ron Larsen regarding the traffic stop of December 27, 2006.

7   INTERROGATORY NO. 5:

8       If YOUR response to Interrogatory No. 4 is "Yes", please state all facts in support of this

9   contention.

10  RESPONSE TO INTERROGATORY NO. 5:

11      Not applicable.

12  INTERROGATORY NO. 6:

13      Did YOU take pictures of the Davis' vehicle on12-27-06?

14  RESPONSE TO INTERROGATORY NO. 6:

15      Objection.  FRCP 33(a)(1) provides that interrogatories may only be served on a "party."  Officer

16  Labbe, to whom the interrogatory is directed, is not a party to this action.  Accordingly, this interrogatory

17  is improper.  Without waiving this objection, and in the spirit of discovery, the City of Clearlake has no

18  record of photographs of propounding parties' vehicle having been taken on December 27, 2006.

19  INTERROGATORY NO. 7:

20      What did YOU observe obstructing the license plates on the Davis' vehicle on 12-27-06?

21  RESPONSE TO INTERROGATORY NO. 7:

22      Objection.  FRCP 33(a)(1) provides that interrogatories may only be served on a "party."  Officer

23  Labbe, to whom the interrogatory is directed, is not a party to this action.  Accordingly, this interrogatory

24  is improper.  Without waiving this objection, and in the spirit of discovery, the City of Clearlake is

25  / / /

26  / / /

27  / / /

28  / / /

1  informed and believes that Officer Labbe observed a trailer hitch partially blocking the license plate of

2  propounding parties' vehicle on December 27, 2006.

3

4        Dated: June ⏜, 2008

5                                    LOW, BALL & LYNCH

6

7                             By_____

8                                DALE L. ALLEN, JR.
                                 DIRK D. LARSEN
                                 Attorneys for Defendant
9                                CITY OF CLEARLAKE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         -4-

Exhibit 24





Exhibit 25



Exhibit 27

01/17/2007   22:33    7072620642

# E911 ALI Report

| Caller ANI: | (707)995-0749 | System: | Lake Cnty D |
|---|---|---|---|
| Call Time: | 01/17/07 at 21:14:34 | Position: | Position 1 |
| Trunk: | E911-5 | Operator: | Unknown |

```
(707) 995-0749    21:14    01/17
      3230         2D

CLRLK            CA 210 RESD
DAVIS PAGE
                 (707) 995-0749

PB911
CLEARLAKE PD
LAKE CO. FIRE PROT DIST
LAKE CO FIRE PROT. DIST.
LAT            LON
METERS            PERCENT
```

Exhibit 2̒



# LAKE COUNTY SHERIFF'S DEPARTMENT

1220 Martin Street  •  Lakeport, California 95453

| Administration | Central Dispatch | Coroner | Corrections | Patrol/Investigation | Substation |
|---|---|---|---|---|---|
| (707) 262-4200 | (707) 263-2331 | (707) 262-4215 | (707) 262-4240 | (707) 262-4230 | (707) 994-6433 |

Rodney K. Mitchell
Sheriff / Coroner

# Affidavit

| | | |
|---|---|---|
| Case Title | : | **David Davis and Page Gearhart Davis v Clearlake Police Dept.** |
| Court | : | **United States District Court** |
| Case Number | : | **C 07-03365 EDL** |
| LCSD Case Number : | | **No LCSO case numbers issued** |
| Requested By | : | **Page Gearhart Davis** |
| | | **P.O. Box 3225** |
| | | **Clearlake, CA 95422** |

I hereby declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct:

I am the Custodian of the Records for the Lake County Sheriff's Department and:

[ x ]   That the accompanying records are copies of the original and complete records kept in the regular course and scope of my business, and constitute all the records called for in the Subpoena Duces Tecum heretofore served in this matter; that the entries contained in these original records were made by persons having actual knowledge there of immediately or soon after the happening of the events or incidents which they purport to depict.

[  ]   Pursuant to subdivision (e) of Section 1560 of the Evidence Code, the records sought in the attached subpoena duces tecum were/will be delivered to :

_____
*(name of business receiving records)*

on _____, 2008.

[  ]   We have no records as requested in the Subpoena Duces Tecum, or in the above named action.


Cecil Brown,
Lieutenant

05/07/2008
Date

*AO88  (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

David Davis and Page Gearhart-Davis
Plaintiff(s)

**SUBPOENA IN A CIVIL CASE**

V.

Clearlake Police Department
Defendant(s)

Case Number:[1]   C 07-03365 EDL

TO:   Lake County Sheriff Dispatch

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Mail record of any 911 calls made from (707)995-0749 during the time period of August 2006 - June 2007.

| PLACE      PO Box 3225<br>Clearlake, CA 95422 | DATE AND TIME |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>RICHARD W. WIEKING , CLERK | DATE<br>January 25, 2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
THELMA NUDO  Deputy Clerk    CLERK U.S. DISTRICT COURT
450 GOLDEN GATE AVE., BOX 36060
(See Rule 45, Federal Rules of Civil Procedure, (c), (d), and (e), on next page) SAN FRANCISCO, CA 94102

[1] If action is pending in district other than district of issuance, state district under case number.



