**EXHIBIT C**

1  DALE L. ALLEN, JR., # 145279
   DIRK D. LARSEN, # 246028
2  LOW, BALL & LYNCH
   505 Montgomery Street, 7th Floor
3  San Francisco, California  94111-2584
   Telephone (415) 981-6630
4  Facsimile (415) 982-1634

5  Attorneys for Defendant
   CITY OF CLEARLAKE
6  (erroneously named herein as CLEARLAKE POLICE DEPARTMENT)

7

8              IN THE UNITED STATES DISTRICT COURT FOR

9              THE NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

12  DAVID DAVIS and PAGE GEARHART-DAVIS      )   Case No. C 07-03365 EDL
    PRO-SE,                                  )
13                                           )   DECLARATION OF
                      Plaintiffs,            )   LIEUTENANT MICHAEL
14                                           )   HERMANN IN SUPPORT OF
          vs.                                )   DEFENDANT CITY OF
15                                           )   CLEARLAKE'S MOTION FOR
                                             )   SUMMARY JUDGMENT, OR IN
16  CLEARLAKE POLICE DEPARTMENT,             )   THE ALTERNATIVE, PARTIAL
                                             )   SUMMARY JUDGMENT
17                    Defendants.            )
                                             )   Date:       August 12, 2008
18  _____ )   Time:       9:00 a.m.
                                                 Courtroom:  E, 15th Floor
19                                               Judge:      Hon. Elizabeth D.
                                                             LaPorte
20

21       I, MICHAEL HERMANN, declare as follows:

22       1.     I have personal knowledge of the following facts, and could and would testify

23  competently thereto if called upon to do so.

24       2.     I am currently employed by the City of Clearlake as a lieutenant in the City of Clearlake

25  Police Department.  I have been a City of Clearlake Police Officer since November 6, 1995, but for a

26  two-month leave of absence and assignment as an investigator in Washington.  On July 14, 2006, I

27  attained the rank of sergeant in the Clearlake Police Department.  On March 12, 2007, I attained the rank

28  of lieutenant in the Clearlake Police Department.  I am familiar with the Clearlake Police Department's

-1-

DECLARATION OF LIEUTENANT MICHAEL HERMANN IN SUPPORT OF CITY OF CLEARLAKE'S
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION
J:\1427\sf0001\MSJ\MSJ-Hermann.dec.wpd                              Case No. C 07-03365 EDL

1   policies, procedures and practices for creating and retaining official records of traffic and other

2   investigatory stops performed by Clearlake Police Department officers. I am also familiar with

3   Clearlake Police Department policies, practices and procedures for receiving Citizen's Personnel

4   Complaints, conducting Internal Affairs investigations, and creating and retaining records of such

5   complaints and investigations. In addition, I am familiar with the manner and means by which telephone

6   calls, including hang-up calls, made to 911 from landline telephones within the County of Lake are

7   recorded, as well as with the manner and means by which the respective call and its substance, if any, are

8   forwarded to the appropriate local response agency.

9       3.      Clearlake Police Department records contain a Citizen's Personnel Complaint completed

10  and signed by David Davis, plaintiff in the above-captioned matter, on August 3, 2006. A true and

11  correct copy of this Complaint is attached hereto as Exhibit A and incorporated by this reference. The

12  Complaint arises out of Mr. Davis's contacts with Clearlake Police Officers in August 2 and 3, 2006. In

13  the Complaint, Mr. Davis writes that, in a contact with officers on August 2, 2006, he called an officer

14  an "out of shape pig."

15      4.      The Clearlake Police Department initiated an Internal Affairs investigation based on the

16  allegations in the Citizen's Complaint described in the preceding paragraph. The investigation was

17  conducted by Clearlake Police Captain Ronald Larsen, and consisted of interviews of Mr. Davis and the

18  Clearlake officers involved in the respective contacts: Sgt. Timothy Celli, Officer Todd Miller, Officer

19  Timothy Hobbs and Officer Sarah Hardisty. Following a full investigation, Captain Larsen determined

20  that the Complaint was unfounded, meaning that the officers were exonerated from any misconduct or

21  wrongdoing in this matter. A true and correct copy of I.A. # 08-03-06/90/107/132/145, the Internal

22  Affairs investigation in question, is attached hereto as Exhibit B and incorporated by this reference. This

23  record was created and retained in the ordinary course of business of the Clearlake Police Department.

24      5.      A true and correct copy of the Clearlake Police Department traffic stop report for Case

25  No. 62456 of August 3, 2006, is attached hereto as Exhibit C and incorporated by this reference. This

26  record was created and retained in the ordinary course of business of the Clearlake Police Department.

27      6.      Clearlake Police Department records contain a Citizen's Personnel Complaint completed

28  and signed by David and Page Davis, plaintiffs in the above-captioned matter, on January 12, 2007. A

-2-

DECLARATION OF LIEUTENANT MICHAEL HERMANN IN SUPPORT OF CITY OF CLEARLAKE'S
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION
J:\1427\sf0001\MSJ\MSJ-Hermann.dec.wpd                                    Case No. C 07-03365 EDL

1  true and correct copy of this Complaint is attached hereto as Exhibit D and incorporated by this

2  reference.  This record was created and retained in the ordinary course of business of the Clearlake

3  Police Department.

4       7.    The Clearlake Police Department initiated an Internal Affairs investigation based on the

5  allegations in the Citizen's Complaint described in the preceding paragraph.  I conducted the

6  investigation, which consisted of interviews with Mr. Davis, Ms. Davis, Sgt. Celli, and Officer Joseph

7  Labbe.  Following a full investigation, I determined that the Complaint was unfounded, meaning that

8  Sgt. Celli and other officers had committed no misconduct.  A true and correct copy of I.A.

9  # 01-12-07/90, the Internal Affairs investigation in question, is attached hereto as Exhibit E and

10 incorporated by this reference.  This record was created and retained in the ordinary course of business

11 of the Clearlake Police Department.

12      8.    On January 17, 2007, Central 911 Dispatch for the County of Lake forwarded to the

13 Clearlake Police Department a record of a hang-up call to 911 made from the landline telephone at the

14 residence of Page Davis.  Because the caller did not speak to any 911 dispatcher but instead hung up the

15 telephone, there is no recording of any conversation between the caller and the dispatcher.  It is the

16 custom and policy of the Clearlake Police Department to dispatch officers immediately to the location at

17 which any such 911 hang-up call originated.  A true and correct copy of the Central 911 Dispatch record

18 indicating the date, time and origin of the January 17, 2007 hang-up call from the Davis residence is

19 attached hereto as Exhibit F and incorporated by this reference.

20      I swear under penalty of perjury under the laws of the State of California that the foregoing is

21 true and correct to the best of my own personal knowledge.

