IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID DAVIS, et al., | No. C-07-03365 EDL |
| Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CLEARLAKE POLICE DEPT., | |
| Defendant. | |

On June 27, 2007, Plaintiffs David Davis and Page Gearhart-Davis filed this action against Defendant Clearlake Police Department alleging, <u>inter alia</u>, violations of their civil rights pursuant to 42 U.S.C. § 1983 arising out of a series of encounters from August 2, 2006 to January 17, 2007 between Plaintiffs and officers of the City of Clearlake police department. Defendant has moved for summary judgment on all claims against Defendant. The motion was fully briefed and the Court held a hearing on August 12, 2008.

**Facts**

Viewing the facts in the light most favorable to Plaintiffs, the following occurred. On August 2, 2006, at approximately 1:00 a.m., Plaintiffs were pumping gas into their 1967 Mercury Cougar when they were approached by Sergeant Celli and Officer Miller. <u>See</u> Larsen Decl. Ex. 2 at 25:11-26:3. Officer Miller stated that the reason for the stop was that the Cougar did not display valid registration. <u>See</u> Miller Decl. ¶ 3. Officer Miller subsequently noticed that the windshield had a crack through the driver's field of view. <u>See</u> <u>id.</u> Mr. Davis provided the officers with his license and proof of insurance, and showed them proof that the vehicle was in the process of being registered. <u>See</u> Larsen Decl. Ex. 2 at 26:5-8. Mr. Davis called Officer Miller an "out of shape pig." <u>See</u> Hermann Decl. Ex. A at 2. Officer Miller responded, stating words to the effect of "We don't

like your kind here." See Miller Decl. ¶ 3; Larsen Decl. Ex. 2 at 26:10-11; Hermann Decl. Ex. A at 2. Mr. Davis was cited for an unregistered vehicle and a cracked windshield. See Larsen Decl. Ex. 2 at 39:18-24. A judge later dismissed this citation. See id. Ex. 2 at 86:11-16.

Mr. Davis conceded that his vehicle was not registered as of August 2, 2006. See id. Ex. 2 at 42:3-4. He also conceded that there was a line in the windshield that could be a crack. See id. Ex. 2 at 44:20-45:9. The parties dispute whether the statement, "we don't like your kind here," was a racial slur. Officer Miller testified that his statement did not refer to race, but to "individuals who exhibit confrontational attitudes and disrespect toward law enforcement officials." See Miller Decl. ¶ 3. Plaintiffs do not assert that the officer made any other racial slurs during this encounter.

On August 3, 2006, between 12:00 to 2:00 a.m., Plaintiffs were stopped by Officers Hobbs and Hardisty while Ms. Davis was driving a Chevy Suburban after leaving the gas station. See Larsen Decl. Ex. 2 at 56:16-25; 57:19-58:10. Officer Hobbs observed the Suburban failing to stop at a stop sign and failing to use a turn signal. See Hobbs Decl. ¶ 3. He performed a dispatch check on the car and found out that the registration had expired. See id. He stopped the car, and then noticed that Mr. Davis was not wearing a seatbelt. See id.; Larsen Decl. Ex. 2 at 60:19-20. Officer Hobbs asked Mr. Davis why he had an attitude, in response to which Mr. Davis snickered. See Larsen Decl. Ex. 2 at 59:9-12; 61:14-15. Mr. Davis failed to provide his photo identification in response to Officer Hobbs' request, instead providing his interim driver's license. See Hobbs Decl. ¶ 3; Larsen Decl. Ex. 2 at 59:13-16. Officer Hobbs stated that because Mr. Davis was not wearing a seatbelt and because he failed to produce proper identification, Officer Hobbs ordered Mr. Davis out of his car, told him to turn around, handcuffed him and put him in the patrol car until his identity could be determined. See Hobbs Decl. ¶ 3; Larsen Decl. Ex. 2 at 59:17-20; 62:7-13; 63:6-9; 63:24-25; 64:11-18. Mr. Davis then started having an asthma attack, and started coughing and claiming breathing difficulties. See Hobbs Decl. ¶ 3; Larsen Decl. Ex. 2 at 59:20-22. Mr. Davis testified that the handcuffs were too tight. See Larsen Decl. Ex. 2 at 64:8-10. According to Mr. Davis, Officer Hobbs opened the door, took Mr. Davis out of the vehicle onto his stomach, put his knee into Mr. Davis's back and removed the handcuffs. See Larsen Decl. Ex. 2 at 59:22-60:1; 65:24-66:1. In the meantime, the officers had called an ambulance, but when it arrived, Mr. Davis refused medical