# LAKE COUNTY SHERIFF'S OFFICE

## CAD INCIDENT REPORT

### 070210004

Page 1

05/07/2008

| Location | | Cross Streets | | City | |
|---|---|---|---|---|---|
| 3230 2D | | BUSH/OREGON AV | | CLEARLAKE | |

| Incident Type | | Call Taker | | Dispatcher | |
|---|---|---|---|---|---|
| FDMA - FIRE/MEDICAL AID | | ERICKSON, KIMBERLY | | BURNETT, JAMIE | |

| Date | Priority | Primary Unit | Beat | Fire Zone | Area | Map | Source |
|---|---|---|---|---|---|---|---|
| 02/10/2007 | 1 | 428 | 6A | R | 6A | | 9-1-1 CALL |

| Caller Name | Caller Address | Caller Phone |
|---|---|---|
| DAVIS, PAIGE | 3230 2D, Clearlake | 707 995 0749 |

| Dispositions | Weapon | Alm Level | Case Number |
|---|---|---|---|
| FIRE DEPARTMENT TRANSPORT | | | |

| Vehicles | Associated Incidents |
|---|---|
| | |

| Incident Times | | Special Circumstances |
|---|---|---|
| Received | 00:28:45 | |
| Created | 00:31:00 | Persons |
| Dispatched | 00:36:46 | |
| En Route | 00:36:46 | |
| On Scene | 00:51:00 | |
| Closed | 01:18:22 | |
| Rcvd-Closed 49:37 | | |

| Unit Times Officer | Dispatched | Enroute | On Scene | Clear | Disp-On Scene | On Scene-Clear | Disp-Clear |
|---|---|---|---|---|---|---|---|
| M270 | 00:36:46 | 00:36:46 | 00:51:00 | 01:18:22 | 14:14 | 27:22 | 41:36 |

**Incident Comments**
MED AID 30YOM  FALL OFF OF PORCH POSS BROKEN LEG

| TIME | EVENT |
|---|---|
| 00:31:00 | Incident initiated at 3230 2D, Clearlake |
| 00:33:59 | DISP |
| 00:36:46 | M270 ENRT. 3230 2D, Clearlake |
| 00:51:00 | M270 ONSCEN. |
| 00:51:05 | M270 ENRT. REDBUD |
| 01:01:38 | M270 ONSCEN. |
| 01:13:08 | M270 TO STN. |
| 01:18:22 | M270 10-8. |
| 01:18:22 | M270 Closed - Disposition FT |

Lake County Sheriff's Department- DO NOT DUPLICATE

Exhibit 29



# Clearlake Police Department

**14050 Olympic Drive, Clearlake, CA 95422**
**(707) 994-8251      FAX (707) 994-8918**
**e-mail: police@clearlake.ca.us**

April 22, 2008

Dear Ms. Davis,

The Lake County Sheriff's Department is the designated primary answering point for the County of Lake. This means they receive all of the 911 calls from landline type telephones and when appropriate and feasible, forward those calls to our department. If the Lake County Sheriff's Office receives a 911 hang up call they notify our dispatch and provide the address, phone number, and subscriber name (when available). Our dispatcher will then dispatch an officer to check the welfare of the residents.

If you have any further questions, please contact me.

Sincerely,

Nicole Rene' Newton
Records/Communications Supervisor
Clearlake Police Department

Exhibit 30

CLEARLAKE POLICE DEPARTMENT

Page 1

**PERSON RECORD**
**DAVIS, PAGE CHRISTINE**

01/20/2007

| Address | | | | | | |
|---|---|---|---|---|---|---|
| 3230 2ND ST, CLEARLAKE | | | | | | |

**Mailing Address**
PO BOX 3225 CLK

| ID | Phone | DOB | Age | Sex | Height | Weight |
|---|---|---|---|---|---|---|
| 14125 | 707 995-0749 | 09/27/1974 | 32 | F | 5'3" | 115 |

| Race | | Hair | | Eyes | |
|---|---|---|---|---|---|

| Drivers License | SSN | St ID | Vehicle License | FBI # |
|---|---|---|---|---|
| A7016131 | | | | |

| Business Name | Address | City & State |
|---|---|---|

| Business Phone | Gang Affiliation | Arrest ID |
|---|---|---|

| Next of Kin/Parent/Guardian | Address | Phone |
|---|---|---|

Occupation

Undocumented Alien
NO

| Complexion | Build | Hairstyle | Facial Hair | Speech | Glasses |
|---|---|---|---|---|---|
| | | | | | NO |

Scars

Tattoos

**Officer Safety**
ANTI LAW ENFORCEMENT

Note

Other Considerations

Aliases

| DATE | NATURE | EVENT DESCRIPTION | CASE #/FI | INC/CITE |
|---|---|---|---|---|
| 08/03/2006 | SA | 12500(A) VC - Drive W/O License | 06-2456 | 060803002 |
| 08/03/2006 | CI | 12500(A) VC - UNLICENSED DRIVER | | 52003 |
| 09/27/2006 | CI | 27803 VC | | 52022 — |

CLE 0071