23 Executed this 7ᵈ day of July, 2008, in Clearlake, California.

MICHAEL HERMANN

DECLARATION OF LIEUTENANT MICHAEL HERMANN IN SUPPORT OF CITY OF CLEARLAKE'S
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION
Case No. C 07-03365 EDL

**EXHIBIT A**

## CI ARLAKE POLICE DEPARTMI T
## CITIZEN'S PERSONNEL COMPLAINT

Page 1 of 2

Employee Complained of _Night Sgt & An Officer_    Received: _8-2-06_    _0920_

                                                                    Date    /    Time

Description of Employee: _____

Date and Time of Incident: _8-2-2006  About  12:30 AM_

Location of Incident: _Flyers  Station_

**DETAILS OF COMPLAINT: (include nature of complaint: names and address of witnesses; any doctor; hospital or attorney contacted regarding this complaint. It is important that as many factual details as possible be included, so that your complaint may be <u>thoroughly</u> investigated. Use an additional sheet if necessary).**

upon my run in with the like county police,
on 8-2-06 app. 1:00 AM As I pulled into flyers
gas station I noticed 2 officer's in seperate
Cars, they had another individual pulled over
at the time I pulled in, As it started
pumping my gas one of the officers
asked me where are my license plate for
my vehicle. I simply stated its in the
mail, from that point the officers asked me
for my license & insurance which I provided

I declare under penalty of perjury that the foregoing statements are true to the best of my knowledge and belief.

_[signature] 8-3-06_    _____
Complainant Signature    Date          Witness Signature          Date

<u>Civil Code Section 47.5.</u> A peace officer may bring an action for defamation against an individual who has filed a complaint with that officer's employing agency alleging misconduct, criminal conduct, or incompetence, if that complaint is false, the complaint was made with knowledge that it was false and that it was made with spite, hatred, or ill will. Knowledge that the complaint was false may be proved by a showing that the complainant had no reasonable grounds to believe the statement was true and that the complainant exhibits a reckless disregard for ascertaining the truth.

*CPD/40*                        A-1         evised 05/06

## CI 1RLAKE POLICE DEPARTM T
## CITIZEN'S PERSONNEL COMPLAINT

(Complaining Party Information)

Receiving Officer:

Name: DAVID DAVIS

_____ 8/3/6

Address: P.O. BOX 3225

Signature          I.D.#

CLEARLAKE, CA 95422

Phone#: 995-0749    D.O.B: 7-8-74

When and where you can be contacted (time and place) ABOVE #

_____

**NOTE:** Because the accused officer may be requested to submit to a lie detector test, I DAVID DAVIS
agree to submit to a lie detector test:

David Davis   1 8-2-06

**Complainant Signature              Date**

    You have the right to make a complaint against a police officer for any improper police conduct.
California law requires this agency to have procedures to investigate citizen's complaints. You have a
right to a written description of this procedure.

    This agency may find after investigation that there is not enough evidence to warrant action on
your complaint; even if that is the case, you have the right to make the complaint and have it investigated
if you believe an officer behaved improperly.

    Citizen complaints and any reports or findings relating to complaints must be retained by this
agency for at least five years.

### I HAVE READ AND UNDERSTAND THE ABOVE ADVISORY

David Davis      David Davis        8-03-06   Complainant

Signature          Print Name          Date

Page 2 of 2

*CPD/40*                                           *Rev. 05/06*

A-2

Statement of:_____    CASE#::_____

From this point, I felt this officer was offending me. By making comments so I responded As well. By calling this officer names, only a out of shine did. And from this point the 2 officers proceeded to harrass me, telling me "We don't like you kind of people". And saying I cant wait tell 49. thrsy. So I left with a ticket for no tags and a damage windshield. The next night me + my wife was pulled over in retaliation from these officers the previous night. The officer asked my wife for her license. Never Before she could respond, this officer was asking me about my seat Belt I simply stated, I forgot to put it on, and he instantly stated I had a attitude, placed handcuffs on me extremely tight, placed me in a police vehicle, then pulled me out as I was has a asthma attack, these officers left me face down

I have read this statement consisting of _____ page(s) and I certify that the facts contained therein are true and correct.

Signed:_____ Date 8-03-06

Officer:_____

Witness:_____

Page ___ of ___3___ Pages

CPD/64

Statement of:_____    CASE#::_____

in the dust as I choked. Finnally the officers
called the amBulance upon thier Arrival
I explained to the peramedics I
am I asthma patient and the asked if
I wanted to go to the hospital at this
point the Sargent Celli approached the
amBulance and told me if I did not sign
the ticket I would go to sil at this
point I explained to him I could
not sign it At this point from the due
to the Asthma attack I refused to go to
the hospital Because I was in fear for my
life, so After my attuck left, I signed the
ticket and was released. The cuffs where on
so tight I had scares from the handcuffs

I have read this statement consisting of _____ page(s) and I certify that the facts contained therein are
true and correct.

Signed: _____  Date 8-05-06

Officer:_____

D.D. 3

Page 2 of 3 Pages

Witness:_____

CPD/64

6/99

A-4

# EXHIBIT B



**Robert "Bob" Chalk
Chief of Police**

# CLEARLAKE POLICE DEPARTMENT
## INTEROFFICE MEMORANDUM

DATE:  August 29, 2006

TO:    Sergeant Tim Celli, Officers Todd Miller, Tim Hobbs,
       and Sarah Hardisty

FROM:  Captain Ronald Larsen

SUBJECT: I.A.#08-03-06/90/107/132/145

The Internal Affairs Investigation which was conducted based upon
a citizen complaint by David Davis on 08-03-06, in which he
claimed misconduct by Sergeant Celli, Officers Todd Miller, tim
Hobbs, and Sarah Hardisty has been completed and reviewed by the
Chief of Police. The final disposition is based upon the
investigative report and concludes that the complaint is
**Unfounded.**

The Officers involved are exonerated from any misconduct or
wrongdoing in this matter.

Ronald D. Larsen- Captain



# Clearlake Police Department

14050 Olympic Drive, Clearlake, CA 95422
(707) 994-8251    FAX (707) 994-8918
e-mail: police@clearlake.ca.us

**Robert "Bob" Chalk**
**Chief of Police**

August 29, 2006

David Davis

P.O. Box 3225

Clearlake, Ca 95422.

**REGARDING:** Notification of Disposition of Complaint Per California Penal Code (CPC)
832.7(d):

**INVESTIGATION #:** I.A 08-03-06/90/107/132/145

Dear: Mr. Davis

The investigation into your complaint regarding the conduct of Clearlake Police Department
Employees has been completed. After reviewing all of the available evidence, a disposition of _____
Unfounded _____ has been reached. The Clearlake Police Department defines this disposition to
mean no misconduct was committed by the Officer(s).
Because the California Penal Code (CPC) classifies personnel investigations pertaining to peace
officers as confidential, I am unable to disclose the details of the investigation; however I can tell
you that all allegations of misconduct are treated very seriously no matter what the final
disposition may turn out to be.

Sincerely,

ROBERT S. CHALK
Chief of Police

By: Ronald Larsen - Captain

B-2



**Robert "Bob" Chalk**
**Chief of Police**

# *CLEARLAKE POLICE DEPARTMENT*
# *INTEROFFICE MEMORANDUM*

**DATE:**    *August 29, 2006*

**TO:**    *Chief of Police Robert Chalk*

**FROM:**    *Captain Ron Larsen*

**SUBJECT:**    *IA# 08-03-06/90/107/132/145*

## Complaint Information:

Complainant:
David Davis   DOB: 07-08-74
P.O. Box 3225
Clearlake, Ca. 95422
995-0749

## Officers Involved:

Sergeant Tim Celli
Officer Todd Miller
Officer Tim Hobbs
Officer Sarah Hardisty

## Officers Representative:

Todd Simonson, Atty at Law
Rains, Lucia and Wilkinson
2300 Contra Costa Blvd, Suite 230
Pleasant Hill, Ca 94523
(925)609-1690

On August 3, 2006, Sergeant Clausen took the attached personnel complaint form from Mr. David Davis. Mr. Davis, in his complaint, is alleging that on two different occasions, officers harassed, offended and generally picked on him, also alleging that the incidents were racially motivated.