1  treatment because he was fearful for his life. See Larsen Decl. Ex. 2 at 72:15-21; 76:19-23.
2  Sergeant Celli stated in a memo that he thought the asthma attack was "obviously faked." See Pls.'
3  Ex. 17. During this entire encounter, Mr. Davis never heard any racial slurs. See id. Ex. 2 at 76:13-
4  15. A judge dismissed the citation arising out of this incident, except for the seatbelt violation,
5  which was suspended. See id. Ex. 2 at 86:11-16.

6      On August 3, 2006, Plaintiffs lodged a complaint with the police department about the
7  August 2 and August 3 incidents. See Hermann Decl. Ex. A. Captain Larsen informed Plaintiffs
8  that he would speak to the officers involved. See Larsen Decl. Ex. 2 at 55:7-9. Captain Larsen
9  conducted an investigation, consisting of interviewing Mr. Davis and the officers involved. See
10 Hermann Decl. Ex. B. On August 29, 2006, Captain Larsen determined that the allegations were
11 unfounded, and the officers were exonerated. See Hermann Decl. Ex. B.

12     On September 27, 2006, Mr. Davis was driving an off-road dirt bike with Ms. Davis as a
13 passenger. See Larsen Decl. Ex. 2 at 83:9-18. Officer Hobbs stopped Plaintiffs and cited them for
14 an unregistered vehicle, driving out of class, driving without a helmet and littering. See id. Ex. 2 at
15 83:23-25; 84:13-20. Plaintiffs argue that the dirt bike was clearly registered. See Opp'n at 9:14; see
16 also Pls.' Ex. 24. Mr. Davis was fined over $1,200 for this citation. See id. Ex. 2 at 84:3-4.

17     On December 27, 2006, at approximately dusk, Officer Labbe and Sergeant Celli stopped
18 Plaintiffs, who were in a van driven by Ms. Davis, for obstruction of license plates and failing to use
19 a turn signal. See Larsen Decl. Ex. 2 at 89:17-91:25. Mr. Davis told Ms. Davis to immediately start
20 blowing the horn when they were stopped, in order to attract the attention of potential witnesses.
21 See id. Ex. 2 at 95:14-17. Mr. Davis testified that there was no way that the ball hitch on the van
22 obstructed the license plate. See id. Ex. 2 at 91:17-18. Mr. Davis also testified that he did not think
23 a turn signal was necessary. See id. Ex. 2 at 93:23-24. The officers cited Ms. Davis for the expired
24 registration and lack of proof of insurance. See id. Ex. 2 at 94:2-5. During the traffic stop, Mr.
25 Davis testified that Sergeant Celli was standing on the passenger side, where Mr. Davis was sitting,
26 with his hand on his holstered gun. See id. Ex. 2 at 95:12-14. Sergeant Celli did not say anything to
27 Mr. Davis during the stop. See id. Ex. 2 at 96:20-21. Neither officer directed any racial slurs
28 toward Plaintiffs during this stop. See id. Ex. 3 at 43:18-22.