On August 2, 2006, Mr. Davis came to the police department and I spoke with he and his wife. He was alleging then that the officers had harassed him at Flyers that morning, and written him a ticket, and made inappropriate comments to him. He stated that the officers had someone else stopped when he pulled in, and claimed that they let that person go in order to bother him. He stated that they began to question him as to what he was doing there, where he lived, if he was on probation or parole. He also said that one officer told him that he did not like, "your kind of people". And that he could not wait 49 hours. (Reference to a citation issued for a defective windshield.) Mr. Davis initially stated that he wanted to file a complaint against the

(2)

officers. He also told me that he had previously been stopped and warned about the violations on the vehicle. I asked him if he knew the names of the officers, and he stated that he did not. I asked him if he had the ticket that he was issued and he told me that he had thrown it away. The description he was able to provide of the officers identified them as Sgt. Celli and Officer T. Miller.

Mr. Davis then told me that he would not file a complaint against the officers if he had the opportunity to speak with them and try to straighten the situation out. He left the station.

I left a note for Sergeant Celli advising him of Davis' contentions, and that he would like to speak to him and Officer T. Miller. Sgt. Celli left me a note the next morning, declining to meet with Davis, and outlining the events of the night before as he had seen them. (Attached)

On August 3, 2006, Davis returned to the police department and wanted to file a formal complaint. I had Sgt. Clausen sit down with him and take his complaint. (Attached) I also asked Sgt. Clausen to prepare a memorandum for me concerning his contact with Davis that day. (Attached)

In his written complaint, Mr. Davis alleges that the contact August 2, 2006 (Celli and T. Miller) was "offending". Though in the written complaint he does not go into as much detail as he did when he spoke with me. He did state "...I responded as well by calling this officer names, only a out of shape pig and from this point the 2 officers proceeded to harass me....". He stated that he left with a ticket for no tags and a damaged windshield.

He goes on to state that he and his wife were pulled over the next night "in retaliation". He stated that he was asked about his seat belt, had the handcuffs placed on him extremely tight, and placed in a police vehicle, where he had an asthma attack. Upon the arrival of rescue personnel he refused to go to the hospital, "because I was in fear for my life". He stated that he had "scares" (scars) from the handcuffs.

The officer who stopped Mr. Davis on 8-3-06 was Officer Hobbs. Officer Hardisty arrived on the scene shortly after the stop, though Mr. Davis does not mention Officer Hardisty in any manner in his complaint. Sergeant Celli arrived sometime later, upon learning the Officer Hobbs was in contact with Mr. Davis.

Regarding the first incident with Mr. Davis, Sergeant Celli completed the attached memorandum, and forwarded it to me, along with a copy of Officer Todd Millers notes from the computer system regarding the stop. Officer Miller's notes are under the incident number with no case number assigned. This is a common practice for Officer Miller to make notes concerning his citation under the incident number, to have a reference should the citation be contested in court. Both of these documents are attached to this report.

Sergeant Celli also forwarded me a memorandum concerning the stop of Mrs. Davis, with Mr. Davis as passenger on 8-3-06 by Officer Hobbs. Celli also provided me with a tape recording of the contact with Davis on 8-3-06 which he initiated upon his arrival at the scene. In addition, Officer Hobbs prepared report #06-2456 concerning the incident. (both attached).

## Investigation

On August 8, 2006 I noticed Sergeant Celli, Officer T. Miller, Officer Hobbs, and Officer Hardisty of the complaint and subsequent investigation. Copies of said notices are attached.

I reviewed again the complaint by Mr. Davis and compared the complaint with the information he had verbally provided to me concerning the incident on August 2nd. The information contained on his written complaint was less detailed than that he had verbally given me.

Based on police logs, and the information provided to me by Sergeant Celli, I was able to identify the involved officers as Sgt. Celli, Off's T. Miller, Hobbs, and Hardisty.

On August 11, 2006, I noticed the above officers of the date and times that they are to report to the police department to be interviewed in relation to this investigation. The date of the interviews is tentatively set for Thursday, August 24th, 2006, with the times varying from 1:00 p.m. to 3:10 p.m.

On August 22, 2006, I confirmed with all four officers' LDF representative, Todd Simonson that he would be available for the scheduled interviews with the officers on August 24, 2006.

(3)

Sergeant Celli, Officers T. Miller, Hardisty and Hobbs were all interviewed regarding this complaint on Thursday, August 24th, 2006 at the Clearlake Police Department. The four employees were all represented by LDF panel attorney Todd Simonson. All four employees were given a "Lybarger" admonition, ordering them to answer questions regarding this investigation and complaint. All signed the printed admonition, as did Mr. Simonson. All of the interviews were recorded by both myself and Mr. Simonson. Mr. Simonson retained possession of his recordings, and mine have been included with this file.

Sergeant Tim Celli was interviewed first. In synopsis, Sergeant Celli told us that he had been covering Officer Todd Miller on a traffic stop at the Flyers gas station when this incident occurred in the early morning hours of August 2, 2006. He stated that Miller had stopped and was issuing a citation to a P.J. Dawson. As the stop was completed he drove through the lot of the station and saw an older Cougar with no plates or stickers on it. He said he drove over and asked the male by the vehicle something like, "What happened to your plates?" He stated that the response was similar to, "I am tired of you guys fucking with me." Sgt. Celli said that he then got out of his car and was going to further the contact with this individual (Mr. Davis). Officer Miller also approached their location then. Sergeant Celli stated that during this contact/investigation of the vehicle status Mr. Davis was "constantly chipping", using foul language and seemed to focus on the stature of Officer Miller, telling him he should be "ashamed" calling him a "short fat pig". I asked him if Officer Miller had told Davis that "his kind" of people around here, and he stated that Officer Miller did say that. I asked him to explain the context and he said that Davis said that "there are more people like me coming here", and Officer Miller told he that "we don't want more people like you", to which Davis immediately responded, "Black people" and began calling them racists some more. Sergeant Celli then explained that Officer Miller told him he was talking about people with bad attitudes, and continued to try to explain, but Mr. Davis kept calling them racists. I then asked him to explain the comment about "cant wait 49 hours" made by Officer Miller. Sergeant Celli explained that Officer Miller had told Davis that the vehicle could not operated after 48 hrs., except to a repair shop, due to the defective windshield. He said that Officer Miller made some comment about not wanting to see the vehicle on the road after 48 hours. He stated that both he and Officer Miller cleared the stop then, as Mr. Davis had received his citation, and their business was done, though Davis continued, "chipping."