1    Mr. Davis testified that Sergeant Celli drove by Plaintiffs' home numerous times from
2 August to December 2006. <u>See</u> Larsen Decl. Ex. 2 at 103:3-105:6. Ms. Davis testified that she
3 observed Sergeant Celli drive by more than five times per week during that time period. <u>See id.</u> Ex.
4 3 at 45:18-46:7. On January 12, 2007, Plaintiffs filed a Citizen's Personnel Complaint against
5 Sergeant Celli for "racial profiling, abuse of authority, excessive ticket writing, manipulation of
6 staff, falsifying reports, and hate crimes." <u>See</u> Hermann Decl. Ex. D. On January 22, 2007, after
7 conducting an investigation including interviewing Plaintiffs and the officers, then-Sergeant
8 Hermann concluded that the complaint was unfounded. <u>See</u> Hermann Decl. Ex. E.

9    On January 17, 2007, Sergeant Celli and another officer responded to a 911 hang up call
10 from Plaintiffs' residence. <u>See</u> Larsen Decl. Ex. 2 at 107:20-110:24; Hermann Decl. Ex. F. Mr.
11 Davis testified that Sergeant Celli did not use any racial epithets against Plaintiffs that day, except
12 that Mr. Davis says that he believed that Sergeant Celli threatened Plaintiffs simply by coming to
13 their home. <u>See</u> Larsen Decl. Ex. 2 at 108:19-25; Ex. 3 at 45:15-17. The other officer told Plaintiffs
14 that the officers were there because of a 911 hang-up call, and that they had to check hang-up calls.
15 <u>See id.</u> Ex. 3 at 43:23-44:7; 44:19-45:2. Ms. Davis testified that Sergeant Celli was hiding in the
16 bushes the entire time, and then Sergeant Celli told the officer, "Come on, let's go, there's nothing
17 going on here." <u>See id.</u> Ex. 3 at 45:3-6. Plaintiffs have had no further encounters with police since
18 January 30, 2007. <u>See</u> Larsen Decl. Ex. 2 at 126:13-127:22; Ex. 3 at 49:4-50:2.

19 **Legal Standard**

20    Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be
21 rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,
22 together with the affidavits, if any, show that there is no genuine issue as to any material fact and
23 that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute as
24 to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict
25 for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The
26 nonmoving party's evidence must be believed and "all justifiable inferences must be drawn in [the
27 nonmovant's] favor." <u>United Steelworkers of America v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1542
28 (9th Cir. 1989) (<u>en banc</u>) (citing <u>Liberty Lobby</u>, 477 U.S. at 255).

4

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 ( 1986). Where the nonmoving party will bear the burden of proof at trial, the moving party's burden is discharged when it shows the court that there is an absence of evidence to support the nonmoving party's case. See id. at 325. A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Liberty Lobby, 477 U.S. at 250.

**Discussion**

As described below, Plaintiffs have raised a triable issue of fact as to several of the underlying constitutional violations in this case. However, the only Defendant in this matter is the Clearlake Police Department, a department of the City of Clearlake. Plaintiffs have failed to raise a triable issue of fact as to the existence of any official policy, custom or pattern on the part of that municipal entity that caused Plaintiffs' injuries. Therefore, Defendant cannot be liable under Monell v. Department of Social Servs., 436 U.S. 658 (1978).

**1.   Plaintiffs have raised a triable issue of fact as to a Fourth Amendment violation based on the August 2, 2006 traffic stop**

Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person within the meaning of the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 16 (1968). However, a police officer may make an investigatory detention where the officer has reasonable suspicion of criminal conduct. See Delaware v. Prouse, 440 U.S. 648, 653 (1979); Terry, 392 U.S. at 22. "Reasonable suspicion is formed by 'specific articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" United States v. Colin, 314 F.3d 439, 442 (9th Cir. 2002) ("An officer's inferences must 'be grounded in objective facts and be capable of rational explanation.'"); United States v. Choudhry, 461 F.3d 1097, 1100 (9th Cir. 2006) (an officer may briefly detain an individual is the officer has reasonable suspicion that the individual "has committed, is committing or is about to commit a crime.").