Sergeant Celli was also present on August 3, 2006 for part of the interaction with Mr. Davis and Officer Hobbs. He advised me that he had heard Officer Hobbs run a check on Mr. Davis over the radio. He spoke with Officer Hobbs on the phone and advised him to record his contact with Davis. He said that Officer Hobbs told him at that time that Mr. Davis was not cooperative, and had been detained in handcuffs. Hobbs also told him that he did not have a recording device. Sgt. Celli then stated that he heard Officer Hobbs call for rescue, so he asked Hobbs if he needed assistance, and he told him that he did. Sergeant Celli then responded to the location of the stop, arriving before rescue personnel. Sergeant Celli stated that upon his arrival at the scene Mr. Davis was next to the patrol car kneeling on the ground and breathing heavily. He stated that he asked Officer Hobbs what happened and was told that as he was preparing to release him Davis complained of an asthma attack, so he called rescue. Sgt. Celli stated that Davis was not handcuffed at this time. Celli said that Officer Hardisty was also present at the stop, but he witnessed no interaction between Hardisty and Mr. Davis.

I asked Sgt. Celli if Mr. Davis was in the same vehicle as the previous night, he stated that "no" they were in white Suburban, and he assumes that Mrs. Davis had been driving, as she had been cited by Officer Hobbs for being an unlicensed driver. Sgt. Celli said that rescue personnel arrived about 5 minutes after he had. He also said that Mr. Davis was refusing to sign the citation, and that he explained to him that if he refused to sign he would be taken to jail. Davis eventually signed the citation. He was walked over to the ambulance, and refused medical aid or transport, and at this time he appeared to be physically fine. Mr. and Mrs. Davis left the scene of the stop shortly thereafter.

I asked Sergeant Celli if the two memorandums provided to me under his signature were his, and if the information in each memo was accurate. He stated that they were accurate. I asked if either he or his representative had any objection to my inclusion of the memorandums with the I.A. investigation, and there was no objection, hence both memorandums by Sergeant Celli are incorporated into this report and investigation.

(4)

I next interviewed Officer Sarah Hardisty, again in the presence of Mr. Simonson. Officer Hardisty stated that she was on duty on August 3, 2006 in the early morning hours, and that she was in the final phase of her field training program, with Officer Hobbs as her training officer. She was in her own car, with Officer Hobbs acting as a "shadow" officer. She stated that when Officer Hobbs stopped the Davis' she responded to the location of the stop, arriving within 1 ½ and two minutes after the stop.

When she arrived, Mr. Davis was still seated in the passenger side of the car, and she approached that side of the car, as Hobbs was at the drivers side. She stated that Mr. Davis appeared agitated, and was fumbling around with something in the glove box. She said that Officer Hobbs came around to the passenger side of the car and had him get out, too him back to the patrol car and handcuffed him, placing him in the rear of the patrol car.

Officer Hardisty stated the Mr. Davis took a couple of deep breaths and said he may have an asthma attack. Officer Hobbs took him out of the patrol car and uncuffed him. She said he then fell to the ground, and they called for rescue. Mr. Davis made a statement that he was diagnosed as a paranoid schizophrenic and asthmatic. Officer Hardisty stated that she did not see any signs of distress present in Mr. Davis.

Officer Hardisty said that prior to rescue arriving at the scene she took the citation that Officer Hobbs had completed for Mrs. Davis and had her sign the citation.

I asked Officer Hardisty to describe the vehicle that the Davis' were in and she stated that it was a white SUV type vehicle. I then asked her if she knew or was familiar with Mr. or Mrs. Davis, and she stated that she was not. I then asked her if anyone had pointed out the Davis', described either of them to her, and or suggest that she stop, harass, arrest, or cite either of them? She stated "no". I also asked her if any of the officers present did anything out of line in the handling of the stop of the Davis', and she again stated "no".

Officer Tim Hobbs was interviewed next, again in the presence of Mr. Simonson. Hobbs stated that he had been on duty on August 3, 2006 in the early morning hours. He stated that Officer Hardisty arrived at the location of the stop within about a minute of his stopping the vehicle. He stated that he stopped Mr. and Mrs. Davis in the area of Modoc and Sonoma for expired registration, a stop sign violation, and not using the turn signal. Hobbs also stated that upon approaching the vehicle, a white Suburban, that he noticed that the male passenger was not wearing a seat belt. The female driver produced a Florida I.D. card, and stated that she was unlicensed. Hobbs then attempted to identify the male for the seat belt violation, and he told Hobbs that he had no I.D. Officer Hobbs asked the passenger a couple more times for his name, with no response, then he mumbled something like, "what the fuck". He also made some type of comments about being harassed. Eventually the passenger handed him some type of court paper and said, "get if from there".

At this time Officer Hobbs went around the car and had the passenger exit the vehicle, detained and handcuffed him and placed him in the rear of the patrol car, to facilitate his identification. He finally identified himself as Davis with a date of birth, so Hobbs ran both of them. Mr. Davis began complaining of an asthma attack, and said he needed to go to the hospital. He also stated that he was a paranoid schizophrenic. Hobbs called for rescue to respond.

Officer Hobbs said that Sgt. Celli called him on the cell phone and told him that there had been an incident the previous night with Davis, and told Hobbs he should record their encounter. Hobbs did not have a recorder. Officer Hobbs said that he had Mr. Davis get out of the car and removed one of the handcuffs, and he began jerking around and fell to the ground, and Hobbs was finally able to remove the other handcuff. He also completed a citation for Mr. Davis for not wearing the seatbelt. Upon the arrival of rescue personnel Mr. Davis refused transport or medical aid. Mr. Davis eventually signed the citation, and he and his wife left the area.

Officer Hobbs said that upon the arrival of Sgt. Celli Mr. Davis made some derogatory remark about seeing Sergeant Celli again.

I asked Officer Hobbs if he was familiar with or knew either Mr. or Mrs. Davis prior to the stop, and he stated that he did not. I also asked him if anyone had pointed out either Mr. or Mrs. Davis or described him or her to him and suggest that he stop, harass, arrest, or cite either one of them, and he stated "no". I asked Officer Hobbs if he had taken any action with Mr. Davis because of his race/ethnicity that he would not have taken with anyone else, and he stated "no". He also stated that he had been made aware at briefing that there had been some type of incident with an individual the night before, but that he did not know who it was with, or what it was really about.

(5)

I then asked Officer Hobbs if he had been working the night before (August 2nd, 2006) and he stated that he had not, that it was his night off.

Officer Hobbs had prepared CPD report #06-2456 regarding this encounter. I asked him if the report was true and accurate, and he indicated that it was. I asked if he or his representative had an objection to this report being included as part of the I.A., and neither objected.

The final interview was with Officer Todd Miller, again with his representative, Todd Simonson. Officer Miller indicated that he was on duty in the early morning hours of August 2, 2006. I asked him to explain his presence at the Flyers station early that morning. He indicated that he had made a traffic stop in the parking lot and was in the process of issuing a citation. I asked him about the contact with Mr. Davis. He told me that he was finishing or had just finished the traffic citation, when Sergeant Celli made contact with a male near a gold Cougar in the lot. Officer Miller said that Celli was talking to the male from inside his patrol car, then he exited the car. He then drove over and joined Sgt. Celli. He said that he noticed that the Cougar had no plates or window sticker, and a cracked windshield.

Officer Miller stated that Mr. Davis was confrontational from the beginning of the contact. He said that Sgt Celli asked Mr. Davis if he was on probation or parole, and Davis' response was to accuse the officer of picking on him because he was "a black man with a nice car".