5

1    The subjective intent of a police officer in engaging in a Fourth Amendment seizure is
2 irrelevant. See Tatum v. City & County of San Francisco, 441 F.3d 1090, 1094 (9th Cir. 2006). A
3 court must look to the totality of the circumstances to determine whether the officer had a
4 "particularized and objective basis" for suspecting criminal activity. Id. The officer "must be able
5 to articulate more than an inchoate and unparticularized suspicion or 'hunch' of criminal activity."
6 United States v. Montero-Camargo, 208 F.3d 1122, 1129 (9th Cir. 2000).

7    With respect to the August 2, 2006 stop, there is a triable issue of material fact as to whether
8 Officer Miller had reasonable suspicion to stop Plaintiffs at the gas station. Officer Miller testified
9 that the reason for the stop was that the vehicle did not have valid registration. See Miller Decl. ¶ 3.
10 He stated that he later saw the windshield crack. Id. Mr. Davis, however, testified that "there's no
11 way you can see the license plates on a 1967 Cougar. There's no way possible because in order to
12 pump gas into a 1967 Cougar, the license plates have to be folded down, . . ." See Pls.' Ex. 3 at
13 28:11-14. There is no dispute that the lack of valid registration justifies a traffic stop. See Prouse,
14 440 U.S. at 663 ("Accordingly, we hold that except in those situations in which there is at least
15 articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not
16 registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of
17 law, stopping an automobile and detaining the driver in order to check his driver's license and the
18 registration of the automobile are unreasonable under the Fourth Amendment."). But the conflicting
19 testimony creates a triable issue of fact as to Officer Miller's reasonable suspicion to make the
20 traffic stop in the first place.

21    However, Plaintiffs have not raised a triable issue of fact with respect to the other traffic
22 stops. With respect to the August 3, 2006 stop, there is undisputed evidence that Plaintiffs' vehicle
23 failed to stop at the stop sign and failed to use a turn signal. See Hobbs Decl. ¶ 3; Hermann Decl.
24 Ex. C. It is also undisputed that a dispatch check revealed that the registration had expired, as Ms.
25 Davis confirmed that the registration had expired. See Hobbs Decl. ¶ 3; Larsen Decl. Ex. 3 at 38:8-
26 10. With respect to the September 27, 2006 stop of the dirt bike, the officers issued citations to
27 Plaintiffs for driving the dirt bike without valid registration and without helmets, and for littering,
28 and although Plaintiffs dispute the lack of registration, they acknowledge that they lacked helmets

6

and littered. With respect to the December 27, 2006 incident, there is undisputed evidence that Plaintiffs were stopped for obstructed license plates and failing to use a turn signal. See Larsen Decl. Ex. 2 at 93:19-21. Mr. Davis conceded that Ms. Davis failed to use her turn signal. See Larsen Decl. Ex. 2 at 93:23-24.

**2.  Plaintiffs have raised a triable issue of fact as to the excessive force claim**

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. Id., at 8, 105 S.Ct., at 1699, quoting United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. See Terry v. Ohio, 392 U.S., at 22-27, 88 S.Ct., at 1880-1883. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. See Tennessee v. Garner, 471 U.S., at 8-9, 105 S.Ct., at 1699-1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").

Graham v. Conner, 490 U.S. 386, 396 (1989). To defeat summary judgment on an excessive force claim, a plaintiff need only show that a reasonable jury could find that the officers' use of force was excessive. See Lolli v. County of Orange, 351 F.3d 410, 416 (9th Cir.2003).