Officer Miller said that Mr. Davis told him he had been warned several times about the car, so it was apparent to Officer Miller that being warned about the violations was not sufficient for him to get it repaired, so he felt a citation was in order. Officer Miller stated that Mr. Davis told him the "you guys need to change your ways, there are more people like me coming up here all the time", Officer Miller said that he replied by saying "We don't want people like you here", to which Mr. Davis replied, "Black"?, to which Officer Miller stated that he replied "no, confrontational and violating the laws." He also said that he admonished Mr. Davis about driving the car after 48 hours with the defective windshield, and that it would be cited and towed.

I asked Officer Miller if he took any action or made any comments to Mr. Davis because of his race/ethnicity that he would not have made to anyone else, and he told me, "no".

I then asked Officer Miller to detail from me his normal practice after issuing a citation for making notes of the contact/cite for later use. He told me that he will almost always make a narrative entry under the incident number issued for the citation. I asked him if he did so in this case, and he stated that he had. I then showed him the incident print out for the citation issued to Mr. Davis and asked him if it was his, and accurate. He stated that it was. Neither he nor his representative objected to the inclusion of the incident report with this investigation.

I further asked him if he had prepared a similar documentation regarding the citation he had issued just prior to the contact with Mr. Davis, and he stated that he believed he did. I showed him a print out of incident #60802005 and asked him if that were a copy of those notes, and he stated that it was. Once again that document is included in this report without objection.

We then discussed the citation he issued just prior to the contact with Mr. Davis. Officer Miller indicated that the citation was issued for no current registration and for no proof of insurance. Mr. Davis was cited for an unregistered vehicle and a defective windshield. In both instances the contacts were made for the registration violations, and both drivers were ultimately issued citations for similar offenses. Mr. Davis' contended that he was harassed because of his race. The first citation was issued to Paul J. Dawson, who is a white male.

<u>Analysis:</u>

5,

Ronald D. Larsen- Captain

# EXHIBIT C

```
                    C_ _RLAKE POLICE DEPARTMENT  CA017.  )        CN  62456
                           TRAFFIC STOP  (60803002)               Page    1
```

```
CODE SEC:          12500(A) VC   DRIVE W/O LICENSE
SECONDARY:            22108 VC   Turning without signalling 100ft prior
                   27315(E) VC   PASSENGER NOT SEAT BELTED
```

DATE/TIME REPORTED:   Thurs. 08/03/06 01:38 hrs.

DATE/TIME OCCURRED:   Thurs. 08/03/06 01:38 hrs.
LOCATION OF OCCURENCE: MODOC ST / SONOMA AVE

```
PASSENGER-1:      DAVIS, DAVID MARSHALL       BM32   (07/08/74) (707) 995-0749
ADDRESS:          3230 2ND ST, Clearlake, CA  95422
OTHER DESCR:      PO BOX 3225
```

```
SUSPECT-1:        DAVIS, PAGE CHRISTINE       WF31   (09/27/74) (707) 995-0749
OTHER ROLES:      DRIVER
ADDRESS:          3230 2ND ST, Clearlake, CA  95422
DL NO./STATE:                                                AR NO.:     0
RACE: White              SEX: F HT: 503   WT: 115   HAIR: BRO  EYES: BRO
OTHER DESCR:      PO BOX 3225 CLK
```

```
VEHICLES INVOLVED:
PASSENGER-1:      WHI /WHI  1989  CHEV  SUB  SW  3SPL922   CA   2/ 6
                  Suspect Vehicle, Impounded: See CHP180
```

DETAILS OF INVESTIGATION:

A) SYNOPSIS:  PAGE CHRISTINE DAVIS was cited and released for 12500(A) VC (Drive with out a license).

B-C) N/A

D) ADDITIONAL OFFICERS:  Officer Hardisty and Sergeant Celli.

E-G) N/A

H) NARRATIVE:  On 8-3-06 at approximately 0138 hours, I was on patrol in a marked police vehicle, wearing a full uniform. I was traveling west on Arrowhead Drive approaching Park Street. I observed that the vehicle (Ca plate 3SPL922) that was traveling in front of me had an obstructed license plate in violation of 5201 VC. After following the vehicle a few blocks I was able to see the whole license plate. A check via dispatch revealed that the registration on the vehicle was expired, in violation of 4000(A) VC. As the vehicle approached the intersection of Arrowhead Drive and Park Street it failed to stop at the stop sign, in violation of 22450(A) VC. The vehicle did however come to a stop about 10 feet past the posted stop sign. The vehicle continued west on Arrowhead Drive and then turned right (north) onto Modoc Street without using its turn signal, in violation of 22108 VC.

C-1

C.  RLAKE POLICE DEPARTMENT  CA017( 9                    CN  62456
              TRAFFIC STOP  (60803uu2)                   Page    2

I conducted a traffic stop on the vehicle and it pulled over on Modoc Street just south of Sonoma Avenue.  As I approached the vehicle I saw that the driver had a seat belt shoulder strap on.  I saw that the only passenger did not have a seat belt shoulder strap on.  I contacted the driver and the passenger.  I saw that the driver was wearing a seat belt and that the passenger was not.  The driver identified herself as PAGE CHRISTINE DAVIS with a Florida ID card.  I asked PAGE CHRISTINE DAVIS if she had a drivers license and she stated that she did not have one.

I asked DAVID MARSHALL DAVIS for his identification and he stated that he did not have any.  I asked DAVID MARSHALL DAVIS what his name was and he did not reply.  I asked DAVID MARSHALL DAVIS what his name was again and he replied quietly "what the fuck" and then I was not able to understand the rest.  I asked DAVID MARSHALL DAVIS what his name was again and he would not tell me.  DAVID MARSHALL DAVIS then began mumbling something to me which included the word "fuck" but I was not able to understand what he said.  DAVID MARSHALL DAVIS then handed me a piece of paper and told me that his name was on it and that I would have to look at it to see his name.

I walked around to DAVID MARSHALL DAVIS's door (front passenger) seat, where Officer Hardisty was standing.  I had DAVID MARSHALL DAVIS exit the vehicle.  I advised DAVID MARSHALL DAVIS that since he was not wearing a seat belt and did not have any form of identification I was going to be detaining him (40302 VC).  I walked DAVID MARSHALL DAVIS to the rear of my patrol vehicle and placed him into handcuffs.  I then placed DAVID MARSHALL DAVIS in the rear seat of my patrol vehicle.

A check via dispatch revealed that PAGE CHRISTINE DAVIS did not have a drivers license.  Dispatch checked PAGE CHRISTINE DAVIS's ID card number out of Florida also and she also did not have a Florida drivers license only an ID card.

I spoke with DAVID MARSHALL DAVIS and he was now more cooperative and gave me his name and information.  DAVID MARSHALL DAVIS gave all the required information to complete a traffic citation.

I had DAVID MARSHALL DAVIS exit my patrol vehicle and advised him that he was being released.  DAVID MARSHALL DAVIS then started saying that he was having an asthma attack and that he needed medical attention.  DAVID MARSHALL DAVIS said he was a "diagnosed paranoid schizophrenic".  DAVID MARSHALL DAVIS was however not breathing heavily or appearing to be in distress.  At DAVID MARSHALL DAVIS's request I had dispatch send medical personnel.  I took DAVID MARSHALL DAVIS out of handcuffs and he immediately fell forward onto the ground.  DAVID MARSHALL DAVIS began rolling around on the ground and saying that he was going to sue us.  While waiting for medical personnel to arrive, DAVID MARSHALL DAVIS stated several times that he was going to be filing a complaint against Officer Hardisty and myself and that he was going to sue us and the department.