Here, Plaintiffs' excessive force claim arises out of the August 3, 2006 incident in which Mr. Davis was handcuffed and placed in the back seat of a police vehicle and then removed from the car when he suffered an asthma attack. Mr. Davis testified that he was placed in handcuffs, which were too tight. See Larsen Decl. Ex. 2 at 64:9-10; Pls.' Ex. 16. Shortly after Mr. Davis was placed in the police car in handcuffs, he suffered an asthma attack and was removed from the car onto his stomach into the dirt and Officer Hobbs put his knee on Mr. Davis's back to remove the handcuffs. See Larsen Decl. Ex. 2 at 65:5-66:1. Officer Hobbs stated in his declaration that he handcuffed Mr. Davis and then took him out of the car when Mr. Davis began his asthma attack, and called for an ambulance. See Hobbs Decl. ¶ 3. While an officer need not use "the least intrusive means of responding to an exigent situation," and need "only act within that range of conduct we identify as reasonable" (see Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994)), there is a triable issue of fact as

7

1  to whether Officer Hobbs's conduct was within the range of reasonable conduct.

2  **3.     Plaintiffs have raised a triable issue of fact as to their claim for racial discrimination**

Plaintiffs' racial profiling claim appears to be a claim of selective enforcement of the law in violation of the Equal Protection clause of the Fourteenth Amendment. The Supreme Court stated:

> The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person, cf. McFarland v. American Sugar Refining Co., 241 U.S. 79, 86, 87, 36 S.Ct. 498, 501, 60 L.Ed. 899, or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself, Yick Wo v. Hopkins, 118 U.S. 356, 373, 374, 6 S.Ct. 1064, 1072, 1073, 30 L.Ed. 220. But a discriminatory purpose is not presumed, Tarrance v. State of Florida, 188 U.S. 519, 520, 23 S.Ct. 402, 403, 47 L.Ed. 572; there must be a showing of 'clear and intentional discrimination'. . . .

Snowden v. Hughes, 321 U.S. 1, 8 (1944).

To establish selective enforcement and discriminatory intent, Plaintiffs rely on Officer Miller's statement that: "We don't like your kind here." Plaintiffs also rely on a letter from Teresa Stacy. However, for the reasons stated below, Defendant's objections to the Stacy letter are sustained. Apart from this statement, Mr. Davis acknowledged many times in his deposition that no officer made any other racial slurs. See Larsen Decl. Ex. 2 at 46:24-50:16; 76:1-17; 108:19-109:8.

There is no dispute that on August 2, 2006, Officer Miller stated, "We don't like your kind here, you need to move" or words to that effect. See Miller Decl. ¶ 3; Larsen Decl. Ex. 2 at 26:10-11; 27:19-21. Such a statement could connote racial discrimination. On the other hand, Plaintiffs' own statement made the day after the incident shows that Mr. Davis called Officer Miller an "out of shape pig" before Officer Miller's remark. See Hermann Decl. Ex. A at 3. Officer Miller stated in his declaration that when he made his remark, he was referring not to African-Americans, but to "individuals who exhibit confrontational attitudes and disrespect toward law-enforcement officials." See Miller Decl. ¶ 3. However, whether or not his remark expressed racial animus is a question of intent appropriate for a jury, not for summary judgment. See Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 n. 14 (1977) ("[A] consistent pattern of official racial discrimination is [not] a necessary predicate to a violation of the Equal Protection Clause. A single

1 invidiously discriminatory governmental act ... would not necessarily be immunized by the absence
2 of such discrimination in the making of other comparable decisions."). There is a triable issue of
3 fact as to whether Officer Miller's statement was racially motivated.

### 4. Plaintiffs have not raised a triable issue of fact as to the 911 call incident

Plaintiffs argue that the police department violated their civil rights by falsifying a 911 hang-up call document as an excuse to come to Plaintiffs' home. Plaintiffs point to a Lake County Sheriff's Department document which does not show a 911 call from Plaintiffs' home. See Pls.' Ex. 28. But there is also undisputed evidence that Sheriff's Department does not make listings of 911 hang-up calls in which no conversation took place. See Larsen Reply Decl. Ex. C at ¶ 8. Nonetheless, such calls are routed to the police department for investigation. See id.; Hermann Decl. Ex. F. Plaintiffs have thus provided no evidence to raise a triable issue of fact that the 911 call was falsified.