CLEARLAKE POLICE DEPARTMENT  CA017. 0
TRAFFIC STOP  (60803002)

CN  62456
Page    3

I requested Sergeant Celli respond to my location and he arrived a short time later.  I cited DAVID MARSHALL DAVIS for 27315(e) VC (seat belt required) on citation #50128.  Medical personal arrived and attempted to look at DAVID MARSHALL DAVIS, however he refused to be treated and walked away from the medical personnel.

I cited PAGE CHRISTINE DAVIS for 12500(A) VC (Drive with out a license) and 22108 VC (failure to signal) on citation #52003.

Officer Hardisty completed a CHP 180 and had PAGE CHRISTINE DAVIS's vehicle impounded per 14602.6 VC (Authority tom impound vehicle when driver does not have a license).

I) RECOMMENDATIONS:  N/A

J) DISPOSITION:  Closed with citation issued.

CLOSED WITH CITATION ISSUED

REPORTED: 08/03/06 by OFFICER TIMOTHY HOBBS
RECORDED: 08/03/06 by SHERRI D VANNEST
REVIEWED: 08/04/06 by SERGEANT TIMOTHY CELLI
Follow up? Yes/ /No/ /Copies to: DET./ / PROBATION . LCSO/ /OTHER/ /

INCIDENT: 60803002
SUPPLEMENT:      0

C-3

```
                    C.. RLAKE POLICE DEPARTMENT  CA017  )          CN  62456
                      SUPPLEMENTAL CRIME REPORT  (60803uu2/1)      Page    1


CODE SEC:           12500(A) VC    DRIVE W/O LICENSE
SECONDARY:            22108 VC     Turning without signalling 100ft prior
                    27315(E) VC    PASSENGER NOT SEAT BELTED

DATE/TIME REPORTED:   Fri.  08/18/06 00:34 hrs.

DATE/TIME OCCURRED:   Thurs. 08/03/06 01:38 hrs.
LOCATION OF OCCURENCE: MODOC ST / SONOMA AVE

PASSENGER-1:      DAVIS, DAVID MARSHALL      BM32    (07/08/74) (707) 995-0749
ADDRESS:          3230 2ND ST, Clearlake, CA 95422
OTHER DESCR:      PO BOX 3225

SUSPECT-1:        DAVIS, PAGE CHRISTINE      WF31    (09/27/74) (707) 995-0749
ADDRESS:          3230 2ND ST, Clearlake, CA 95422
DL NO./STATE:                                                 AR NO.:      0
RACE: White                  SEX: F HT: 503    WT: 115   HAIR: BRO  EYES: BRO
OTHER DESCR:      PO BOX 3225 CLK

VEHICLES INVOLVED:
VEH-1:            WHI /WHI   1989 CHEV  SUB  SW 3SPL922   CA    2/ 6
                  Suspect Vehicle, Impounded: See CHP180
```

DETAILS OF INVESTIGATION:

A) SYNOPSIS: Supplemental report.

B-G) N/A

H) NARRATIVE: On 8-3-06 during the contact with DAVID MARSHALL DAVIS a fixed blade knife approximately 12 inches long was located in the vehicle. DAVID MARSHALL DAVIS stated the knife was his and he used it for camping. While the vehicle was being searched I placed the knife in my patrol vehicle, planning on returning it to DAVID MARSHALL DAVIS's vehicle prior to it being towed. The tow truck arrived and I forgot to put the knife back in the vehicle. I later located the knife in my patrol vehicle. I asked Captain Larsen what to do with the knife due to the fact that DAVID MARSHALL DAVIS was filing a formal complaint about the stop. Captain Larsen told me to package the knife in a box and mail it to DAVID MARSHALL DAVIS. On 8-17-06 I packaged the knife in a box and had dispatch place it in the outgoing mail.

I) RECOMMENDATIONS: N/A

J) DISPOSITION: Closed with citation issued.

CLOSED WITH CITATION ISSUED

```
REPORTED: 08/18/06 by OFFICER TIMOTHY HOBBS            INCIDENT: 60803002
RECORDED: 08/18/06 by OFFICER TIMOTHY HOBBS            SUPPLEMENT:      1
REVIEWED: 08/18/06 by SERGEANT TIMOTHY CELLI
Follow up? Yes/ /No/ /Copies to: DET./ / PROBATION . LCSO/ /OTHER/ /
```

# EXHIBIT D

C. ARLAKE POLICE DEPARTM. .NT                    **Page 1 of 2**
## CITIZEN'S PERSONNEL COMPLAINT

Employee Complained of  Sgt. Celli          Received: 1-12-07  1439
                                                      Date  /  Time

Description of Employee:  Calcasion male

Date and Time of Incident:  8-3-06 — 12-2706 (numerous encounters)

Location of Incident:  numerous locations within Clear la Ke, CA

**DETAILS OF COMPLAINT: (include nature of complaint: names and address of witnesses; any doctor; hospital or attorney contacted regarding this complaint. It is important that as many factual details as possible be included, so that your complaint may be thoroughly investigated. Use an additional sheet if necessary).**

The nature of the complaint consists of:

Racial Profiling, Abuse of Authority,

Excesive Ticket Writing, Manipulation

of Staff, Falsifying Reports, and

Hate Crimes.

All evidence is available upon investigation.

I declare under penalty of perjury that the foregoing statements are true to the best of my knowledge and belief.

Page Davis          1-12-07          [signature]          1-12-07
**Complainant Signature      Date          Witness Signature          Date**

Civil Code Section 47.5, A peace officer may bring an action for defamation against an individual who has filed a complaint with that officer's employing agency alleging misconduct, criminal conduct, or incompetence, if that complaint is false, the complaint was made with knowledge that it was false and that it was made with spite, hatred, or ill will. Knowledge that the complaint was false may be proved by a showing that the complainant had no reasonable grounds to believe the statement was true and that the complainant exhibits a reckless disregard for ascertaining the truth.

*CPD/40*                              D-1                    Revised 05/06

## C. _ARLAKE POLICE DEPARTM. _NT
### _CITIZEN'S PERSONNEL COMPLAINT_

(Complaining Party Information)

Receiving Officer:                                    Name: _David & Page Davis_

_Herman Mill_ — _86_         Address: _P.O. Box 3225_
Signature                    I.D.#
                                                      _Clearlake, CA 95422_

                                  Phone#: _(707)995-0749_ D.O.B.: _7-8-74 // 8-27-74_

When and where you can be contacted (time and place) _1 pm - 6 pm at phone_

_number listed._

NOTE: Because the accused officer may be requested to submit to a lie detector test, I, _Page & David Davis_
agree to submit to a lie detector test:  _David Davis_

_Page Davis_                _1-12-07_
                                  **Complainant Signature**            **Date**


   You have the right to make a complaint against a police officer for any improper police conduct.
California law requires this agency to have procedures to investigate citizen's complaints. You have a
right to a written description of this procedure.

   This agency may find after investigation that there is not enough evidence to warrant action on
your complaint; even if that is the case, you have the right to make the complaint and have it investigated
if you believe an officer behaved improperly.

   Citizen complaints and any reports or findings relating to complaints must be retained by this
agency for at least five years.