### 5. Plaintiffs have not raised a triable issue of fact as to their due process claim

Plaintiffs appear to make a substantive due process claim based on a deprivation of their liberty to leave their home during Sergeant Celli's shift, based on their encounters with him as set forth above, and his driving by their house numerous times from August to December 2006. Substantive due process "protects a liberty or property interest in pursuing the 'common occupations or professions of life.'" Benigni v. City of Hemet, 868 F.2d 307, 312 (9th Cir.1988), quoting Schware v. Board of Bar Examiners, 353 U.S. 232, 238- 39 (1957). To prove a substantive due process claim, Plaintiffs must show more than their own subjective reactions to establish that the government's action was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 395 (1926). Here, Plaintiffs have provided no evidence to raise a triable issue of fact as to their due process claim. Plaintiffs simply state that they feared to leave their house, without showing any specific threat by Sergeant Celli or conduct beyond driving by on the public thoroughfare. Without more, Plaintiffs' due process claim does not survive summary judgment.

### 6. Plaintiffs have failed to raise a triable issue of fact as to Defendant's liability under Monell

As stated above, Plaintiffs have only sued the Clearlake Police Department. Therefore, any

9

1  liability of that public entity must be based on a policy or pattern of the entity, as set forth in the
2  leading case of <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978), and its progeny.  Local
3  governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or
4  custom causes a constitutional tort.  <u>Monell</u>, 436 U.S. at 690.  However, a city or county may not be
5  held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat
6  superior.  <u>Board of the County Comm'rs of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 403
7  (1997); <u>Monell</u>, 436 U.S. at 691.  Instead, "it is when execution of a government's policy or custom,
8  whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent
9  official policy, inflicts the injuries that the government as an entity is responsible under § 1983."
10 <u>Monell</u>, 436 U.S. at 694.  A policy giving rise to local government liability cannot be established
11 merely by identifying conduct that is properly attributable to the municipality; "[t]he plaintiff must
12 also demonstrate that, through its deliberate conduct, the municipality was the 'moving force'
13 behind the injury alleged." <u>Brown</u>, 520 U.S. at 404.  That is, the municipal action must have been
14 taken with the requisite degree of culpability and with a direct causal link to the deprivation of the
15 federal right.  <u>Id.</u>  Proof of random acts or isolated incidents of unconstitutional action by a
16 non-policymaking employee are insufficient to establish the existence of a municipal policy or
17 custom.  <u>See</u> <u>McDade v. West</u>, 223 F.3d 1135, 1141 (9th Cir. 2000); <u>Davis v. City of Ellenburg</u>, 869
18 F.2d 1230, 1233 (9th Cir. 1989 ). "When one must resort to inference, conjecture and speculation to
19 explain events, the challenged practice is not of sufficient duration, frequency and consistency to
20 constitute an actionable policy or custom." <u>Trevino v. Gates</u>, 99 F.3d 911, 920 (9th Cir. 1996).
21 Further, where there is no municipal employee liable for a constitutional violation, there is no basis
22 for municipal liability.  <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986).

23       Plaintiffs contend that Defendant failed to properly investigate citizen complaints and failed
24 to adequately supervise officers.  These failures can serve as the basis for liability under 42 U.S.C. §
25 1983 only where the failures to investigate or supervise amount to "deliberate indifference to the
26 rights of persons with whom the municipal employees come into contact." <u>City of Canton v. Harris</u>,
27 489 U.S. 378, 389 (1989); <u>Davis v. City of Ellensburg</u>, 869 F.2d 1230, 1235 (9th Cir. 1989) (holding
28 that the inadequate training standard applies to allegations of inadequate supervision); <u>Oviatt v.</u>

Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (applying inadequate training test to allegations of municipal inaction). Further, only where the failure to investigate or supervise "reflects a 'deliberate' or 'conscious' choice by a municipality - a 'policy' as defined by our prior cases - can a city be liable for such a failure under § 1983." City of Canton, 489 U.S. at 389, 390-91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."). There must also be a causal connection between the identified deficiency in a training program and the injury. Id. at 391.