_Page Davis_   **I HAVE READ AND UNDERSTAND THE ABOVE ADVISORY**
                         _Page Davis_            _1-12-07_

_David Davis_   _David Davis_   _1-12-07_   Complainant
Signature        Print Name              Date

                                                      Page 2 of 2

_CPD/40_                                                      _Rev. 05/06_

# EXHIBIT E



# CLEARLAKE POLICE DEPARTMENT
## INTEROFFICE MEMORANDUM

*(handwritten notes:)*
1. Traffic cites 12/27/06 (Not att)
2. 911 prinout 1/12/07
3. CO of contact by Celli 1/12/07
4. memo by Celli (not att)
5. CO of interview 1/18/07 (not att)
6. Photos by Celli

**DATE:** Janu

**TO:** Chief o

**FROM:** Sgt.

**SUBJECT:**

**Complaint Information:**

    Complaintants:  David Davis, DOB 07-08-74
                   P.O. Box 3225
                   Clearlake, Ca 95422
                   (707) 995-0749

                   Page Davis, DOB 09-27-74
                   P.O. Box 3225
                   Clearlake, Ca 95422
                   (707) 995-0749

**Officers Involved:**

        Sergeant Tim Celli #90

**Officer's Representative:**

        None

**Complaint:**

On January 12, 2007, I received the attached Personnel Complaint from David and Page Davis. The complaint in itself was vague in nature and only listed that Sgt. Celli had been involved in the following acts: Racial Profiling, Abuse of Authority, Excessive Ticket Writing, Manipulation of Staff, Falsifying Reports and Hate Crimes. Also listed on the complaint form is the following statement "All evidence is available upon investigation". While speaking with them about the complaint, they were unable to provide any detailed information regarding the accusations. They did tell me that they believed Sgt. Celli was manipulating other staff members into harassing them and spoke about prior incidents with him and other officers that had already been investigated (IA.

E-1

#08-03-06/90/107/132/145).

It should be noted that approximately one week prior to them filing the complaint, I had a conversation with the Davis' in the front interview room of the Clearlake Police Department. At the time, they had initially come to the station to file this personnel complaint against Sgt. Celli. I was aware of the prior complaint filed by Davis against Sgt. Celli and other officers and knew that it surrounded several traffic stops and dealings with him. While speaking with them, it was evident that their "new" complaint involved the same set of circumstances that had already been investigated. They then began speaking about a traffic stop in which they had recently been stopped by Officer Labbe. They "believed" that Officer Labbe was told to stop them and that Sgt. Celli had instructed him to write them a citation. However, they added that they did not have a complaint with Officer Labbe and only against Sgt. Celli. I spent approximately thirty (30) minutes with them discussing the incidents, answering their questions and explaining the procedures for officer complaints and how they are received and investigated. Mr. Davis was also advised that I would need "detailed" information on the premises of the complaint in order to thoroughly investigate it, while adding that I would not re-investigate a prior complaint. At the time, both David and Page Davis stated they understood my explanations and appeared to have no problems. They decided against filing a complaint at the time and asked me to speak with the officers and "request" that they leave them alone.

A few days after the initial contact with them, Page Davis called me and stated that they had decided to go ahead and file the complaint "just to have a record of it". As required, I agreed to take the complaint from her at the time. Due to schedule conflicts (between both theirs and mine) and a priority details, I was unable to actually meet with them until the afternoon of the 12th. However, I had been in constant phone contact with Page up until that point.

**Investigation:**

Shortly after my first conversation with the Davis', I had spoken with Officer Labbe about the circumstances involving his traffic stop of Page Davis (which occurred on 12-27-06). He told me that he did not even know the vehicle belonged to the Davis' and that he was looking for another unrelated subject at the time. He remembered stopping the vehicle for an obstructed plate and later notifying Sgt. Celli after he realized that the driver was Page Davis and that David Davis was the passenger. Officer Labbe did issue a citation to Mrs. Davis for having the obstructed plate, no registration card, a broken taillight and no proof of insurance. He added that he had also given them a warning for failing to use their turn signal. Officer Labbe told me that Sgt. Celli did arrive as a Cover Officer, but at no time instructed him to stop the vehicle or to write the citation.

During the morning of January 18, 2007 I had received the attached memo from Sgt. Celli who had been advised that this complaint was made. According to the memo, officers had received a 911 hang-up call at the Davis residence during the evening of January 17, 2007 at approximately 2114 hours. Sgt. Celli and Officer Ray responded to the location but did not realize that it was the home of David and Page Davis until they arrived. Sgt. Celli noted that Mr. Davis grabbed his video camera while yelling at the officers and telling them to "get the fuck off his property". Mr. Davis denied that a 911 call had been made and Sgt. Celli decided not to force the issue at the time as no one appeared to be in distress. Sgt. Celli later obtained a copy of the 911 print-out from Central Dispatch which he attached. He also stated that he had activated his audio recorder once he realized that the home belonged to Mr. Davis. He downloaded the recording to a CD which has been placed in this file. I reviewed the print-out of the 911 call and saw that the call

came in at 21:14:34 hours on 01/17/07. The caller ANI (number) was listed as (707)995-0749 which is the listed number belonging to the Davis'.

On January 18, 2007 at approximately 1650 hours, I met with David and Page Davis at their residence in order to obtain a recorded statement from them. The meeting had been pre-arranged so that I could obtain some factual details of the complaint and in order to confirm that it was not still part of the original complaint that had already been investigated. At the beginning of the interview, Mr. Davis told me that officers had come out to his home the night before for a reported 911 call. He denied that a call had been placed and made comments to the fact that he believed the officers had "made it up". He also said that he called the Sheriff's Department and was told that there was "no record" of the call. I advised him that I in fact had a copy of the 911 print-out from Central Dispatch and he responded by saying the cover-up had already begun.

When I turned his attention to his complaint, Mr. Davis told me that he "knew" that Sgt. Celli was in fact a "racist" and that he belonged to a white supremacy group. He was unable to provide any details or proof that Sgt. Celli belonged to a white hate group and refused to identify reported "witnesses" who had "proof". Mr. Davis said that he also knew for a fact that Sgt. Celli had "white power" or "white pride" tattoos on his arms as well. He added that he had seen the tattoos himself when he was thrown down on the ground by Sgt. Celli during a previously reported incident. Mr. Davis then began pulling out citations and a case report that had been prepared by various officers. One citation (#50128) issued by Officer Hobbs on 8-03-06, had a signature that Davis claimed was not his own. He argued that an officer had "forged" his signature and denied ever signing it himself. Along with the citation was a copy of a report prepared by Officer Hobbs (Case #06-2456) which documented the traffic stop and the fact the vehicle was towed. Mr. Davis said the report was his proof that Sgt. Celli had filed a false report. However, the report was prepared by Officer Hobbs and only approved by Sgt. Celli. Mr. Davis argued that "approving" a report was the same as swearing the facts held within were true and correct. Mr. Davis continued by saying that knew that Sgt. Celli was in fact manipulating younger staff members and officers to "do his work".

Mr. Davis then began speaking about Officer Hobbs and saying that he had illegally confiscated a knife from him. He showed me an envelope that was mailed to him with his knife inside of it (Officer Hobbs had apparently taken control of it for safety issues and forgot to initially return it). The knife was returned to Mr. Davis a short time later in the envelope and he acknowledged receipt of it. However, he argued that Officer Hobbs had no legal right to take control of the knife and refused to allow me to explain officer safety issues with him.