In support of their claims of failure to investigate and failure to supervise against Defendant, Plaintiffs argue that police officers with complaints against them were promoted, but they offer no evidence of any such promotions. They also argue that some of the City's employees informed the Federal Bureau of Investigation about corruption in the police department (Compl. ¶ 18), but they have provided no evidence to support that argument. And even if Plaintiffs had provided evidence of employees reporting to the FBI, that evidence would be inadmissible hearsay as to the truth of any such reports and thus would not by itself suffice to raise a triable issue of fact of a pattern or practice of racial discrimination in the police department. Plaintiffs also point to the filing of five federal lawsuits against City of Clearlake, but Plaintiffs have cited no authority to support the argument that the mere filing of lawsuits shows any policy or practice of racial discrimination. Plaintiffs have not, for example, provided evidence of the outcome of the lawsuits or any other details. Plaintiffs also point to the complaints made against some of the officers at issue in this case that the police department investigated as evidence of a pattern of discrimination. See Exs. E-1, F-1, H-1. But those complaints show, at most, that the City has a policy of investigating citizen complaints and occasionally imposing discipline against officers, not that they do *not* investigate complaints. Thus, Plaintiffs have provided no evidence of a policy or practice sufficient to raise a triable issue of fact as to Monell liability showing deliberate conduct that was the moving force behind Plaintiffs' injuries.

11

Further, even though Plaintiffs have raised a triable issue of fact as to certain violations of their civil rights, as described above, the failure to raise a triable issue of fact as to a policy or practice sufficient for Monell liability precludes any liability on the part of the only Defendant in this case for those violations.

**7. Although Plaintiffs have raised a triable issue of face as to false arrest, the Court declines to exercise supplemental jurisdiction over that claim.**

Under California law, false arrest is defined as the "non-consensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however, short." Rhoden v. United States, 55 F.3d 428, 430 (9th Cir. 1995 ); see also Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir.1998) ("To prevail on his section 1983 claim for false arrest and imprisonment, [plaintiff] would have to demonstrate that there was no probable cause to arrest him."). Probable cause to arrest is measured by an objective standard based on the information known to the arresting officer, rather than a subjective standard that would take into account the arresting officer's actual motivations or beliefs. See Johnson v. Lewis, 120 Cal.App.4th 443, 454 (2004). An arrest is not a false arrest if the facts available to the officer suggest that the plaintiff was committing a crime, whether or not that crime was the one that the plaintiff was cited for or was the one that was in the officer's mind. See Devenpeck v. Alford, 543 U.S. 146, 153 (2004). A warrantless arrest is permissible if the officer "has probable cause to believe that an individual has committed even a very minor criminal offense in his presence ... ." Atwater v. Lago Vista, 532 U.S. 318, 354 (2001).

Even if Plaintiffs had raised a triable issue of fact as to their claim of false arrest with respect to any of the traffic stops, the Court declines to exercise its supplemental jurisdiction over this state law claim because summary judgment is granted on Plaintiffs' federal claims for failure to raise a triable issue of fact as to municipal liability under Monell. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [federal question] if - ... the district court has dismissed all claims over which it has original jurisdiction."). Therefore, the false arrest claim is dismissed.