Mr. Davis produced a total of five traffic citations and one case report (listed above) while claiming that the citations themselves were proof that he was being harassed. The following is a list of the citations issued along with the dates and primary violation:

- #52021 – issued on 9-27-06 to David Davis for 12500 CVC (incident # 60927062).
- #52310 – issued on 12-27-06 to Page Davis for 5201 VC (incident #61227044).
- #52022 – issued on 9-27-06 to Page Davis for 27803 VC (incident #60927062).
- #49299 – issued on 8-02-06 to David Davis for 4000(a) VC (incident #6080206).
- #50128 – issued on 8-03-06 to David Davis for 27315 (e) VC (60803002)
- Case #06-2456 – Details citation #50128 and vehicle tow on 8-03-06.

It should be noted that on 8-03-06 when Mr. Davis was issued a citation for no seat belt (27315 VC), Page Davis was also issued a citation for driving without a license (Citation #52003) which

E-3

was not one of the citations produced by Mr. Davis at the time of this interview. Also not produced by Mr. Davis was the supplemental police report that Officer Hobbs had prepared for Case #06-2456. In the supplemental report, Officer Hobbs details the fact he had found a fixed blade knife in the vehicle during his contact with Mr. Davis on 8-03-06. Officer Hobbs notes that the knife was placed in his patrol vehicle during a vehicle search and that he had intended on returning it to Mr. Davis upon his release from the scene. Officer Hobbs apparently forgot to return the knife at the time and later mailed back to Mr. Davis (according to the report the knife was not returned personally due to the fact Mr. Davis had already filed his personnel complaint against the officers).

As the interview with Mr. Davis continued, he repeatedly accused various officers of falsifying reports and racist behavior. He increasingly became more and more argumentative with me during my questioning of him. He then began showing me photographs of a stop sign at the corner of Arrowhead and Park Street. He claimed officers were writing illegal citations at the location due to the fact there is no limit line. I advised him that he needed to re-read the vehicle code as it pertains to stop signs and he argued that I did not know the vehicle code and that officers were wrong.

During the entire interview, Mr. Davis was unable to produce any evidence or facts to prove that Sgt. Celli had taken part in any of the allegations that Mr. Davis was making against him. It was apparent that Mr. Davis had his own opinion on the issues and refused to waiver from them or discuss them in any "real" manner. At one point he told me that I could either admit that the problems were occurring or that I could "go down with the rest of them". I finally decided to conclude the interview at which point Mr. Davis began accusing me of misconduct as well.

I later downloaded a copy of the interview to a CD which has been placed in this case file.

On 1-19-07, Sgt. Cell Agreed to allow me to take pictures of both his arms and his tattoos. Sgt. Celli, who is a member of the Iron Pigs Motorcycle Club (made up mainly of police officers and firefighters), had a tattoo of the Iron Pigs logo on his right shoulder. Just below the logo is a tattoo of his daughter's name (Kristen). Below that is another Iron Pigs tattoo. On the back of his right arm are the letters N F T B. According to Sgt. Celli, this stands for the motto "Never Forget the Brotherhood" which is dedicated to those professionals who lost their lives during the September 11th attacks. Sgt. Celli's left arm was found to be free of any markings or tattoos.

Sgt. Celli was quick to note that the Iron Pigs Motorcycle Club has never been a criminal street gang. He showed me a copy of the club's By-Laws which clearly state that membership "Shall not be based on race, sex, religion and creed". He added that this is not a "white hate" or "white pride" group and that there are a large amount of non-white members including whole chapters that are strictly made up of black professionals.

The pictures of his arms and of the noted By-Laws have been printed out and attached to this investigation. Also attached is a portion of the Iron Pigs' website which details membership and some of the history of the club. I also located the attached web page "neverforget.ca". The page is dedicated to the firefighters and police officers who lost their lives on September 11th and has the following phrase highlighted "We owe it to them and to their brothers to never forget their sacrifice and what it has taught us". It should also be noted that one of the links on the web site is listed "Life in the Brotherhood" as it pertains to firefighters.

E-4

## Analysis:

At this time, there is absolutely no evidence or indications that tend to prove that Sgt. Celli has been involved in any of the allegations made by Mr. Davis. Several of the issues raised by Mr. Davis dealt with his dealings with Sgt. Celli on August 2nd and 3rd of 2006 which had already been investigated by Captain Larsen. That investigation was found to be "Unfounded" and without merit. Just as in that case, Mr. Davis has even been unable to properly articulate any facts to back his claims. With the exception of the 911 hang-up call on January 17, 2007, neither he nor his wife has had any personal dealings with Sgt. Celli. Of the two times they had been stopped and issued citations from other officers since the initial complaint (each being issued a citation on 9-27-06 and one on 12-27-06), Sgt. Celli was not the officer who initiated the traffic stop or issued the citations. The fact that they "feel" Sgt. Celli is responsible or has been manipulating other members of the department does not justify this complaint and there is absolutely no evidence to suggest it. Mr. Davis has failed to provide any facts, witnesses or evidence that would prove that Sgt. Celli has been involved in "Racial Profiling, Abuse of Authority, Excessive Ticket Writing, Manipulation of Staff, Falsifying Reports and Hate Crimes".

The Davis's have produced several newspaper articles during the past several months in which they openly claim that the officers of the Clearlake Police Department are corrupt and racist. Their accounts have always been one-sided and have not contained the true facts of their contacts with officers. They have attempted to gather the "community" in an effort to discredit the police department, but have been unsuccessful to this point.

## Conclusion:

Sgt. Michael C. Hermann #96

E-5



# CLEARLAKE POLICE DEPARTMENT
## INTEROFFICE MEMORANDUM

*JANUARY 22, 2007*

*DAVID AND PAGE DAVIS*

*P.O. BOX 3225*

*CLEARLAKE, CA 95422*

*REGARDING:* Notification of Disposition of Complaint per California Penal Code (CPC) 832.7(d):

INVESTIGATION #:<u>I.A 01-12-07/90</u>

Dear: <u>Mr. and Mrs. Davis</u> :

The investigation into your complaint regarding the conduct of Clearlake Police Sergeant Tim Celli has been completed. After reviewing all of the available evidence, a disposition of <u>Unfounded</u> has been reached. The Clearlake Police Department defines this disposition to mean <u>no misconduct was committed by the Officer(s)</u>.

Because the California Penal Code (CPC) classifies personnel investigations pertaining to peace officers as confidential, I am unable to disclose the details of the investigation; however I can tell you that all allegations of misconduct are treated very seriously no matter what the final disposition may turn out to be.

Sincerely;

**LARRY J. TODD**
Chief of Police

E-6

# EXHIBIT F

01/17/2007  22:33    7072620642

# E911 ALI Report

| | | | |
|---|---|---|---|
| Caller ANI: | (707)995-0749 | System: | Lake Cnty D |
| Call Time: | 01/17/07 at 21:14:34 | Position: | Position I |
| Trunk: | E911-5 | Operator: | Unknown |

```
(707) 995-0749   21:14   01/17
     3230             2D

CLRLK              CA 210 RESD
DAVIS PAGE
                   (707) 995-0749

PB911
CLEARLAKE PD
LAKE CO. FIRE PROT DIST
LAKE CO FIRE PROT. DIST.
LAT            LON
METERS         PERCENT
```

01/17/07 at 21:28:43                    Pa

F-1