**8. Summary judgment is proper as to Plaintiffs' claims under 18 U.S.C. § 241, 242; 42 U.S.C. § 14141 because there is no private right of action under these statutes**

Because 18 U.S.C. §§ 241 and 242 are criminal statutes, they cannot be enforced in this civil action. Moreover, 42 U.S.C. § 14141 provides that a civil action under that section may only be brought by the Attorney General. <u>See</u> 42 U.S.C. § 14141 ("Whenever the Attorney General has reasonable cause to believe that a violation of paragraph (1) has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice."). Therefore, summary judgment is granted as to claims under these statutes.

**Objections to Evidence**

Defendant filed several objections to evidence. Plaintiffs did not file any response to those objections. The Court rules on Defendant's objections as follows:

1. The objection to citations to the complaint as evidence is sustained to the extent that Plaintiffs use the complaint's allegations as evidence.
2. Defendant's objection to Plaintiffs' exhibit 8 (cassette tape) on the grounds that the exhibit was not provided to Defendant is overruled.
3. Defendant's objection to Plaintiffs' exhibit 9 (cassette tape) on the grounds that the exhibit was not provided to Defendant is overruled.
4. Defendant's objections to Plaintiffs' exhibit 10 (letter from Timin Murray offered to support the argument that an audio recording was altered) based on lack of authentication and improper expert testimony are sustained.
5. Defendant objected to Plaintiffs' exhibit 14 (Mr. Davis's interim driver's license) based on lack of authentication, lack of personal knowledge and hearsay. On August 28, 2008, Defendant filed a letter withdrawing its objection based on authenticity. To the extent that Plaintiffs offer the exhibit to show that Mr. Davis had valid identification on August 3, 2006, Defendant's objections are sustained. <u>Cf.</u> Cal. Veh. Code § 12951 (requiring drivers to have valid drivers' licenses at all times while driving, and stating that a court shall not dismiss a charge for violation of this section when presented with an interim license unless additional proof of validity of the interim license is presented). The question of whether Mr. Davis had valid identification on August 3, 2006, however, is not material to the Court's decision

1     because there is undisputed evidence that on August 3, 2006, Plaintiffs failed to stop at a stop
2     sign and failed to use a turn signal on that day, thereby giving the officers probable cause to
3     stop Plaintiffs' vehicle, and because the alleged excessive force violation did not implicate
4     the identification issue.

5 6.   Defendant objected to Plaintiffs' exhibit 19 (California Department of Motor Vehicles
6     Information Request for Page Gearhart-Davis) based on lack of authentication, lack of
7     personal knowledge and hearsay. On August 28, 2008, Defendant filed a letter withdrawing
8     its objection based on authenticity. To the extent that Plaintiffs offer the exhibit to show that
9     Ms. Davis had valid identification on August 3, 2006, Defendant's objections are sustained.

10 7.   Defendant's objection to Plaintiffs' exhibit 21 (letter from Teresa Stacy) based on lack of
11     authentication, lack of personal knowledge and hearsay are sustained.

12 8.   Defendant's objection to Plaintiffs' exhibit 24 (photos of dirt bike) based on lack of
13     authentication and lack of personal knowledge are sustained.

14 9.   Defendant's objection to Plaintiffs' exhibit 25 (photo of van) based on lack of authentication
15     and lack of personal knowledge are sustained.

16 10.   Defendant's objection to Plaintiffs' exhibit 26 (audio tape) on the grounds that the exhibit
17     was not provided to Defendant is overruled.

**Conclusion**

Although Plaintiffs have raised a triable issue of fact as to certain constitutional violations, they have failed to raise a triable issue of fact as to a pattern or practice by the only Defendant, Clearlake Police Department, to satisfy Monell, so Plaintiffs' claims of civil rights violations do not survive summary judgment. Further, the Court declines to exercise supplemental jurisdiction over Plaintiffs' false arrest claim. Moreover, Plaintiffs' claims under 18 U.S.C. §§ 241 and 242 and 42 U.S.C. § 14141 may not be brought by a private party. Accordingly, Defendants' Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

Dated: September 3, 2008                               ELIZABETH D. LAPORTE
                                                                       United States Magistrate Judge